UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER SANDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 06-1411 (PLF) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant District of Columbia, Charles Ramsey, in his official and individual capacities, and Jeffrey Herold, in his individual capacity,[1] by and through undersigned counsel, move to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. Although packaged in the form of a lawsuit, Plaintiff's job-related speech was not about a matter of public concern and therefore cannot support a cause of action under the First Amendment. Plaintiff's due process claim also fails because the applicable regulations defining any purported property interest were followed. A memorandum of points and authorities and a proposed Order granting the requested relief accompany this motion.

Because this is a dispositive motion, LCvR 7.1(m) does not require prior consultation.

---

[1] Plaintiff also sued "John Doe" in his individual capacity. Should this person be identified and served, he will respond in due course.

Dated: September 28, 2006               Respectfully submitted,

                                        ROBERT J. SPAGNOLETTI
                                        Attorney General for the District of Columbia

                                        GEORGE C. VALENTINE
                                        Deputy Attorney General
                                        Civil Litigation Division



                                        /s/ Kimberly Johnson
                                        KIMBERLY MATTHEWS JOHNSON
                                        Chief, General Litigation I
                                        D.C. Bar No. 435163



                                        /s/ Wendel Hall
                                        WENDEL V. HALL
                                        Assistant Attorney General
                                        D.C. Bar No. 439344
                                        Suite 6S012
                                        441 4th Street, N.W.
                                        Washington, D.C. 20001
                                        (202) 724-6608
                                        (202) 727-0431 (fax)
                                        E-mail: wendel.hall@dc.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| CHRISTOPHER SANDERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 06-1411 (PLF) |
| v. | ) |
| | ) |
| DISTRICT OF COLUMBIA, <u>et al.</u>, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**I.  INTRODUCTION**

Defendant District of Columbia and the individual Defendants, Chief of Police Charles Ramsey, and Captain Jeffrey Herold respectfully request that the Court dismiss Plaintiff Christopher Sanders' Complaint. Although packaged in the form of a lawsuit, Plaintiff's job-related speech was not about a matter of public concern and therefore cannot support a cause of action under the First Amendment. Plaintiff's due process claim also fails because the applicable regulations defining any purported property interest were followed. Sanders' Complaint should therefore be dismissed.

**II.  STATEMENT OF FACTS**

For the purposes of this motion only, Defendant assumes that non-conclusory factual allegations of the Complaint are true. Christopher Sanders, along with another officer, sued the

District of Columbia and several others with respect to allegations that the MPD violated his First Amendment rights. That suit was resolved through settlement.

Sanders resigned from the MPD soon after to pursue an advanced degree. Complaint, ¶ 21. After he left, an allegation was made that Sanders made false statements to obtain sick leave and had been absent without leave. After an investigation, it was determined that the charges were true. Complaint, ¶¶ 27, 33. Upon completing educational plans, Sanders asked the MPD to rehire him. Complaint, ¶ 33. The MPD decided not to do so. Id. This lawsuit followed.

### III. ARGUMENT

#### A. Standard Of Review.

The standards for considering a motion brought pursuant to Fed. R. Civ. P. 12(b)(6) are well-established. "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests." Runkle v. Gonzales, 391 F. Supp. 2d 210, 220 (D.D.C. 2005)(citations and internal punctuation omitted.)

At the same time, however, "a plaintiff must set forth facts sufficient to allege each element of his claim," Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002), quoted in Major v. Plumbers Local Union No. 5, 370 F. Supp. 2d 118, 129 (D.D.C. 2005), and the Court may explore whether or not Plaintiff has alleged any set of facts that could ever state a violation of the law. Runkle, 391 F. Supp. 2d at 221; see also Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Brooks-Miller v. England, 357 F. Supp. 2d 197, 201 (D.D.C. 2004); Rochon v. Ashcroft, 319 F. Supp. 2d 23 (D.D.C. 2004). "[In particular, the Court may assess whether Plaintiff has alleged sufficient facts to demonstrate that [he] has been subject to an adverse action." Runkle, 391 F. Supp. 2d at 222; Rochon, 319 F. Supp. 2d at 29.

