**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHRISTOPHER SANDERS** ) | |
| ) | CA No. 06-1411 (PLF) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **DISTRICT OF COLUMBIA, et al.** ) | |
| ) | |
| ) | |
| Defendants ) | |
| _____ ) | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

This is an action for injunctive and declaratory relief and for money damages to redress the deprivation of plaintiff Christopher Sanders' rights, privileges and immunities under the Constitution and laws of the United States, specifically the First and Fifth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

Mr. Sanders alleges that the Chief of Police, among others, retaliated against him because he exercised his First Amendment rights to speak out on matters of public concern and to petition the courts for a redress of his grievances. Mr. Sanders alleges that this retaliation took the form of a refusal to accept his request to rescind his resignation, reinstate him to his position with the Metropolitan Police Department and grant him an educational leave of absence and the dissemination of false defamatory information about him in the form of an illegitimate internal investigation, among other things.

In addition, Mr. Sanders alleges that his property was deprived without due process. In particular, Mr. Sanders, who was a former career police officer, alleges that he was "reinstatement eligible" meaning that he qualified for non-competitive reinstatement to the

Metropolitan Police Department.  Ms. Sanders alleges that he had a property interest in being given a fair opportunity to demonstrate that he was eligible for reinstatement pursuant to DC Personnel Regulations but that he was denied this opportunity when, unbeknownst to him, the Defendants conducted a bad faith investigation into his character and reached factually unsupported conclusions that were used as an excuse not to reinstate him.

Defendants have now filed a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  In making their motion Defendants ignore the fact that the Court has already ruled on the First Amendment issues Defendant now raises.  In particular, the Court, in its 1998 opinion, *Sanders, et al, v. District of Columbia, et. al.,* 16 F. Supp. 2d 10 (D.D.C. 1998) found that Plaintiff's speech touched on matters of public concern, that the plaintiff's interest in speaking out on matters of public concern outweighed the District's interest in suppressing the speech and that the plaintiff's rights were clearly established.  There is no reason to change the Court's well reasoned opinion.

Defendants' attacks on Mr. Sanders' due process claim should also fail.  Contrary to Defendants' assertions, Mr. Sanders does have a property interest in being given a fair opportunity to show that he was qualified for reinstatement.  Defendants denied him of this opportunity without due process because they conducted a bad faith investigation of him the results of which were used as an excuse to deny reinstatement.  Mr. Sanders was not made aware of the false charges and, therefore, did not have an opportunity to respond to them.

Accordingly, the Court should deny the Defendants' Motion to Dismiss.

## I.     FACTUAL BACKGROUND

Taking the facts as alleged in the Complaint as true shows the following:

Plaintiff Christopher Sanders became a police officer with the Metropolitan Police Department of Washington, D.C. in 1990.  Complaint at ¶ 8.  In November 1996, the MPD

created a unit called the Special Emphasis Unit (SEU) under the direction of Lt. Lowell Duckett. The SEU was a unit within the Narcotics and Special Investigations Division of the Support Services Bureau. Its purpose and mission was to investigate and stop gang activity, especially trafficking in illegal narcotics. *Id*. at 9.

Sgt. Sanders and Sgt. Harry T. Hill were selected to supervise the officers in SEU. Both Sgt. Hill and Sgt. Sanders had been recognized for their accomplishments in battling illegal narcotics in the District of Columbia and had previously been named to other special units. *Id*. at 10.

During their time in SEU, Plaintiff Sanders and others noticed what appeared to be abuses of the time and attendance policies of the MPD that may be criminal in nature. The abuse resulted in the loss of taxpayer money. Plaintiff Sanders reported his concerns and objections to various superiors in his chain of command. He also testified before the District of Columbia City Council. Plaintiff's objections were also covered in the local media. Sanders did not make this speech pursuant to his official duties. *Id*. at 11.

Following his objections, Plaintiff Sanders was treated adversely in that he was deprived overtime pay, physically threatened and reassigned to a less desirable position, among other things. *Id*. at 12.

Plaintiff Sanders and Sgt. Hill brought suit against the District of Columbia and others in U.S. District Court for the District of Columbia in Civil Action No. 97-02938 for violations of their right to free speech. *Id*. at 13.

Plaintiff Sanders testified on several occasions during that lawsuit in deposition and otherwise actively participated in the litigation of the case. *Id*. at 14.

The litigation raised matters of public concern in that it objected to alleged misconduct on the part of the Mayor, the Chief of Police and a MPD lieutenant. *Id*. at ¶ 15. *See also, Sanders v. District of Columbia*, 16 F. Supp. 2d 10 (D.D.C. 1998).

During the litigation Plaintiff Sanders engaged in settlement negotiations through his attorney. In or about August 2002, the parties reached a settlement of the claims. In part, the District was required to promote Plaintiff to Lieutenant and to assign him to the Major Crash Unit. *Id*. at ¶ 16.

