UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
CHRISTOPHER SANDERS,                )
                                    )
            Plaintiff,              )
                                    )
      v.                            )   Civil Action No. 06-1411
                                    )
DISTRICT OF COLUMBIA, et al.,       )
                                    )
            Defendants.             )
_____)

OPINION

This matter is before the Court on defendants' motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiff Christopher Sanders was a Sergeant in the Metropolitan Police Department. He has sued former Chief of Police Charles H. Ramsey in his individual and official capacities. He has sued Captain Jeffrey Herrold and "John Doe" in their individual capacities.[2] Plaintiff alleges that the defendants violated his First Amendment rights as well as his substantive and procedural due process rights. Upon consideration of the entire record in this case, the Court will grant defendants' motion to dismiss in part and will deny it in part.

---

[1]  The briefs submitted in connection with this motion are: Defendants' Motion to Dismiss for Failure to State a Claim ("Def. Mot."); Plaintiff's Opposition to Defendants' 12(b)(6) Motion to Dismiss for Failure to State a Claim ("Pl. Opp."); and Defendants' Reply Brief In Support of Its Motion to Dismiss ("Def. Rep.").

[2]  The caption of the complaint identifies "Herold" as a Captain; the body of the complaint identifies "Herrold" as a Lieutenant. For ease of reference, the Court will refer to him throughout this Opinion as "Herrold."

I.  BACKGROUND

Christopher Sanders became a police officer with the District of Columbia Metropolitan Police Department ("MPD") in 1990.  See Complaint ("Compl.) ¶¶ 3, 8.  In 1996, Sanders was selected to oversee a division called the Special Emphasis Unit ("SEU"), a unit within the Narcotics and Special Investigations Division.  See id. ¶ 9.  During his time with the SEU, Sanders noticed a pattern of certain employees abusing time and attendance policies.  See id. ¶ 11. Concerned that these abuses were resulting in a loss of taxpayer money, Sanders reported the matter to his superiors and testified before the City Council; his statements were covered in the local media.  See id.  After he made his statements and the matter became public, Sanders alleges that he was deprived of overtime pay, reassigned to a lesser assignment and physically threatened by his fellow officers.  See id. ¶ 12.  Sanders sued the MPD for violations of his rights to free speech (Civil Action No. 97-2398).  Id. ¶ 13.  The parties settled that suit in August 2002; under the terms of the settlement, the District was required to promote plaintiff to Lieutenant.  See id. ¶ 16.

Shortly after the settlement, Sanders contemplated pursuing an MBA degree at Marymount University in Arlington, Virginia.  See Compl. ¶ 17.  Sanders maintains that MPD officials assured him that even if he resigned from the Department to pursue his education, he was free to come back within one year.  See id. ¶¶ 18, 19.  Plaintiff resigned in September 2002. See id. ¶ 21.  Shortly after resigning from the Department, Sanders had a change of heart and attempted to rescind his resignation.  See id. ¶ 23.  Sanders alleges that he contacted the District on several occasions to confirm whether the request to rescind his resignation had been approved, but received no response.  See id. ¶¶ 25, 26.

During this time period, the MPD began an investigation into Sanders' conduct. See Compl. ¶ 27. Sanders contends that the investigation took place without his knowledge and was a disingenuous attempt based on false allegations to find a reason to deny his request to rescind his resignation. See id. ¶¶ 27, 28. Plaintiff alleges that the investigation was conducted by defendant Herrold and/or Doe. See id. ¶ 31. On August 15, 2003, defendants informed Sanders that the MPD had decided not to reinstate him to his position, but provided Sanders with no additional explanation. See id. ¶ 33. In late 2005, Sanders learned that the MPD denied the request to rescind his resignation because the MPD had concluded that he had made an untrue statement regarding the date he planned to return from leave, and because he was absent for more than four consecutive hours. See id. ¶¶ 29, 33. According to Sanders, the MPD did not interview him during the investigation, disclose the results of the investigation to him, or give him an opportunity to respond to the charges. See id. ¶ 30.

Sanders alleges that defendants violated his First Amendment rights by retaliating against him for speaking out on a matter of public concern. In addition, he alleges that defendants violated his procedural and substantive due process rights by failing to give him notice and an opportunity to be heard. He brings both claims under 42 U.S.C. § 1983 for violation of his civil rights. Sanders has filed this suit against the District of Columbia as well as against former Police Chief Charles Ramsey (sued in his individual and official capacities), MPD Captain Jeffrey Herrold (sued in his individual capacity only), and John Doe.

