**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CHRISTOPHER SANDERS** )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>**CATHY LANIER** )<br>)<br>**ALFRED BROADBENT** )<br>)<br>**CHARLES RAMSEY** )<br>)<br>**JEFFREY HEROLD** )<br>)<br>**DISTRICT OF COLUMBIA,** )<br>)<br>)<br>Defendants )<br>_____ ) | CA No. 06-1411 (PLF) |

**FIRST AMENDED COMPLAINT**

1.     This is an action for injunctive and declaratory relief and for money damages to redress the deprivation of plaintiff Christopher Sanders' rights, privileges and immunities under the Constitution and laws of the United States, specifically the First and Fifth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.  This action arises out of acts of retaliation against the plaintiff by officials of the Metropolitan Police Department (MPD) of the District of Columbia because the plaintiff objected to illegal acts and participated in a lawsuit seeking redress for the wrongs done to him. Further, this action arises out of the deprivation of the plaintiff's property, specifically his government employment without due process of law.

## JURISDICTION

2.      This Court has jurisdiction pursuant to 28 USC § 1331 and D.C Code § 11-921.  The actions complained of occurred within the District of Columbia.

## PARTIES

3.      Plaintiff Christopher Sanders resides at 2312 North Evergreen Street, Arlington, Virginia.  He had been employed by the District of Columbia as a police office from 1990 until October 2002.

4.      Defendant District of Columbia is a municipal corporation and was Plaintiff's former employer.

5.      Defendant Charles Ramsey was the Chief of Police of the MPD.  At all times relevant to this Complaint, Chief Ramsey was the final policymaker concerning the MPD's decision to reinstate a uniformed officer who had resigned.  He is being sued in his individual capacity.

6.      Defendant Jeffrey Herold is an employee of the Metropolitan Police Department.  At all times relevant to this Complaint, Mr. Herold served in the rank of Lieutenant and was the Plaintiff's Supervisor.  He is being sued in his individual capacity.

7.      Defendant Cathy Lanier is the current Chief of Police of the MPD.  She is being sued in her individual capacity.

8.      Defendant Alfred Broadbent is the former head of the Special Services Command.  He is being sued in his individual capacity.

## FACTS

8.      Plaintiff Sanders became a police officer with the Metropolitan Police Department of Washington, D.C. in 1990.

9.      In November 1996, the MPD created a unit called the Special Emphasis Unit (SEU) under the direction of Lt. Lowell Duckett. The SEU was a unit within the Narcotic and Special Investigations Division of the Support Services Bureau.  Its purpose and mission was to investigate and stop gang activity, especially the trafficking of illegal narcotics.

10.      Sgt. Sanders and Sgt. Harry T. Hill were selected to supervise the officers in SEU.  Both Sgt. Hill and Sgt. Sanders had been recognized for their accomplishments in battling illegal narcotics in the District of Columbia and had previously been named to other special units.

11.      During their time in SEU, Plaintiff Sanders and others noticed what appeared to be abuses of the time and attendance policies of the MPD that may be criminal in nature.  The abuse resulted in the loss of taxpayer money.  Plaintiff Sanders reported his concerns and objections to various superiors in his chain of command.  He also testified before the District of Columbia City Council regarding this issue.  Plaintiff's objections were also covered in the local media.  Plaintiff Sanders did not make this speech pursuant to his official duties.

12.      Following his objections, Plaintiff Sanders was treated adversely in that he was deprived of overtime pay, physically threatened and reassigned to a less desirable position, among other things.

13.     Plaintiff Sanders and Sgt. Hill brought suit against the District of Columbia and others in the U.S. District Court for the District of Columbia in Civil Action No. 97-02938 for violations of their right to free speech.

14.     Plaintiff Sanders testified on several occasions during that lawsuit in deposition and otherwise actively participated in the litigation of the case.

15.     The litigation raised matters of public concern in that it objected to alleged misconduct on the part of the Mayor, the Chief of Police and an MPD lieutenant.

16.     During the litigation Plaintiff Sanders engaged in settlement negotiations through his attorney.  In or about August 2002, the parties reached a settlement of the claims.  In part, the District was required to effectuate Plaintiff Sanders' promotion to Lieutenant, which promotion he had already earned separate from the lawsuit, and assign him to the Major Crash Unit.

17.     In or about August 2002, Plaintiff Sanders was presented with the opportunity to complete a Master of Business Administration Program at no expense to the MPD at Marymount University in Arlington, Virginia.

18.     Plaintiff Sanders contemplated whether to resign from the MPD in order to pursue this educational opportunity, or whether he should request an educational leave of absence.

19.     In early September 2002 Plaintiff Sanders was advised by MPD officials, including Defendants Herold and Lanier, that even if he chose to resign from the MPD he was always free to come back within one year.