Plaintiff's Complaint is rife with legal conclusions pleaded as facts. The Court should disregard them in reviewing this motion. See Complaint, ¶ 5 (identity of 'policymaker'); ¶ 11 (nature of official duties); ¶ 12 (conclusion whether alleged actions are "adverse"); ¶ 15 (conclusion that litigation dealt with matter of public concern, even though dealt merely with supervision of unit); ¶ 20 (misstating provisions of DPM § 816.6; hearsay); ¶ 27 (conclusory allegation of motive); ¶ 28 (conclusory allegation of motive); ¶ 31 (conclusory allegation of 'retaliation'); ¶ 32 (legal argument concerning alleged District law); ¶ 33 (conclusory allegation of retaliation), and the conclusions located in the specific counts.

> B. **The Court Should Dismiss The Individual Defendants Because They Are Entitled To Qualified Immunity.**

The Court should dismiss the individual defendants because they are entitled to qualified immunity.

"Government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established . . . rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rationale for this defense is that the substantial social costs of such lawsuits – in terms of official diversion of energy from the public's business and timidity in protecting the public interest – outweigh the social interest in enforcing civil rights when its elements are met. The social costs are well-documented. As the United States Court of Appeals for the Eleventh Circuit explained:

> 'These social costs include the expenses of litigation, the diversion of official energy from pressing public issues, and the deterrence of able citizens from acceptance of public office. Finally, there is the danger that fear of being sued will 'dampen the ardor of all but the most resolute, or the most irresponsible [public officials], in the unflinching exercise of their duties.'

3

Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996)(internal citations omitted).  The costs that qualified immunity seeks to avoid are primarily *social*.  Each public official has a job to do and that job has been determined by the government's elected officials to be in the public interest. As Foy noted:  "When public officials do their jobs, it is a good thing.  Qualified immunity is a real world doctrine designed to allow local officials to act (without always erring on the side of caution) when action is required to discharge the duties of public office."  Foy, 94 F.3d at 1534 (internal citation omitted).

When deciding a qualified immunity motion, the court first considers whether the defendant public official violated the plaintiff's constitutional rights.[2] This issue is judged in light of current law. If so, the court next asks whether the constitutional right at issue was so clearly established in light of the law at the time of the act in question that is was objectively unreasonable to act as the public official did. Wilson v. Layne, 526 U.S. 603, 609 (1999).  "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).  Whether a right was clearly established that an official's conduct violated the Constitution is judged in light of the case law in the official's jurisdiction or, failing controlling law, in light of the existence (or not) of a strong consensus of persuasive authority. Saucier, 533 U.S. at 202; Wilson, 526 U.S. at 617.  Thus, "if the law did not clearly put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier, 533 U.S. at 202.

---

[2] Whether Plaintiff's constitutional rights were violated is a question that is also relevant to the District's alleged liability.  Since, as demonstrated in the body of this Memorandum, Plaintiff's claim of a constitutional violation  is defective as a matter of law, he fails to state a claim against either the District or the individual defendants.

4

> B. The Doctrine Of Qualified Immunity Requires Dismissal Of Plaintiff's First Amendment Claim.
>
>> 1. The Investigation Of, and Subsequent Decision Concerning Sanders Did Not Violate The Constitution.

Sanders' burden for establishing a violation of the First Amendment was described in Bowie v. Gonzales, 433 F. Supp. 2d 24, 32 (D.D.C. 2006) (citations omitted):

> For a public employee to make out a prima facie case of retaliation violating the First Amendment, he must meet a four-factor test. The plaintiff must establish [1] that the public employee was speaking on a matter of public concern; [2] that the government's interest in efficient performance of public services is outweighed by the plaintiff's interest as a citizen, in commenting upon matters of public concern, combined with the interest of plaintiff's potential audience in hearing the plaintiff's comments; [3] the plaintiff's speech was the motivating factor for the employer's retaliatory action; and last, [4] the adverse employment action was not motivated by legitimate, non-pretextual grounds.

Sanders, however, meets none of these elements. The first two elements typically present questions of law for the Court while the latter two elements typically present questions of fact suited for summary judgment. O'Donnell v. Barry, 148 F.3d 1126, 1133 (D.C. Cir. 1998). This motion therefore focuses on the first two elements.