In or about August 2002, Plaintiff Sanders was presented with the opportunity to complete a Master of Business Administration Program at no expense to the MPD at Marymount University in Arlington, Virginia. *Id*. at ¶ 17.

Plaintiff Sanders contemplated whether to resign from the MPD in order to pursue this educational opportunity or whether he should request an educational leave of absence. *Id*. at ¶ 18.

In early September 2002, Plaintiff was advised by MPD officials that even if he resigned from the MPD he was always free to come back within one year. *Id*. at ¶ 19.

This advice was consistent with §816.6 of the DC Personnel Manual which stated that a former member of the MPD shall have reinstatement eligibility. Id. at ¶ 20.

Plaintiff Sanders on or about September 5, 2002 decided to resign from the MPD in order to pursue his educational opportunities. Plaintiff Sanders submitted a document informing the MPD that he was resigning with 30 days notice. *Id*. at ¶ 21.

Unbeknownst to Plaintiff Sanders, on or about September 5, 2002, the relevant MPD officials signed off on his request. *Id*. at ¶ 22.

Within days of submitting his resignation and within the 30 day notice period, Plaintiff Sanders submitted a request to rescind his resignation. *Id.* at ¶ 23.

Plaintiff Sanders also requested a leave of absence without pay to be granted so that he could attend school for his MBA. Such a request was consistent with past practice at the MPD. For example, on one occasion an officer had been given a year of leave with pay in order to attend studies. *Id.* at ¶ 24.

Having heard nothing back from his request, Plaintiff Sanders submitted another request that was received by Defendant Ramsey's office on November 15, 2002. *Id.* at ¶ 25.

Thereafter, on several occasions, Plaintiff Sanders, through his attorney, requested a response from the District of his request to rescind his resignation letter and his request for an educational leave of absence. *Id.* at ¶ 26.

Without Plaintiff Sanders' knowledge, the MPD, at the direction of Chief Ramsey, and/or Jeffrey Herrold and/or John Doe commenced an investigation of Plaintiff Sanders, the primary purpose of which was to contrive a reason to deny Plaintiff Sanders his request to rescind his resignation. The MPD falsely charged Plaintiff Sanders with willfully and knowingly making an untrue statement regarding the date he planned to return from leave and for being absent without leave for more than four consecutive hours. The investigation was conducted by Plaintiff Sanders' former superior Lieutenant Jeffrey Herrold. *Id.* at ¶ 27.

Chief Ramsey knew that these allegations were false and were not supported by the evidence relied upon in the investigation. *Id.* at ¶ 28.

Plaintiff Sanders did not learn of this investigation until late 2005 from an anonymous source. *Id.* at ¶ 29.

As a result of this bad faith investigation, the MPD concluded that Plaintiff Sanders had knowingly made false statements about when he would return from leave, and that he should not be reinstated.  However, the MPD did not interview Plaintiff Sanders during the investigation, did not disclose its results to Plaintiff Sanders and did not give Plaintiff Sanders an opportunity to respond to the charges.  *Id*. at ¶ 30.

Lt. Herrold and/or John Doe conducted the investigation and made unsubstantiated conclusions in retaliation for Plaintiff Sanders' free speech activities and because of his participation in the federal lawsuit.  *Id*. at ¶ 31.

The MPD's charges were untrue.  Moreover, the investigation was conducted in violation of MPD procedures.  For example, the MPD did not even commence the investigation until approximately 9 months after the events in question.  District law, at that time, required corrective or adverse action to be taken within 45 days.  The MPD did not afford Plaintiff Sanders the opportunity to respond to the charges lodged against him and the facts did not support a finding that Plaintiff Sanders had done anything wrong.  *Id*. at ¶ 32.

On August 15, 2003, Defendant Ramsey declined to reinstate Plaintiff Sanders without explanation and without providing Sanders any due process.  In fact, Defendant Ramsey made his decision in retaliation for Plaintiff's exercise of his free speech and because of Sanders' participation in the lawsuit concerning the retaliation he suffered and/or because he was induced to do so at the urging of Lt. Herrold and/or John Doe.  *Id*. at ¶ 33.

Plaintiff Sanders objected to this decision by written letter.  The MPD treated Plaintiff Sanders objection as a grievance.  However, to date, it has not responded to the grievance.  *Id*. at ¶ 34.

**Count I – First Amendment**

In Count I, Mr. Sanders alleged retaliation for exercising his right to free speech and right to petition the government for redress of grievances, both under the First Amendment.  Mr. Sanders alleged that in pursuing his lawsuit (CA No. 97-02938), he was speaking on a matter of public concern.  Specifically, he was objecting to the retaliation he suffered because he objected to time and attendance fraud that resulted in a waste of taxpayer money.  In addition, Sanders was petitioning the government for redress of his grievances.  These rights are protected by the First Amendment to the U.S. Constitution.  *Id.* at ¶ 36.