## II.  DISCUSSION

*A.  Standard for Motion to Dismiss under Rule 12(b)(6)*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).  In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6).  The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Id. at 1965 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  The Court stated that there was no "probability requirement at the pleading stage," Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965, but "something beyond . . . mere possibility . . . must be alleged[.]" Id. at 1966.  The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 1965, or must be sufficient "to state a claim for relief that is plausible on its face." Id. at 1274.  The Court referred to this newly-clarified standard as "the plausibility standard." Id. at 1968 (abandoning the "no set of facts" language from Conley v. Gibson).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 127 S. Ct. at 2200; see also Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965; Summit Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991). The complaint "is construed liberally in the plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all inferences that can be derived from the facts alleged." Kowal v. MCI Communications Corp., 16 F.3d at 1276; see also Browning v. Clinton, 292 F.3d at 242; Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000). While the complaint is to be construed liberally in plaintiff's favor, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint; nor must the Court accept plaintiff's legal conclusions. See Kowal v. MCI Communications Corp., 16 F.3d at 1276; Browning v. Clinton, 292 F.3d at 242.

*B. Claims Against the District of Columbia*

In order to hold a municipality liable for civil rights violations of its employees under 42 U.S.C. § 1983, the municipality must have acted in accordance with a "government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); see Feirson v. District of Columbia, – F.3d –, 2007 WL 3145355, at * 3 (D.C. Cir. October 30, 2007) ("To impose liability on the District under 42 U.S.C. § 1983, [plaintiff] must show 'not only a violation of his rights under the Constitution or federal law, but also that the [District's] custom or policy caused the violation.'") (citing Warren v. District of Columbia, 353 F.3d 36, 38 (D.C.Cir.2004)). Proof of a single incident of unconstitutional activity is insufficient to impose

liability unless there was proof that there was a policy in place that was unconstitutional. <u>See</u> <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. at 694. Defendants contend that the District of Columba cannot be held liable because plaintiff has failed to demonstrate that the District had a custom or policy of retaliating against employees for exercising the right to free speech under the First Amendment. The Court agrees with defendants.

Plaintiff has not alleged that the District of Columbia had a policy or practice of retaliating against employees for exercising the right to free speech under the First Amendment or that he suffered injury because of any such custom or policy. Nor has plaintiff pointed to any other employee who suffered similar retaliation. The policy or custom must be pervasive to support municipal liability, <u>Carter v. District of Columbia</u>, 795 F.2d 116 (D.C. Cir. 1986), and the Court finds that the one incident of alleged retaliation against Sanders does not qualify as pervasive. Plaintiff asserts that he has alleged sufficient facts on this point, but the Court concludes that he has not. The Court therefore will grant defendants' motion to dismiss with respect to the First Amendment retaliation claims against the District of Columbia under Section 1983.

*C. First Amendment Claim Against Individual Defendants*

Sanders alleges that the individual defendants violated his First Amendment rights by retaliating against him once he spoke out on matters of public concern. <u>See</u> Compl. ¶ 37. The individual defendants respond that the Court should dismiss all of plaintiff's claims because they are entitled to qualified immunity. <u>See</u> Def. Mot. at 3.

Qualified immunity "shields State officials from liability for their discretionary functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Butera v. District of Columbia, 235 F.3d 637, 645-46 (D.C. Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Pitt v. District of Columbia, 491 F.3d 494, 509 (D.C. Cir. 2007). Analyzing a claim of qualified immunity requires a two-pronged analysis. First, the Court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all.'" Butera v. District of Columbia, 235 F.3d at 646 (quoting Wilson v. Layne, 526 U.S. 603, 609 (1999)). If the plaintiff has alleged such a deprivation, the Court then must inquire whether the right allegedly violated was "clearly established" – that is, whether "'the contours of the right [were] sufficiently clear that a reasonable officer would understand that what he [was] doing violated that right.'" Butera v. District of Columbia, 235 F.3d at 646 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)) (modifications in original); see also Scott v. Harris, 127 S.Ct. 1769, 1774 (2007); Pitt v. District of Columbia, 491 F.3d at 512. "Whether an official protected by qualified immunity may be held personally liable . . . generally turns on the objective legal reasonableness of the action." Wilson v. Layne, 526 U.S. at 614. In assessing whether a party is entitled to qualified immunity, the facts must be taken in the light most favorable to the party asserting the constitutional injury. See Saucier v. Katz, 533 U.S. at 201 see also Scott v. Harris, 127 S.Ct. at 1774. The Court will analyze each prong of the inquiry individually.