20.     This advice was consistent with §816.6 of the DC Personnel Code, which stated that a former member of the MPD shall be entitled to reinstatement eligibility.

21.    Plaintiff Sanders on or about September 5, 2002 decided to resign from the MPD in order to pursue his educational opportunities. Plaintiff Sanders submitted a document informing the MPD that he was resigning with 30 days notice.

22.    Unbeknownst to Plaintiff Sanders, on or about September 5, 2002, the relevant MPD officials signed off on his request.

23.    Within days of submitting his resignation and within the 30 day notice period, Plaintiff Sanders submitted a request to rescind his resignation.

24.    Plaintiff Sanders also requested, in that same memo, a leave of absence without pay to be granted so that he could attend school for his MBA. Such a request was consistent with past practice at the MPD. For example, on one occasion an officer had been given a year of leave with pay in order to attend to his studies.

25.    Unbeknownst to Plaintiff Sanders, Defendant Herold denied his request to rescind his resignation. Defendant Herold remarked on the memo that Plaintiff Sanders was "undependable." Defendant Lanier also denied Plaintiff Sanders' request noting on the memo that Plaintiff Sanders was "not dependable." Defendant Broadbent also disapproved Plaintiff Sanders' request to rescind his resignation.

26.    Plaintiff was unaware of the actions described in ¶ 25 until March 31, 2008.

27.    At the time the actions in ¶ 25 were taken Defendants Lanier, Herold and Broadbent did not have a good faith belief that Sanders was undependable. Further, they rejected Plaintiff Sanders' request to rescind his resignation in retaliation for his exercise of his free speech and because he petitioned the court for a redress of grievances.

28. Defendants Lanier, Herold and Broadbent did not provide Plaintiff Sanders with an opportunity to be heard on their findings that he was "undependable" even though they were using that finding to deprive Mr. Sanders of his government employment. They did not conduct an investigation.

29. Having heard nothing back from his request, Plaintiff Sanders submitted another request that was received by Defendant Ramsey's office on November 15, 2002.

30. Thereafter, on several occasions, Plaintiff Sanders, through his attorney, requested a response from the District regarding his request to rescind his resignation letter and his request for an educational leave of absence. Defendants led Plaintiff to believe that they were considering his request. At no time did they reveal that Defendants Herold, Lanier and Broadbent had already denied Plaintiff Sanders' request to rescind his resignation because they had concluded that he was "undependable."

31. Without Plaintiff Sanders' knowledge, the MPD, at the direction of Chief Ramsey, and/or Jeffrey Herold and/or Defendants Lanier, and/or Broadbent and/or other unknown persons commenced an investigation of Plaintiff Sanders, the primary purpose of which was to contrive a reason to deny Plaintiff Sanders his request to rescind his resignation. The MPD falsely charged Plaintiff Sanders with willfully and knowingly making an untrue statement regarding the date he planned to return from leave and for being absent without leave for more than four consecutive hours. The investigation was conducted by Plaintiff Sanders' former superior Lieutenant Jeffrey Herold.

32. Chief Ramsey knew that these allegations were false and were not supported by the evidence relied upon in the investigation. Further, in making his decision, Chief Ramsey relied on the opinions expressed by Defendants Herold,

Broadbent and Lanier on Plaintiff Sanders' request to rescind his resignation to the effect that Plaintiff Sanders was "undependable."

33.    As a result of this bad faith investigation and of the opinions expressed by Defendants Herold, Lanier and Broadbent that Sanders was "undependable", the MPD concluded that Plaintiff Sanders had knowingly made false statements about when he would return from leave, and that he should not be reinstated. However, the MPD did not interview Plaintiff Sanders during the investigation, did not disclose its results to Plaintiff Sanders and did not give Plaintiff Sanders an opportunity to respond to the charges.

34.    Lt. Herold and/or the other defendants conducted the investigation and made unsubstantiated conclusions in retaliation for Plaintiff Sanders' free speech activities and because of his participation in the federal lawsuit.

35.    The MPD's charges were untrue.  Moreover, the investigation was conducted in violation of MPD procedures.  For example, the MPD did not even commence the investigation until approximately 9 months after the events in question. Traditionally corrective or adverse action was to be taken within 45 days of management becoming aware of a violation.  The MPD did not afford Plaintiff Sanders the opportunity to respond to the charges lodged against him and furthermore the facts did not support a finding that Plaintiff Sanders had done anything wrong.

36.    On August 15, 2003, Defendant Ramsey declined to reinstate Plaintiff Sanders without explanation and without providing Plaintiff Sanders any due process. In fact, Defendant Ramsey made his decision in retaliation for Plaintiff Sanders' exercise of his free speech and because of Plaintiff Sanders' participation in the lawsuit concerning

the retaliation he suffered and/or because he was induced to do so at the urging of Lt. Herold, and/or, Lanier, and/or Broadbent, and/or other unknown persons.