Sanders' alleged speech on a matter of public concern purportedly came in the form of a lawsuit. The First Amendment may, in appropriate circumstances, protect statements made in the course of litigation. "[W]hether a prior litigation was a matter of public concern is a matter of law for the Court to decide." Bridges v. Kelly, 977 F. Supp. 503, 508 (D.D.C. 1997), aff'd sub nom Bridges v. Barry, 1998 U.S. App. Lexis 10651 (D.C. Cir. 1998). Invoking the Petition Clause of the First Amendment does not change this analysis. Bridges, 977 F. Supp. at 508 n. 8 ("There is no sound basis for granting greater constitutional protection to statements made under the Petition Clause than to other run-of-the-mill speech or expression. In short airing private gripes in the form of a [judicial] complaint ... cannot alter their status as private gripes.")

5

Whether a statement is a matter of public concern is determined by the "content, form, and context" of a given statement. Connick v. Myers, 461 U.S. 138, 148 (1983). An important factor is whether the statement stems from a personal grievance and/or office politics, rather than a concern for the public. See id. (finding that majority of employee's statements were not protected as a matter of law because they arose from office dispute). Although it is possible for accusations made to advance one's career or to undermine the career of a supervisor may be protected, Tao v. Freeh, 27 F.3d 635, 639 (D.C. Cir. 1994), expression of matters of personal concern are not usually matters of public concern. Connick, 461 U.S. at 148. This principle applies in the context of litigation, even when a litigation deals with a broad public issue. Bridges, 977 F. Supp. at 508. As the Bridges opinion explained:

> The prior litigation in this case involved a challenge to the constitutionality of a reduction-in-force as applied to the plaintiff. This was a challenge made by the plaintiff in his role as an employee not as a citizen. The claim rests on a matter of private concern and is therefore dismissed.

Bridges, 977 F. Supp. at 508. Thus, filing a lawsuit over a personal grievance that arises from one's employment does not transform that personal grievance into a matter of public concern.

Moreover, as Bridges makes clear, "even if the lawsuit addresses matters of public concern, the defendants may still dismiss the employee because of the lawsuit as long as the dismissal serves the important governmental purpose of providing efficient public services." Bridges, 977 F. Supp. 508 n. 9. "The importance of uniformity and discipline on the police force cannot be overstated." Parrott v. District of Columbia, 1991 U.S. Dist. LEXIS 12647 (D.D.C. 1991). As the Parrott Court explained:

> The MPD Chief of Police is under a mandate to exact from all members of the police force 'unquestioned loyalty' and 'strict obedience.' This uniform obedience is required for the orderly and efficient operation of police business. The need for uniformity to promote order and discipline has been recognized and sanctioned by the Supreme Court.

6

Other courts have agreed. See, e.g. Brown v. Trenton, 867 F.2d 318, 322 (6th Cir. 1989). ("If such balancing were required, moreover, the importance of deference to the city's judgment on the matter of discouraging public dissension within its safety forces would tip the scales decisively in favor of the defendants."); Bailey v. Canan, 82 F. Supp. 2d 966, 989 (D. Ind. 2000) ("Maintaining the public's confidence is important to any organization charged with keeping public order and safety. Correspondingly, effective and swift discipline can help ensure public confidence in the police department remains high. Moreover, discipline is a necessary element for maintaining a competent and efficient police department.")

Applying these factors to this case, it is clear that Sanders' original lawsuit (No. 97-2938) is not protected speech as a matter of public concern. It arose from Sanders' (and Hill's) attempt to resist the authority of their superior, Lieutenant Duckett. They were openly hostile to him and Sanders (and Hill) attempted to get rid of him by concocting the allegations that became the case of Sanders v. District of Columbia, No. 97-2938. That Sanders mounted a public relations offensive about these gripes and filed a complaint containing them does not change their essential character as personal gripes and office politics. See, e.g. Wright v. Illinois Dep't of Children & Family Servs., 40 F.3d 1492, 1505 (7th Cir. 1994) ("[T]here is no sound basis for granting greater constitutional protection to statements made under the Petition Clause than to other run-of-the-mill speech or expression. In short, airing private gripes in the form of a complaint or testimony cannot alter their status as private gripes.") Sanders was not acting "as a citizen" commenting on a matter of public concern; he was acting as an employee seeking to remove an unwanted supervisor.