Chief Ramsey violated Plaintiff Sanders' first amendment right to speak out on matters of public concern and petition the government for redress when he knowingly refused to permit Plaintiff Sanders to rescind his resignation from the MPD and/or refused to reinstate Plaintiff Sanders to the MPD and caused false and defamatory statements to be made about Plaintiff Sanders through his subordinate, Lieutenant Jeffrey Herrold.  Plaintiff Sanders' statements in his lawsuit (CA No 97-02938) and elsewhere in which he objected to time and attendance fraud and his participation in that lawsuit were a substantial or motivating factor in Chief Ramsey's actions.  *Id.* at ¶ 37.

Chief Ramsey acted under color of law and showed a deliberate indifference to the Plaintiff Sanders' first amendment rights to speak out on matters of public concern and petition the government for a redress of grievances.  *Id.* at ¶ 38.

Lt. Herrold violated Plaintiff Sanders' first amendment right to speak out on matters of public concern and petition the government for redress when he knowingly conducted a baseless investigation of Plaintiff, reached spurious conclusions and made false and defamatory charges leading to his unsupported recommendation that Plaintiff not be reinstated.  Plaintiff Sanders'

statements in his lawsuit (CA No 97-02938) and elsewhere in which he objected to time and attendance fraud and his participation in that lawsuit were a substantial or motivating factor in Lieutenant Herrold's actions. *Id*. at ¶ 39.

Lieutenant Herrold acted under color of law and showed a deliberate indifference to the Plaintiff Sanders' first amendment rights to speak out on matters of public concern and petition the government for a redress of grievances. *Id*. at ¶ 40.

Defendant District of Columbia violated Plaintiff Sanders' first amendment right to speak out on matters of public concern and petition the court for redress because Chief Ramsey was the final policy maker regarding the reinstatement of former MPD police officers and the MPD's treatment of persons who complain of waste and misuse of MPD personnel and funds. Further, Chief Ramsey acted pursuant to a custom, plan or policy of the District of Columbia, which was to retaliate against persons who objected to mismanagement, fraud and who petitioned the court for relief of retaliation. Further, Chief Ramsey, as supervisor, was aware of, or should have been aware of, the unconstitutional acts of his subordinates Herrold and Doe but failed to take corrective action. *Id*. at ¶ 43.

### Count II – Due Process

In Count II, Mr. Sanders alleged violations of his substantive and procedural due process rights concerning the facts surrounding his attempts to rescind his resignation. Mr. Sanders alleged that he had a property interest in being given a fair opportunity to demonstrate that he was eligible for reinstatement pursuant to DC Personnel Regulation § 816.6. *Id. at* ¶ 47.

Further, Mr. Sanders alleged that Defendant Ramsey, acting under color of law, deprived Plaintiff Sanders of his property, his government employment, without substantive or procedural due process of law, in violation of the Fifth Amendment, when he refused to reinstate Plaintiff

Sanders in violation of District regulations and law and when he caused a false and defamatory investigation to be conducted of Plaintiff without giving Plaintiff the opportunity to respond to the charges.  *Id*. at ¶ 48.

Defendant District of Columbia, acting through Defendant Ramsey and/or other unknown persons, deprived Plaintiff Sanders of his property without substantive or procedural due process of law in violation of the Fifth Amendment, when it refused to reinstate Plaintiff Sanders to his position in violation of District regulations and law.  The District of Columbia is liable for the actions of Defendant Ramsey and/or these unknown persons because Ramsey and/or these unknown persons are final policymakers regarding the process to be given employees seeking reinstatement or because they acted pursuant to a custom or policy of the District of Columbia of denying employees due process when they seek reinstatement.  *Id*. at ¶ 49.

## II.    ARGUMENT

### A.    Defendant Cannot Show that Plaintiff Has Failed To State a Claim.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all of the factual allegations contained in the complaint.  *Swierkiewicz v. Sorema N.A*., 534 U.S. 506, 508 (U.S. 2002).  This Court must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged.  *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80, (1957); *Barr v. Clinton*, 361 U.S. App. D.C. 472, 370 F.3d 1196, 1199 (D.C. Cir. 2004);  *Dl v. D.C.,* 2006 U.S. Dist. LEXIS 59947 (D.D.C. 2006).  A motion to dismiss should not be granted "unless plaintiffs can prove no set of facts in support of their claim which would entitle them to relief." *Kowal v. MCI Communications Corp*., 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276 (D.C. Cir. 1994);  *Sanders v. District of Columbia*, 16 F. Supp. 2d 10, 12 (D.D.C. 1998).

With this framework in mind, Mr. Sanders addresses Defendant's arguments.