1. Were Sanders' First Amendment Rights Clearly Established?

For a public employee to make out a *prima facie* case of retaliation in violation of the First Amendment, he must establish that (1) he was speaking on a matter of public concern; (2) the government's interest in efficient performance of public services is outweighed by the plaintiff's interest as a citizen in commenting upon matters of public concern; (3) the plaintiff's speech was a motivating factor for the employer's retaliatory action; and (4) the adverse employment action was not motivated by legitimate, non-pretextual grounds. See Bowie v. Gonzales, 433 F.Supp. 2d, 24, 32 (D.D.C. 2006); see also Garcetti v. Ceballos, 126 S.Ct. 1951, 1957-60 (2006).[3]  Plaintiff meets this burden.

First, Sanders was a public employee who alleges that he was retaliated against for speaking on a matter of public concern. Defendants contend that Sanders is contesting the loss of his employment, which is a private complaint and not a matter of public concern. See Def. Mot at 8. While it is true that simple "employee grievances" are not matters of public concern, see, e.g., Connick v. Myers, 461 U.S. 138, 147-48 (1983), plaintiff's initial statements were not about losing his job. Rather, the speech at issue concerned fraud and abuse within the MPD. The reporting of waste, fraud and abuse are matters of public concern. See Bridges v. Kelly, 977 F.Supp. 503, 509 (D.D.C. 1997). In addition, Judge Harris already determined in the prior lawsuit that Sanders' speech was a matter of public concern. See Sanders v. District of

---

[3] In Garcetti, the Supreme Court distinguished expressions made at work pursuant to official duties from those that are not, and held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 126 S.Ct. at 1960. The Court notes that it does not appear that Sanders made these statements at issue in this case "pursuant to his official duties," nor have defendants argued that he did.

Columbia, 16 F. Supp. 2d 10, 13 (D.D.C. 1998).  The instant claim is that he was retaliated against even after the first case was settled for having exercised his free speech rights under the First Amendment on the same issues.

Plaintiff also has met the second element of the *prima facie* case of retaliation.  In the previous lawsuit brought by Sanders, Judge Harris determined that Sanders' right to speak on a matter of public concern outweighed the government's interest in the efficient performance of public services.  See Sanders v. District of Columbia, 16 F. Supp. 2d at 13.  Defendants attempt to rebut this argument by contending that the allegations that Sanders made in the prior case were falsely concocted in an effort to resist the authority of his superior.  See Def. Mot. at 9.  Even if true, this is a question of fact not determinable on a motion to dismiss for failure to state a claim.  As to the second element of the *prima facie* case, plaintiff has clearly adequately alleged that plaintiff's speech was a motivating factor for the alleged retaliation.

The third and fourth elements of a retaliation claim typically present questions of fact better suited for summary judgment than a motion to dismiss.  See O'Donnell v. Barry, 148 F.3d 1126, 1133 (D.C. Cir. 1988).   The Court concludes that Sanders has sufficiently alleged a *prima facie* case of retaliation.

> 2. Would A Reasonable Officer Understand That What He Was Doing Violated Sanders' First Amendment Rights?

Once a right is clearly established, the immunity defense should ordinarily fail "because a reasonably competent public official should know the law governing the official's

conduct." Harlow v. Fitzgerald, 457 U.S. at 818-19.  Indeed, even ignorance of "basic constitutional rights" should not be grounds for providing immunity.  See Wood v. Strickland, 420 U.S. 308, 321-22 (1975).

Defendants contend that Sanders' First Amendment rights were not clearly established because the law requires a balancing of competing interests and that under such a balancing test, the outcome in this particular instance would be difficult to predict.  See Def. Mot at 8.  The Court finds this argument unpersuasive.  First, viewing the facts in the light most favorable to Sanders, a reasonable MPD official surely would have known that retaliating against Sanders for his public speech violated a clearly established right.  Furthermore, defendants already knew that Judge Harris had previously held that Sanders' speech touched on a matter of public concern, that his right was clearly established, and that the defendants were not entitled to qualified immunity.  See Sanders v. District of Columbia, 16 F. Supp. 2d at 15.  Given that these very issues with the very same parties were decided once before, it is difficult for defendants to now argue that they did know that Sanders' First Amendment rights were clearly established.  The Court finds that the MPD and its employees should have reasonably understood that their actions, as alleged, violated Sanders' clearly established First Amendment rights.  Defendants are not entitled to qualified immunity with respect to plaintiff's First Amendment claim.  The Court therefore will deny the individual defendants' motion to dismiss with respect to this claim.

*D.  Procedural Due Process Claim*

1.  Were Sanders' Procedural Due Process Rights Clearly Established?

Sanders alleges that defendants violated his procedural due process rights by failing to provide him with notice and an opportunity to respond to the MPD's allegations.  An individual has a property interest in his or her employment when he or she has a legitimate claim of entitlement to the job.  See Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  A legitimate claim of entitlement of employment is not created by the United States Constitution itself, but by independent sources such as state statutes.  See id.