37. Plaintiff Sanders objected to this decision by written letter. The MPD treated Plaintiff Sanders' objection as a grievance. However, to date, the District has not responded to the grievance.

38. Plaintiff Sanders did not learn that a clandestine investigation of him had been conducted until late 2005 from an anonymous source. It was at this time that Plaintiff Sanders first learned of the involvement of Herold and Broadbent in the decision to deny him reinstatement and/or grant his request to rescind his resignation.

## COUNT I

### VIOLATION OF CIVIL RIGHTS -42 U.S.C. § 1983
### First Amendment — Free Speech, Petition to Redress Grievances - Retaliation
### (All Defendants)

39. Plaintiff incorporates herein each and every allegation stated above.

40. In pursuing his lawsuit (CA No. 97-02938), Plaintiff Sanders was speaking on a matter of public concern. Specifically, he was objecting to the retaliation he suffered because he objected to time and attendance fraud that resulted in a waste of taxpayer money. In addition, Plaintiff Sanders was petitioning the government for redress of his grievances. These rights are protected by the First Amendment to the U.S. Constitution.

41. Chief Ramsey violated Plaintiff Sanders' First Amendment right to speak out on matters of public concern and petition the government for redress when he knowingly refused to permit Plaintiff Sanders to rescind his resignation from the MPD and/or refused to reinstate Plaintiff Sanders to the MPD, and caused false and defamatory

statements to be made about Plaintiff Sanders through his subordinates, Lieutenant Jeffrey Herold, Lanier and Broadbent. Plaintiff Sanders' statements in his lawsuit (CA No 97-02938) and elsewhere in which he objected to time and attendance fraud as well as his participation in that lawsuit were a substantial or motivating factor in Chief Ramsey's actions.

42.    Chief Ramsey acted under color of law and showed a deliberate indifference to Plaintiff Sanders' First Amendment rights to speak out on matters of public concern and petition the government for a redress of grievances.

43.    Lieutenant  Herold violated Plaintiff Sanders' First Amendment right to speak out on matters of public concern and petition the government for redress of grievances when he denied Plaintiff Sanders' request to rescind his resignation and found that Plaintiff Sanders was undependable.  Furthermore,  Lieutenant Herold knowingly conducted a baseless investigation of Plaintiff, reached spurious conclusions and made false and defamatory charges leading to his unsupported recommendation that Plaintiff not be reinstated.  Plaintiff Sanders' statements in his lawsuit (CA No 97-02938) and elsewhere in which he objected to time and attendance fraud and his participation in that lawsuit were a substantial or motivating factors in Lieutenant Herold's actions.

44.    Lieutenant Herold acted under color of law and showed a deliberate indifference to the Plaintiff Sanders' First Amendment rights to speak out on matters of public concern and petition the government for a redress of grievances.

45.    Defendant Cathy Lanier violated Plaintiff Sanders' First Amendment right to speak out on matters of public concern and petition the government for redress of grievances when she denied Plaintiff Sanders' request to rescind his resignation request

and when she noted on that request that Plaintiff Sanders was undependable.  Further, upon information and belief Defendant Lanier knowingly caused a baseless investigation to be conducted that made false and defamatory charges against Plaintiff and that recommended the plaintiff not be reinstated.  Plaintiff Sanders' statements in his lawsuit (CA No 97-02938) and elsewhere in which he objected to time and attendance fraud and his participation in that lawsuit were a substantial or motivating factors in Defendant Lanier's actions.

46.    Defendant Lanier acted under color of law and showed a deliberate indifference to Plaintiff Sanders' First Amendment rights to speak out on matters of public concern and to petition the government for a redress of grievances.

47.    Defendant Alfred Broadbent violated Plaintiff Sanders' First Amendment right to speak out on matters of public concern and petition the government for redress for grievances when he denied Plaintiff Sanders' request to rescind his resignation request and when he approved his subordinates notations on that request that Plaintiff Sanders was undependable, when he knew, or should have known, that there were no facts to support that assessment.  Further, upon information and belief Defendant Broadbent knowingly caused a baseless investigation to be conducted that made false and defamatory charges against Plaintiff and that recommended the plaintiff not be reinstated. Plaintiff Sanders' statements in his lawsuit (CA No 97-02938) and elsewhere in which he objected to time and attendance fraud and his participation in that lawsuit were a substantial or motivating factors in Defendant Broadbent's actions.

48.     Defendant Broadbent acted under color of law and showed a deliberate indifference to Plaintiff Sanders' First Amendment rights to speak out on matters of public concern and to petition the government for a redress of grievances.