Finally, even on the face of the original Complaint, Sanders' unproven allegations and willingness to undermine public confidence in the police department to advance his personal

7

interest in a workplace dispute means that the second prong of the <u>Pickering</u> test decisively favors finding that the lawsuit is not protected by the First Amendment.

        2.       <u>The Law Did Not Clearly Establish That The Investigation And Subsequent Decisions Concerning Sanders Were Unlawful.</u>

Even if the Court were to conclude that Sanders has stated a claim for a potential constitutional violation, he cannot show that the law was clearly established as of the time of the alleged action. As noted above, the issue is whether the law was so clearly established at the time of the act in question that is was objectively unreasonable to act as the public official did. <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999). Whether a right was clearly established that an official's conduct violated the Constitution is judged in light of the case law in the official's jurisdiction or, failing controlling law, in light of the existence (or not) of a strong consensus of persuasive authority. <u>Saucier v. Katz</u>, 533 U.S. 194, 202 (2001). Thus, "if the law did not clearly put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." <u>Saucier</u>, 533 U.S. at 202.

The major reason that the law was not clearly established is that the constitutional right at issue is subject to a balancing test, the outcome in a particular circumstance is difficult to predict. In similar cases, the presence of a balancing test alone has been sufficient to support a dismissal based on qualified immunity. <u>See, e.g.</u> <u>Stanley v. City of Dalton</u>, 219 F.3d 1280, 1298 (11th Cir. 2000); <u>Sexton v. Martin</u>, 210 F.3d 905 (8th Cir. 2000) ("when Pickering's fact-intensive balancing test is at issue, the asserted First Amendment right can rarely be considered clearly established for purposes of the Harlow qualified immunity standard."); <u>DiMeglio v. Haines</u>, 45 F.3d 790 (4th Cir. 1995) ("Only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet

8

well-defined."); Medina v. Denver, 960 F.2d 1493 (10th Cir. 1992) ("In determining whether the law was clearly established, we bear in mind that allegations of constitutional violations that require courts to balance competing interest may make it more difficult to find the law 'clearly established' when assessing claims of qualified immunity."); Borucki v. Ryan, 827 F.2d 836, 848 (1st Cir. 1987) ("When the law requires a balancing of competing interest, . . . it may be unfair to charge an official with knowledge of the law in absence of a previously decided case with clearly analogous facts."); Benson v. Allophin, 786 F.2d 268, 276 (7th Cir.), cert. denied Benson v. Allphin, 479 U.S. 848 (U.S. 1986).

  Moreover, the extant case law from this jurisdiction suggests strongly that lawsuits arising from employment decisions, even when they involve issues of public importance, do not trigger First Amendment protection. Bridges v. Kelly, 977 F. Supp. 503, 508 (D.D.C. 1997), aff'd sub nom Bridges v. Barry, 1998 U.S. App. Lexis 10651 (D.C. Cir. 1998). The test is not whether the allegations are important in some metaphysical sense; the test is whether they relate to the employee's job situation or to broader issues. In Bridges, the plaintiff asserted that the District was acting unconstitutionally. Few issues are more important in the general sense. But since the alleged unconstitutionality related to Bridges' job, the litigation concerning it was ***not*** a matter of public concern.

  The same is true with Sanders' original lawsuit (No. 97-2938). The specific allegations were simply an open attempt to justify his course of insubordination with respect to Lieutenant Duckett and to avoid the consequences of that insubordination. Because this lawsuit dealt specifically with his job and obtaining an desired outcome in the workplace, it was not a matter

9

of public concern. In light of <u>Bridges</u>, the law was not so clearly established that a reasonable public official would be on notice of the alleged unconstitutionality of the actions alleged here.[3]

      C.      <u>The Doctrine Of Qualified Immunity Requires Dismissal Of Plaintiff's Fifth Amendment Claim</u>.

Plaintiff's Fifth Amendment claim is that he was not rehired when he asked to be rehired. Plaintiff does not allege that there was an open job for him to perform. Because the District complied with the relevant regulations, Plaintiffs' Fifth Amendment rights were not violated. The general rule is that all appointments to the Career Service in the District employees must be filled through a competitive selection process. District Personnel Manual ("DPM"), § 801.5 ("All initial appointments to the Career Service, and subsequent assignments and promotions, shall be made by open competition, unless otherwise authorized by this chapter.") Certain former employees are eligible for reinstatement without competition. DPM, § 805.2. There is no requirement, however, that an eligible employee will necessarily be selected to fill an open position.