**B.    The Court Rejected Most of Defendants' Arguments regarding Count I in Sanders v. District of Columbia, 16 F. Supp. 2d 10 (D.D.C. 1998).**

In arguing that Mr. Sanders has failed to state a claim under the First Amendment in Count I the individual defendants argue they are entitled to qualified immunity because 1) Mr. Sanders did not speak out on a matter of public concern; 2) the District's interests in the efficient running of the government outweighs the plaintiff's interest and his potential audiences interest in hearing his speech and 3) a reasonable official would not have known that his conduct violated the plaintiff's rights.

The Court should reject all of Defendants' arguments because the Court has already considered and rejected them. To the extent some of the facts have changed, the Court's legal analysis is still applicable and shows that Defendants arguments are meritless.

**1.    Mr. Sanders was Speaking Out on a Matter of Public Concern.**

The Court has previously had to opportunity to rule on the question of whether Mr. Sanders' speech touched on a matter of public concern. After analyzing the relevant case law the Court held that it did:

> According to the Supreme Court, a government employee's speech is protected only if it is "on a matter of public concern, and the employee's interest in expressing [him]self on the matter . . . [is] not . . . outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of public services it performs through its employees." *Waters v. Churchill*, 511 U.S. 661, 668, 128 L. Ed. 2d 686, 114 S. Ct. 1878 (1994) (internal quotation omitted); *see also O'Donnell v. Barry*, 148 F.3d 1126 (D.C. Cir. 1998).
>
> The District, Barry, and Soulsby first argue that plaintiffs fail to state a claim under § 1983 because their speech did not address a matter of public concern. The Court disagrees; plaintiffs' objections to orders to carry Detective Walltower on the daily duty

10

roster (thus entitling him to pay) although they had never observed him working -- a clear misuse of public funds, if true -- qualifies as speech on a matter of public concern. *See O'Donnell*, 1998 W.L. 420011, at *5 (letter by police officer discussing questionable transfer of another officer was matter of public concern); *Fox v. District of Columbia*, 317 U.S. App. D.C. 443, 83 F.3d 1491, 1494 (D.C. Cir. 1996) (report of theft of funds from D.C. Lottery is matter of public concern); *Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989) (letter alleging misappropriation of public funds by police chief is matter of public concern) (cited with approval in *Fox*, 83 F.3d at 1494). Although the Supreme Court has held that simple "employee grievances" are not matters of public concern, *see, e.g., Connick v. Myers*, 461 U.S. 138, 147-48, 75 L. Ed. 2d 708, 103 S. Ct. 1684 (1983); *Murray v. Gardner*, 239 U.S. App. D.C. 212, 741 F.2d 434, 438 (D.C. Cir. 1984), *cert. denied*, 470 U.S. 1050, 84 L. Ed. 2d 813, 105 S. Ct. 1748 (1985), plaintiffs' allegations do not fall within this category. *See O'Donnell*, 1998 W.L. 420011, at *6; *Tao v. Freeh*, 307 U.S. App. D.C. 185, 27 F.3d 635, 639-40 (D.C. Cir. 1994). Plaintiffs' objections do not appear to have been motivated by an unfavorable personnel decision or a personal grievance. *Cf. Connick*, 461 U.S. at 147-48 (questionnaire concerning office transfer policy not matter of public concern when plaintiff distributed it after being informed that she was going to be transferred); *Murray*, 741 F.2d at 438-439 (employee's criticism of furlough plan not matter of public concern when motivated by self-interest in outcome). Nor does the context of plaintiffs' objections indicate a personal vendetta. *See Fox*, 83 F.3d at 1495 (indicating speech which does not contain "trumped-up, scattershot claims of misbehavior" does not lose its First Amendment protection as an "employee grievance" under Connick).

*Sanders v. District of Columbia*, 16 F. Supp. 2d 10, 12-13 (D.D.C. 1998)

The only difference in the present case is that Mr. Sanders is also alleging that his speech as articulated in the lawsuit, addressed by the Court, as well as his participation in that lawsuit is also speech touching on a matter of public concern. But there is no reason why the analysis would be different because the kind of speech was the same, *i.e.*, Mr. Sanders was objecting to the waste and misuse of taxpayer funds in the form of overtime for a ghost employee.

Defendants argue that Mr. Sanders' original lawsuit was an "attempt to resist the authority of their superior" who they were "openly hostile to" and "concocted allegations against." Defendant's brief at 7. According to Defendants, Mr. Sanders had a personal gripe and was just trying to remove an unwanted supervisor. Id.

None of Defendants' argumentation, however, is supported on the face of the Complaint. A reading of the complaint favorable to Mr. Sanders shows that he was objecting to what he thought was potentially criminal conduct that was resulting in the loss of taxpayer money, which, as the Court held, is a matter of public concern and, in the subsequent lawsuit, Mr. Sanders spoke about alleged misconduct on the part of the Mayor, the Chief of Police and a MPD lieutenant. Complaint at ¶ 10-11, 15.