Sanders alleges that he has a property interest under the District of Columbia's Comprehensive Merit Protection Act ("CMPA").  See Pl. Opp. At 16.  With few exceptions, the CMPA is "the exclusive avenue by which aggrieved employees of the District of Columbia may pursue work-related complaints."  Holman v. Williams, 436 F. Supp. 2d 68, 73 (D.D.C. 2006).  "It is undisputed that the Comprehensive Merit Protection Act creates a property interest for employees governed by it."  Fonville v. District of Columbia, 448 F. Supp. 2d 21, 26 (D.D.C. 2006).  Under the statute, certain employees of the District of Columbia government must have prior notice and an opportunity to respond prior to any disciplinary action, unless certain exceptions, not relevant here, apply.  See D.C. Code § 1-616.51.  As relevant here, Judge Sullivan has explained:

> The CMPA establishes a Career Service for employees in which they are guaranteed to be promoted based on merit and cannot be terminated without cause. D.C. Code §§ 1-608 & 1-616.51. The Career Service includes employees who serve as sworn officers with the [Metropolitan Police Department]. D.C. Code § 1-608.01. Under CMPA, employees can only be disciplined for cause and prior notice must be given.

Fonville v. District of Columbia, 448 F. Supp. 2d at 26-27.

Sanders alleges that he had no notice of the investigation that took place and only learned about the investigation in late 2005 from an anonymous source. See Compl. ¶ 29. In addition, the MPD did not interview Sanders as part of the investigation, disclose the results of the investigation to him, or provide him with an opportunity to respond to the charges. See id. ¶ 30. Taking the facts in the light most favorable to plaintiff, as it must, the Court finds that Sanders has stated a claim for a violation of his procedural due process rights under the CMPA.

### 2. Would A Reasonable Officer Understand That What He Was Doing Violated Sanders' Due Process Rights?

Turning to the second prong of the qualified immunity inquiry, the Court finds that Sanders has met his burden here as well. As just noted, it is settled that a person is entitled to notice and an opportunity to be heard prior to taking away his or her property interest. Board of Regents v. Roth, 408 U.S. at 573. Furthermore, the CMPA specifically requires that all District of Columbia government employees governed by it must have prior written notice of the grounds proposed to be taken as well as an opportunity to be heard within a reasonable time after the action becomes effective. See D.C. Code § 1-616.51. Plaintiff alleges that defendants failed to provide either notice or an opportunity to be heard. The Court therefore concludes that defendants are not entitled to qualified immunity. Defendants' motion to dismiss with respect to this claim will be denied.

*E. Substantive Due Process Claim*

Sanders also alleges that defendants violated his substantive due process rights. As the D.C. Circuit recently observed:

> [T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive due process cases a careful description of the asserted fundamental liberty interest.

<u>Abigail Alliance for Better Access to Developmental Drugs v. von Eschenbach</u>, 495 F.3d 695, 702 (D.C. Cir. 2007) (en banc) (citing <u>Washington v. Glucksberg</u>, 521 U.S. 702, 720 (1997)). To constitute a substantive due process violation, the defendant's behavior "must be so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." <u>Estate of Phillips v. District of Columbia</u>, 455 F.3d 397, 403 (D.C. Cir. 2006); <u>see also</u> <u>Feirson v. District of Columbia</u>, 2007 WL 3145355, at * 3. The Court concludes that defendants' alleged actions do not violate a fundamental right, nor do they rise to the requisite level of egregiousness.

Courts have consistently held that "there is no fundamental right to government employment." <u>United Bldg. & Constr. Trades Council v. Mayor & Council of Camden</u>, 465 U.S. 208, 219 (1984); <u>see</u> <u>Am. Federation of Gov't Employees, AFL-CIO v. United States</u>, 330 F.3d 513, 523 (D.C. Cir. 2003). Because the Court finds that for the purposes of a substantive due process analysis plaintiff had no clearly established fundamental right in his eligibility to be rehired by the MPD, there is no need to proceed to the second step of the qualified immunity analysis. The Court will grant defendants' motion to dismiss with respect to this claim.

## III. CONCLUSION

For the foregoing reasons, the Court will grant defendants' motion to dismiss with respect to the First Amendment retaliation claim against the District of Columbia and the substantive due process claims against all defendants. The Court will deny the motion to dismiss with respect to plaintiff's First Amendment retaliation claim against the individual defendants and plaintiff's procedural due process claims against all defendants.

An Order consistent with this Opinion will be issued this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  November 8, 2007