49.     Defendant District of Columbia violated Plaintiff Sanders' First Amendment right to speak out on matters of public concern and petition the court for redress of grievances because Chief Ramsey was the final policy maker regarding the reinstatement of former MPD police officers, regarding whether or not to grant a request to rescind a resignation notice, and regarding the MPD's treatment of persons who complain of waste and misuse of MPD funds.  Further, Chief Ramsey acted pursuant to a custom, plan or policy of the District of Columbia, which was to retaliate against persons who objected to mismanagement, fraud and who petitioned the court for relief of retaliation. Further, Chief Ramsey, as supervisor, was aware of, or should have been aware of, the unconstitutional acts of his subordinates described above but failed to take corrective action.

50.     Defendants' violations of Plaintiff Sanders' First Amendment rights caused him to sustain direct and consequential damages, including, but not limited to, lost wages and benefits, emotional pain, mental anguish, humiliation and embarrassment, damage to professional reputation, and damage to his reputation in the community, justifying awards of damages in amounts to be determined at trial.

51.     The individual Defendants engaged in these acts maliciously or with reckless indifference to plaintiffs' First Amendment rights, justifying awards of punitive damages in amounts to be determined at trial.

## COUNT II
## VIOLATION OF CIVIL RIGHTS -42 U.S.C. § 1983

## SUBSTANTIVE AND PROCEDURAL DUE PROCESS
## (ALL DEFENDANTS)

52.     Plaintiff Sanders incorporates herein each and every allegation stated above.

53.     Plaintiff Sanders had a property interest in being given a fair opportunity to demonstrate that he was eligible for reinstatement pursuant to DC Personnel Reg §816.6 and/or that his request to rescind his resignation notice should be granted.

54.     Defendant Ramsey, acting under color of law, deprived Plaintiff Sanders of his property, his government employment, without substantive or procedural due process of law, in violation of the Fifth Amendment, when he refused to reinstate Plaintiff Sanders in violation of District regulations and law, when he refused to grant Plaintiff's Request to Rescind his Resignation Notice, and when he caused a false and defamatory investigation to be conducted of Plaintiff without giving Plaintiff the opportunity to respond to the charges.

55.     Defendant District of Columbia, acting through Defendants Ramsey, Lanier, Broadbent, Herold and other unknown persons, deprived Plaintiff Sanders of his property without substantive or procedural due process of law in violation of the Fifth Amendment, when it refused to reinstate Plaintiff Sanders to his position in violation of District regulations and law.  Further, these Defendants violated Plaintiff Sanders' due process rights when they denied his Request to Rescind his Resignation Notice and found him undependable without affording him an opportunity to respond to that charge, and when these Defendants caused a false and defamatory investigation to be conducted of Plaintiff Sanders without giving Plaintiff Sanders the opportunity to respond to the charges.  The District of Columbia is liable for the actions of Defendants Ramsey, Lanier,

Herold and Broadbent and/or these unknown persons because Ramsey and/or these other individuals are final policymakers regarding the process to be given employees seeking reinstatement and requesting to rescind resignation notices or because they acted pursuant to a custom or policy of the District of Columbia of denying employees due process when they seek reinstatement and/or request to rescind resignation notices.  Further, Chief Ramsey, as supervisor, was aware of, or should have been aware of the unconstitutional acts of his subordinates but failed to take corrective action.

56.     The Defendants' violations of Plaintiff Sanders' Fifth Amendment rights caused Plaintiff Sanders to sustain direct and consequential damages, including, but not limited to, lost pay, position and other benefits, emotional pain, mental anguish, humiliation and embarrassment, damage to his professional reputation, and damage to his reputation in the community, justifying awards of damages in amounts to be determined at trial.

57.     Defendants engaged in these acts maliciously or with reckless indifference to Plaintiff Sanders' due process rights, justifying awards of punitive damages to be determined at trial.

**WHEREFORE**, Plaintiff Sanders requests judgment against the defendants as follows:

a.     An order declaring that the acts and practices complained of herein are in violation of Plaintiff Sanders' civil rights and enjoining and permanently restraining these violations.

b.     An order directing the District of Columbia to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff Sanders' employment opportunities.

c.      General and special damages according to proof at the time of trial;

d.      Punitive damages according to proof at the time of trial;

e.      Plaintiffs costs;

f.      Plaintiffs attorneys' fees; and

g.      Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues.

Respectfully submitted this the 28th day of April, 2008

_____/S/_____
Michael G. Kane, Bar No. 435288
David R. Cashdan, Bar No 051342
CASHDAN & KANE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036-4129
Tel. (202) 862-4330
Fax. (202) 862-4331

*Counsel for Plaintiff*