Sanders correctly notes that certain former uniformed officers are eligible to bypass competitive selection procedures. Specifically, the DPM provides:

> § 816.6    Notwithstanding the provisions of §§ 816.1 through 816.4, a former uniformed member of the Fire Department or the Metropolitan Police Department shall have reinstatement *eligibility* provided he or she meets all of the following requirements:
>
>     (a)    The former member previously held a Career Appointment (Permanent);
>
>     (b)    The former member was not terminated for cause under Chapter 16 of these regulations; and

---

    [3] Defendants wish to emphasize that they strongly dispute the factual allegations contained in the Complaint. The statement in the text is, of course, cognizant of the standard of review.

10

    (c)  The former member meets the requirements of § 807.1(c) or (e), as appropriate.

Sanders overstates the import of the regulation. He repeatedly characterizes this procedure as permitting him to return to the MPD "anytime within one year" of his resignation. Complaint, ¶ 19. He does concede, however, that the regulation only provided for reinstatement eligibility, Complaint, ¶ 20. Nothing in the regulation suggests that MPD must select a former member; it states only that MPD may select a former member for a position without using a competitive selection procedure.

This regulation does not create a protected property interest under the Fifth Amendment. The D.C. Circuit articulated the applicable test in Bloch v. Powell, 348 F.3d 1060, 1068 (D.C. Cir. 2003) (citations omitted):

> To prevail, Bloch must first show that the interest he asserts is a constitutionally protected property interest. The Supreme Court's formulation in Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972), instructs that 'to have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' The Court elaborated that property interests are created and circumscribed 'by existing rules or understandings that stem from an independent source such as state law -- rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.' Id.

Thus, to have a property interest in actually being rehired, Sanders must show that he had more than a "unilateral expectation" of being rehired and that local law *entitled* him to being rehired. As the regulation makes clear, and the Complaint concedes, the DPM provides Sanders with, at most, "reinstatement eligibility." Sanders' unilateral expectation that if he sought to return to MPD (even if there were no position as he does not allege that a vacancy existed), the MPD would automatically rehire him is wholly unsupported by either statute or regulation. He

11

therefore had no protected property interest. Because he had no property interest, Sanders cannot state a claim for an alleged violation of the Fifth Amendment.

The second inquiry in the qualified immunity analysis is whether the law clearly notified the public officials involved that the alleged conduct was unlawful. Wilson v. Layne, 526 U.S. 603, 609 (1999). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation that he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). It appears that no decisions in this jurisdiction have held that the District's declining to rehire a person with reinstatement eligibility, especially when there is no allegation that a position is available, is unconstitutional. Given that a former MPD uniformed employee is merely eligible to bypass competitive selection procedures, but need not be rehired, and so has at most a unilateral expectation of rehire, the clearly established law leads to the opposite conclusion – the procedure is lawful.[4]

Sanders has therefore failed to state a claim for a constitutional violation under either of his theories. His First Amendment claim fails because he did not speak out on a matter of public concern and, as his litigation involved complaints arising from his official duties, he did not speak "as a citizen." His Fifth Amendment claim fails because he only had a unilateral expectation that the MPD would rehire him, not an enforceable expectation grounded in local law. Moreover, because it is not clearly established that the course of action followed by the

---

[4] Plaintiff includes a reference to "substantive" due process in the title of Count II. None of the allegations appear to describe anything other than a purported procedural due process claim. Indeed, given the alleged facts, the allegations fall short of the "conscience shocking" situation in which substantive due process claims have been found to arise. Collins v. City of Harker Heights, 503 U.S. 115, 124 (1992); Estate of Phillips v. District of Columbia, 455 F.2d 397, 403 (D.C. Cir. 2006).

12

MPD officials was clearly unlawful, they are entitled to immunity from liability by the doctrine of qualified immunity.