Defendants' argument is wholly unsupported by the Complaint and by the case law. Mr. Sanders was speaking out on a matter of public concern. The Motion to Dismiss should be denied.

> **2.    Defendant Offers No Facts In Support of Its Bold Statement that the Government's Interest Outweighs the Plaintiff's Free Speech Interest.**

Defendant makes a bold statement that its interest in the efficient running of government outweighs the plaintiff's interest in free speech but then offers nothing in support of this claim. See, Defendant's Brief at 5. The Court rejected a similar argument in *Sanders I*:

> The District, Barry, and Soulsby next contend that even if plaintiffs' speech was on a matter of public concern, they still have not stated a § 1983 claim because their interest in speech is outweighed by the District's interest "in promoting the efficiency of the public services it performs through its employees." *Waters*, 511 U.S. at 668. Relevant factors in the balancing test include the public interest in the speech; whether the speech impaired discipline by superiors, harmony among coworkers, or the performance of the speaker's duties; whether the speech had a detrimental impact on close working relationships for which personal loyalty and confidence are necessary; and the time, place,

and manner of the speech. *See Rankin v. McPherson*, 483 U.S. 378, 388, 97 L. Ed. 2d 315, 107 S. Ct. 2891 (1987); *Connick*, 461 U.S. at 151-154; *O'Donnell*, 1998 W.L. 420011, at *7; Tao, 27 F.3d at 641 n.5. "Because of the special degree of trust and discipline required in a police force there may be a stronger governmental interest in regulating the speech of police officers than in regulating the speech of other governmental employees." *O'Donnell*, 1998 W.L. 420011, at *7; *see also Shands v. Kennett*, 993 F.2d 1337, 1344 (8th Cir. 1993), *cert. denied*, 510 U.S. 1072, 127 L. Ed. 2d 75, 114 S. Ct. 880 (1994); *Maciariello v. Sumner*, 973 F.2d 295, 300 (4th Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993). However, contrary to defendants' suggestion, "the right to regulate an officer's speech is not absolute." *O'Donnell*, 1998 W.L. 420011, at *7 (citing Biggs v. Village of Dupo, 892 F.2d 1298, 1303 (7th Cir. 1990)).

The Court concludes that defendants have not even approached the showing required to overcome plaintiffs' interest in free speech. Defendants have not explained how the MPD's ability to maintain order and discipline within its ranks was affected adversely by plaintiffs' refusal to include a "ghost" employee on the duty roster -- a practice which, according to the complaint, is in direct violation of MPD policy. See Compl. P 15. Although defendants argue that courts consistently find that the police department's need to maintain order and discipline outweighs an employee's First Amendment rights, the cases cited all involve situations in which the plaintiff's expression was motivated by self-interest or consisted, at least in part, of an unauthorized investigation. *Compare Marciariello*, 973 F.2d at 300 (discussing the police department's interest in discouraging unauthorized internal investigations), and *Breuer v. Hart*, 909 F.2d 1035, 1040-41 (7th Cir. 1990) (noting that plaintiff's allegations were motivated by self-interest and that his unauthorized internal investigation caused dissension in the department), and *McMurphy v. City of Flushing*, 802 F.2d 191, 198 (6th Cir. 1986) (deciding balancing test in favor of police department because plaintiff conducted unauthorized investigations rather than utilizing normal grievance procedures to communicate his concerns), with *Cooper v. Smith*, 855 F. Supp. 1276, 1282 (S.D. Ga. 1994) (holding that when the only disruptive element of a deputy sheriff's speech was the content of the speech, and there is no serious challenge to the truth of the statements, then the interest of the sheriff's department does not outweigh deputy's First Amendment rights), *aff'd*, 89 F.3d 761 (11th Cir. 1996). Therefore, the Court denies defendants' motion to dismiss plaintiffs' § 1983 claim on this ground.

*Sanders v. District of Columbia*, 16 F. Supp. 2d 10, 13-14 (D.D.C. 1998) (emphasis added).

The Court should reject Defendants unsupported argument and deny the motion to dismiss.

> **3.  The Law Was Clearly Established that Mr. Sanders Was Speaking Out On a Matter of Public Concern and That It was Objectively Unreasonable for the Defendants to Act as They Did.**

The individual defendants claim qualified immunity because the "law was not clearly established as of the time of the alleged action." Defendants' Brief at 8.

The Court also had the opportunity to address the question of whether the individual defendants in the original suit were protected by qualified immunity. That analysis, which is relevant here, was as follows:

> Defendants Barry and Soulsby also contend that plaintiffs' case should be dismissed because they are protected by qualified immunity. Government officials are protected by qualified immunity when they perform discretionary functions and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. Barry and Soulsby argue that plaintiffs' speech was not protected and hence no constitutional right was violated or, in the alternative, that even if plaintiffs' speech was protected, their right to speak was not a "clearly established" constitutional right of which a reasonable person would have known. *See id*. The Court disagrees. As previously discussed, the facts pled by plaintiffs, if true, establish a clear First Amendment violation. … Accordingly, Barry and Soulsby's motion to dismiss on qualified immunity grounds is denied.