        D.      <u>The District Of Columbia Cannot Be Held Liable Under 42 U.S.C. § 1983</u>.

To hold the District liable,[5] Plaintiff must allege that a policy adopted by District officials with final policymaking authority caused the alleged constitutional violation. <u>St. Louis v. Praprotnik</u>, 485 U.S. 112, 126-27, 130 (1988)(plurality); <u>Monell v. New York City Dep't of Social Servs.</u>, 436 U.S. 658, 694 (1978). A municipal government cannot be held liable simply because its employees misuse discretionary authority, <u>i.e.</u>, there is no <u>respondeat superior</u> liability. <u>Monell</u>, 436 U.S. at 694; <u>see also</u> <u>Praprotnik</u>, 485 U.S. at 130 (1988). Municipal governments are to "be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights." <u>Praprotnik</u>, 485 U.S. at 122. Because only official policies/customs lead to municipal liability, "[o]nly those municipal officials who have 'final policymaking authority' may be their actions subject the government to § 1983 liability," <u>Praprotnik</u>, 485 U.S. at 123.

In this case, Plaintiff alleges that the District is liable for the actions of MPD managers and not because of its own actions. The Supreme Court has clearly stated that the mere misuse of supervisory authority (and it was not, in fact, misused) does not establish a basis for municipal joSince the District's liability cannot be based on *respondeat superior*, Plaintiff has failed to state a claim upon which relief can be granted.

---

       [5]      Chief Ramsey has been sued in his official capacity which is just another way of suing the District. <u>Kentucky v. Graham</u>, 473 U.S. 159 (1985).

13

Although there are certain instances when a single decision may lead to liability, Plaintiff's Complaint is insufficient to state such a claim. As the Court explained in <u>Steele v. D.C. Hous. Auth.</u>, 2006 U.S. Dist. LEXIS 8239 (D.D.C. 2006):

> As the Supreme Court has held,
>
> Proof of a single incident of unconstitutional activity is not sufficient to impose liability [against a municipality] under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. . . . Where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

<u>Id.</u>, <u>quoting</u> <u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 823 (1985). Plaintiff must allege "considerably more . . . than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation." Here, generously construed, there is only one incident that alleged in the Complaint which does not, as a matter of law, gives rise to a policy. Sanders therefore fails to state a claim for municipal liability.

### IV.   CONCLUSION

This suit is about Christopher Sanders' demand that he be given a job with the MPD. Although eligible for rehire without having to go through competitive selection procedures, Sanders was not rehired. This routine personnel decision was not unconstitutional or otherwise wrongful. Sanders has not alleged a constitutional violation nor demonstrated that the law clearly notified the involved public officials that there actions were allegedly unlawful. He has therefore failed to state a claim upon which relief can be granted.

Dated: September 28, 2006     Respectfully submitted,

ROBERT J. SPAGNOLETTI
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Kimberly Johnson
KIMBERLY MATTHEWS JOHNSON
Chief, General Litigation I
D.C. Bar No. 435163

/s/ Wendel Hall
WENDEL V. HALL
Assistant Attorney General
D.C. Bar No. 439344
Suite 6S012
441 4th Street, N.W.
Washington, D.C. 20001
(202) 724-6608
(202) 727-0431 (fax)
E-mail: wendel.hall@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER SANDERS,            )<br>                                 )<br>     Plaintiff,                 )<br>                                 )  Civil Action No. 06-1411 (PLF)<br>v.                               )<br>                                 )<br>                                 )<br>                                 )<br>DISTRICT OF COLUMBIA, et al.,    )<br>                                 )<br>     Defendants.                )<br>                                 ) | |

**ORDER**

Having considered Defendant's Motion To Dismiss For Failure To State A Claim, the memorandum of points and authorities in support, Plaintiff's Opposition, Defendant's Reply, if any, and the entire record herein, it is, this ____ day of ____, 2006:

ORDERED:   that Defendant's Motion To Dismiss For Failure To State A Claim shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED:   that Plaintiff's Complaint shall be, and hereby is, DISMISSED.

_____
Paul L. Friedman
United States District Judge


2

cc:

Wendel V. Hall, Esq.
Assistant Attorney General
441 4th Street, N.W.
Sixth Floor South
Washington, D.C.   20001

Michael G. Kane, Esq.
Cashdan & Kane PLLC
1150 Connecticut Ave NW
Suite 900
Washington DC 20036-4104