*Sanders v. District of Columbia*, 16 F. Supp. 2d 10, 15 (D.D.C. 1998).

The reasons to reject Defendants' current use of this argument are even more compelling because the Court's opinion had already been decided when the retaliatory acts alleged in the Complaint occurred. For example, when Chief Ramsey and others decided to instigate a baseless

investigation into Plaintiff for the purpose of trumping a charge that could be used to deny him reinstatement in retaliation for his free speech activities, Chief Ramsey and others already knew that a Federal Court in the District of Columbia had held that Plaintiff Sanders' speech touched on a matter of public concern and had decided that that right was clearly established.  It defies logic for the individual defendants to argue, given the history of this particular action, that Mr. Sanders' rights were not "clearly established."  *Barham v. Ramsey*, 434 F.3d 565, 572 (D.C. Cir. 2006) (the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.")  Further, a reasonable official would surely have known that it is retaliation to punish a citizen for exercising their right to free speech by refusing to rehire the person and/or instigating a bad faith investigation designed to fabricate a justification for that refusal to rehire. In the context of free speech, even the canceling of a birthday party can be considered retaliatory. *Rutan v. Republican Party*, 497 U.S. 62, 76 (U.S. 1990) (the First Amendment protects state employees from "even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish her for exercising her free speech rights.")  The allegations in the Complaint, *e.g.* denial of employment, are far more serious.

Accordingly, the Court should reject Defendant's argument and deny Defendants' Motion to Dismiss.

C.    **Count II States A Claim for Denial of Procedural and Substantive Due Process.**

In Count II, Mr. Sanders alleged that he had  "property interest in being given a fair opportunity to demonstrate that he was eligible for reinstatement pursuant to DC Personnel Regulation § 816.6."  Complaint at ¶ 47.  Mr. Sanders sought to rescind his resignation within days of submitting it and repeated that request several times.  Id. at ¶ 23, 24, 25, 26.  Section

816.6 allowed for non-competitive reinstatement to the career service. Id. at ¶ 19, 20. Plaintiff alleges that Defendants deprived him of his right to non-competitive reinstatement when they instigated a baseless investigation into his background that resulted in false charges being made with the recommendation that he not be reinstated and did not provide Mr. Sanders notice of the charges or a chance to respond to the charges. *Id.* at ¶ 27, 28, 30, 31, 32, 33, 37, 39. Chief Ramsey ultimately declined to reinstate Mr. Sanders.

The first question is whether Mr. Sanders has alleged the deprivation of a recognizable property interest. The Fifth Amendment of the United States Constitution prohibits the District government from depriving its citizens of property without due process of law. *Fonville v. D.C.*, 2006 U.S. Dist. LEXIS 58564, 9-14 (D.D.C. 2006), *citing*, U.S. CONST. amend. V. Under certain circumstances, an individual's employment with a state or local government constitutes a property interest. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). An individual has a property interest in his or her employment when that person has a legitimate claim of entitlement to the job. *Roth*, 408 U.S. at 577. The legitimate claim of entitlement of employment is not created by the United States Constitution, but by independent sources such as state statutes, agency rules or policies, or agreements. *Roth*, 408 U.S. at 577-78.

Plaintiff as a Police Officer was covered by the Comprehensive Merit Protection Act ("CMPA"), which creates a property interest for employees governed by it. The CMPA establishes a Career Service for employees in which they are guaranteed to be promoted based on merit and cannot be terminated without cause. D.C. Code §§ 1-608 & 1-616.51. The Career Service includes employees who serve as sworn officers with the MPD. D.C. Code § 1-608.01.

Under CMPA, employees can only be disciplined for cause and prior notice must be given. Id. *Fonville v. D.C.*, 2006 U.S. Dist. LEXIS 58564, 9-14 (D.D.C. 2006).

In the present case, Plaintiff resigned but this act did not end his property interest in government employment. Within days, and before the effective date of the resignation, Mr. Sanders sought to rescind the resignation and take a leave of absence. Plaintiff's attempt to return to service was consistent with what his superiors told him,[1] *i.e.* that he had the right to return to work within one year and with DC regulations § 816.6 that permitted non-competitive reinstatement for a period of three years. Plaintiff alleges that his request for reinstatement was not fairly judged because of the bad faith investigation and that the Chief ultimately denied it. In effect, Plaintiff's efforts to be reinstated ended when the bad faith investigation was conducted.

While explained above, the Complaint alleges a property interest, it is important to note that discovery in this case has not yet commenced. It is entirely likely that during discovery additional evidence will come to light to support further Mr. Sanders' property interest claim. This evidence will likely consist of testimony from witnesses concerning MPD practices concerning reinstatement, other policies and regulations concerning reinstatement, and the treatment of comparable employees' requests for reinstatement. This is all evidence that is relevant to the weighing of whether a property interest exists but it is unavailable at this early stage of the litigation.

Plaintiff had a property interest in having his request for reinstatement be judged fairly. Defendant deprived him of due process when it denied his request for reinstatement without giving him a chance to respond to the charges against him. In effect, Defendants removed Mr.

---

[1] These verbal representations are significant as they can support a property claim. *Buttitta,* 9 F.3d at 1204 (property interest may be created by custom or agreement). On a motion to dismiss, the Court must accept this allegation as true.

Sanders from reinstatement consideration.  This case is very similar to the facts of *Stana v. School Dist.*, 775 F.2d 122 (3d Cir. 1985).

In *Stana*, the plaintiff was certified to teach chemistry and general science by the Pennsylvania Department of Education.  She applied for a teaching position with the Pittsburgh School District. Under relevant law, the Superintendent of Schools must keep eligibility lists "arranged as nearly as possible in the order of rank or standing." 24 Pa. Stat. Ann. § 21-2110 (Purdon 1962).  *Stana v. School Dist.*, 775 F.2d 122, 124 (3d Cir. 1985).  Stana was qualified to be on the eligibility list and was placed on it.

The individual defendant, Allebrand, who had the responsibility to update the files of persons on the list with current information, subsequently received a negative evaluation concerning Stana from one of her previous employers.  Subsequently, Allebrand had Stana's name removed from the eligibility list because of the negative evaluation.

Stana's § 1983 complaint alleged, among other things, that the District's failure to provide her with notice and an opportunity to be heard concerning the negative evaluation prior to its decision to remove her from the list violated the Due Process Clause of the Fourteenth Amendment.  *Stana*, 775 F.2d at 124-125 (3d Cir. 1985).

The Third Circuit held that Stana's retention on the eligibility list implicated a constitutional "property" interest created by state law.  The evidence established that Stana had a sufficient "legitimate claim of entitlement" to her place on the eligibility list so that it could not be "arbitrarily undermined", the essence of a property interest.  *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 33 L. Ed. 2d 548, 92 S. Ct. 2701 (1972).  *Stana*, 775 F.2d at 125 (3d Cir. 1985)

The Court held that "It is evident that remaining on the eligibility list, which was a prerequisite to a teaching position, was a "legitimate entitlement" that the School District had created through the policies it promulgated to implement the state statute on teacher hiring. As such, it represented both an existing policy or rule and an explicit understanding sufficient to constitute a property interest, *see Perry v. Sindermann*, 408 U.S. at 601-03, which triggered the requirement for an inquiry that comported with procedural due process." *Stana v. School Dist.*, 775 F.2d 122, 126-127 (3d Cir. 1985).

The Court remanded holding that "the factfinder will have to determine whether, if Stana had been given notice and the opportunity to present a response to the adverse teaching report, she would have been placed in a public school teaching position. *Stana v. School Dist.*, 775 F.2d 122, 131-132 (3d Cir. 1985).[2]

Similarly, here, as in *Stana*, the Defendants must recognize the reinstatement rights of its officers and not cast those rights aside without affording the officers due process. The factfinder

---

[2] *See also, Buttitta v. City of Chicago*, 9 F.3d 1198, 1204 (7th Cir. 1993) (police officer had property interest in being returned to department for opportunity to demonstrate their fitness for active duty.)

needs to determine whether Mr. Sanders, if provided notice and an opportunity to be heard concerning the baseless allegations, would have been reinstated.[3]

Defendants also argue that qualified immunity is appropriate because a reasonable officer would not have known that his conduct was unlawful. Defendant's brief at 12. Defendants characterize the conduct as "declining to rehire a person with reinstatement eligibility, especially when there is no allegation that a position is available … ." Id. But this is a mischaracterization of Count II. The relevant inquiry is whether a reasonable officer would have thought it constitutional to deny a person seeking reinstatement the ability to respond to false charges being lodged against him when those charges were used as a basis for denying the request for reinstatement. Under that analysis, it is clear that a reasonable official, per *Stana* and well established notions of justice and fair play, would have provided the citizen with an opportunity to be heard before making a decision.

Mr. Sanders has also alleged sufficient facts to make out a substantive due process claim. *E. Trans-Waste of Md., Inc. v. District of Columbia*, 2006 U.S. Dist. LEXIS 4700, 6-7 (D.D.C. 2006). What is required is allegations of "egregious government misconduct." *Id., see also Silverman v. Barry*, 269 U.S. App. D.C. 327, 845 F.2d 1072, 1080 (D.C. Cir. 1988) (requiring

---

[3] Defendant claims that Plaintiff's complaint fails because he does not allege that there was a vacancy for him to be reinstated into. This is not necessary in the complaint, which simply requires notice pleading. See, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (U.S. 2002) (not necessary to plead a prima facie case). In any event, it logically follows that if one is seeking reinstatement, one is assuming that there is a position to which one may be reinstated. Moreover, the constitutional wrong is not having one's opportunity for reinstatement being fairly considered because notice was not given of accusations. Finally, to suggest that Mr. Sanders does not allege a vacancy is not a fair reading of the complaint. It is clear that Mr. Sanders was, at least initially, seeking to rescind his resignation in order to obtain a leave of absence and then return to his position as a lieutenant in Major Crash. As time passed, Mr. Sanders simply wanted to be reinstated to an available position. Further, Chief Ramsey, in denying Mr. Sanders' request did not do so because of any alleged lack of a vacancy. Discovery will surely show ongoing hiring at the MPD.

that the government's infringement of the recognized property interest constitute a "grave unfairness"). Here, Mr. Sanders alleges that the defendants set out to trump up reasons to deny him reinstatement when they knew that the investigations findings were unsupported by the facts and that they did so in retaliation for Mr. Sanders' exercise of free speech. These are allegations of grave and egregious misconduct. *See also Dominion Cogen, D.C., Inc. v. District of Columbia*, 878 F. Supp 258, 265 (D.D.C. 1995) ("Plaintiffs allege neither mere sloth nor incompetence, but rather a concerted effort on the part of various D.C. officials to undermine and subvert plaintiffs' project."). Accordingly, the substantive due process claim should survive the motion to dismiss.

### D.    THE DISTRICT OF COLUMBIA CAN BE HELD LIABLE UNDER 42 USC § 1983

The District's final argument is that it cannot be held liable under a respondeat superior theory under 42 USC 1983. Plaintiff is not arguing this theory. Instead, Plaintiff alleges facts which, if true, would establish municipal liability under the two traditional theories of municipal liability 1) policy or custom and 2) actions by a final policymaker.

Thus, the Complaint alleges:

With regard to Count I:

> Defendant District of Columbia violated Plaintiff Sanders' first amendment right to speak out on matters of public concern and petition the court for redress because <u>Chief Ramsey was the final policy maker</u> regarding the reinstatement of former MPD police officers and the MPD's treatment of persons who complain of waste and misuse of MPD personnel and funds. <u>Further, Chief Ramsey acted pursuant to a custom, plan or policy of the District of Columbia, which was to  retaliate against persons who objected to mismanagement, fraud and who petitioned the court for relief of retaliation.</u> Further, Chief Ramsey, as supervisor, was aware of, or should have been aware of, the unconstitutional acts of his subordinates Herrold and Doe but failed to take corrective action.

21

*Id*. at ¶ 43 (emphasis added).

With regard to Count II:

> Defendant District of Columbia, acting through Defendant Ramsey and/or other unknown persons, deprived Plaintiff Sanders of his property without substantive or procedural due process of law in violation of the Fifth Amendment, when it refused to reinstate Plaintiff Sanders to his position in violation of District regulations and law.  <u>The District of Columbia is liable for the actions of Defendant Ramsey and/or these unknown persons because Ramsey and/or these unknown persons are final policymakers regarding the process to be given employees seeking reinstatement</u> **or** <u>because they acted pursuant to a custom or policy of the District of Columbia of denying employees due process when they seek reinstatement</u>.

*Id*. at ¶ 49.

The Court also spoke to this issue.  It stated:

> The District also contends that plaintiffs have failed to state a claim against it because there is no respondeat superior liability under § 1983.  A municipality may be held liable for the civil rights violations of its employees if the wrongdoer was acting in accordance with "a government[] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986) (plurality). Plaintiffs' complaint contains sufficient allegations to meet this standard.

*Sanders v. District of Columbia*, 16 F. Supp. 2d 10, 14 (D.D.C. 1998).

Similarly, in the present matter, Mr. Sanders has alleged sufficient facts to impose liability on the District of Columbia under either the theory that Chief Ramsey was the final policymaker or under the theory that the individual defendants were acting pursuant to municipal practice or custom.  Accordingly, the Court should deny Defendants' Motion to Dismiss.

**CONCLUSION**

Accepting the Mr. Sanders' allegations as true on this motion to dismiss shows that he had stated a claim for violation of his First Amendment and Fifth Amendment rights. Accordingly, the Court should deny the Motion to Dismiss.

Respectfully submitted,

Michael G. Kane  Bar No 435121
David R. Cashdan Bar No 051342
CASHDAN & KANE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036-4104
Tel. (202) 862-4330
Fax. (202) 862-4331
Attorneys for Plaintiff

Dated:   November 10, 2006