**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHRISTOPHER SANDERS, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | Civil No. 06- 1411 (PLF) |
| : | Defendant's Expert Designation |
| : | July 31, 2008 |
| DISTRICT OF COLUMBIA, et al., : | |
| : | |
| Defendants. : | |
| : | |
| _____: | |

<u>DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR MOTION FOR JUDGMENT ON THE PLEADINGS</u>

        I.   <u>Factual and Procedural Background</u>

On August 9, 2006, Plaintiff Christopher Sanders, ("plaintiff") a former Metropolitan Police Department Sergeant, filed his two count lawsuit alleging retaliation for speech protected under the First Amendment and a lack of substantive and procedural due process stemming from his failed request to rescind his resignation. Plaintiff's current lawsuit followed on from his settlement in 2002 of prior litigation filed in 1997, pre *Garcetti v. Ceballos*, 547 U.S. 410 (2006).[1] While the Court ruled on November 9, 2007, that there was no substantive due process violation and that the District was had no actionable policy, custom and practice violating plaintiff's First Amendment rights, the Court otherwise allowed both counts to proceed and

---

[1] *Sanders v. District of Columbia,* 16 F. Supp. 2d 10 (D.D.C. 1998). Additional decisions in the prior *Sanders* litigation are as follows: (1) *Sanders v. District of Columbia,* 2002 U.S. Dist. Lexis 6818 (D.D.C. 2002) (holding statutory notice requirement was not jurisdictional); (2) *Sanders v. District of Columbia,* 2002 U.S. Dist. Lexis 6815 ( D.D.C. 2002) (claim for overtime compensation not waived); and (3) *Sanders v. District of Columbia,* 2002 U.S. Dist. Lexis 6816 (D.D.C. 2002) ( holding emotional distress damages could be proven through lay witness testimony from friends, co-workers and observers).

1

denied individual Defendants Ramsey's and Herold's claims of qualified immunity. *Sanders v. District of Columbia,* 522 F. Supp. 83 (D.D.C. 2007).  Currently, plaintiff's counsel is seeking a reconsideration of the decision regarding municipal liability and an amendment to the complaint to add certain other named defendants—Chief Cathy Lanier and Officer Broadbent based on alleged discovery disclosures.  While these efforts are opposed by the current Defendants, there is a more fundamental question, based on more recent case law and a public record revelation of Christopher Sanders testimony before the D.C. City Council, whether this action should proceed in the first instance.

  Set forth below is the examination of the complaint's allegations.

  Plaintiff, Christopher Sanders, brought this suit pursuant to 42 USC § 1983 asserting violations of the First and Fifth Amendments to the U.S. Constitution against Defendants, the District of Columbia and then Chief of Police Charles Ramsey and Lieutenant Jeffrey Herold. *See* Complaint ("Compl.") ¶ 3, 8. Plaintiff had previously been an officer of the Metropolitan Police Department ("MPD) since 1990, and was most recently with the Special Emphasis Unit (SEU), a unit formed to investigate and eliminate criminal gang activity, especially trafficking of illegal narcotics. *Id.* ¶ 9.  In his complaint, Plaintiff states that he was selected by MPD to supervise officers in SEU. *Id.* ¶ 10. Plaintiff alleges that he observed abuses of time and attendance policies by unit members that could have been criminal in nature. *Id.* ¶ 11. Plaintiff reported the matter to several superiors, and testified before the D.C. Council on the matter. *Id.* As an MPD officer, Plaintiff had a responsibility to his employer to not only report and enforce criminal violations within the community, but also within the MPD infrastructure itself. In his complaint, Plaintiff alleges that his statements to the D.C. Council were not made pursuant to his official duties as an MPD officer. *Id.*  However, and contrary to his allegations in his complaint,

2

in testimony before D.C. Council on December 5, 1997, Plaintiff recalled his role for SEU, stating, "It was part of our responsibility to ensure that accurate time records of our subordinates were maintained according to Departmental Regulations." ("Testimony of Sgt. Christopher Sanders and Sgt. Harry Hill to the City Council Committee on the Judiciary," 5 December 1997, http://www.dcwatch.com/police/971205.htm.).

After meeting with D.C. Council, Plaintiff asserts that he was reassigned to a less desirable position by the MPD, among other actions. See Compl. ¶ 12. After bringing suit against the District of Columbia in Civil Action No. 97-02938, the matter was settled in August 2002. *Id.* ¶ 13. In the same month, Plaintiff was presented the opportunity to complete his Master of Business Administration (MBA) at Marymount University, in Arlington, Virginia. *Id.* ¶ 17. After considering resignation to pursue the MBA, Plaintiff states he resigned on or about September 5, 2002 to complete the degree fulltime. *Id.* ¶ 21.

Several days after submitting his resignation, Plaintiff formally requested MPD to rescind the resignation and requested a leave of absence. *See* Compl. ¶ 23. On August 15, 2003, Plaintiff was informed that the MPD had decided not to reinstate him to his position. Id. ¶ 33. Plaintiff asserts that he did not learn of the investigation regarding his application for reinstatement until late 2005. Id. ¶ 29.

Plaintiff further alleged that Defendants Herold and John Doe conducted an investigation and made unsubstantiated conclusions allegedly in retaliation for plaintiff's participation in his prior litigation. Id. ¶31. Plaintiff additionally alleged that he was owed "due process" without specifying what process was due other than a notice and opportunity to be heard. Id. ¶ 32. Finally, plaintiff responded to the August 15, 2003, decision not to re-instate him by a letter which plaintiff contends was to be treated as a grievance albeit without a response to date. Id.

3

¶34. The remainder of the complaint consists of the two causes of action. Thus, plaintiff alleges in Count I, Id. ¶¶35-45, First Amendment violations consisting principally of the refusal to reinstate plaintiff and conducting a baseless investigation; that same alleged core conduct constitutes the grounds for an allegation in Count II, Id.¶46-51, of violation of substantive and procedural due process, infringing on a the property interest that plaintiff had in "the fair opportunity to demonstrate that he was eligible for re-instatement." Id. ¶47.  Importantly, and in the context of Count I, Id. ¶¶37, 39. and 41, plaintiff claims that the retaliation occurred in response to his prior lawsuit as well as statements made elsewhere.

As set forth in the motion accompanying this memorandum, Defendants now argue at the close of the pleadings that the Court should find as a matter of law, based on a matters of public record, that plaintiff Christopher Sanders ("plaintiff") made his statements pursuant to his official duties, thus defeating his claim under the recently decided Garcetti *v. Ceballos,* 547 U.S. 410 (2006).  His subsequent lawsuit did not change the official nature of his prior communications.  *Williams v. Johnson,* 537 F. Supp. 2d 141 (D.D.C. 2008) decided after the Court's Amended Opinion of November 9, 2007, supports the  initial position that his speech was not as a citizen but as a public employee. *Ruotolo v. City of New York,* 2006 U.S. Dist. Lexis 49903 (S.D. N.Y. 2006), *aff'd on other grounds,* 514 F.3d 184 (2d Cir. 2008), supports the position that lawsuits filed for public employee speech do not themselves become protected activity.  Finally, and in addition, Defendants argue that there is no property interest in a resignation or reinstatement, and moreover, that there was no deprivation even were there a property interest since plaintiff's resignation was entirely voluntary.  He wanted to leave to pursue educational opportunities.

II. Argument

A.  The Fed. R. Civ. P 12(c) Standard Requires Review of the Complaint and All Matters of Public Record Referred to Therein

Rule 12(c) of the Federal Rules of Civil Procedure states, "After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).Although "allegations of the complaint should be construed favorably to the pleader," *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1485 (D.C. Cir. 1992), the non-movant must show a genuine issue of material fact and may not rest upon conclusory allegations or improbable inferences. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The granting of a Rule 12(b) motion merely means that plaintiff has failed to satisfy one of the procedural prerequisites for asserting his claim for relief. A motion for judgment on the pleadings, however, theoretically is directed towards a determination of the substantive merits of the controversy; thus, federal courts are unwilling to grant a judgment under Rule 12(c) unless it is clear that the merits of the controversy can be fairly and fully decided in this summary manner." Wright & Miller, 5C Federal Practice and Procedure Civil 3d § 1369 at 259 (2004); see also n. 8 (citing cases treating 12(c) motion as 12(b) (6) motion).

To meet this standard, facts asserted by Plaintiff "must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (U.S. 2007), or must at least be "plausible on its face." *Id.* at 1974.Plaintiff may not rely upon "labels and conclusions." *Id.* at 1955.In addition, the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286, (1986).

In *Twombly*, the Supreme Court found that plaintiffs in an anti-trust suit had failed to plead facts to make plausible on its face a claim of conspiracy in restraint of trade by local

5

telecommunications exchange carriers. *Twombly,* 127 S. Ct. at 1970. The Court held that the complaint lacked any "independent allegations," relying upon only a few stray comments and "legal conclusions resting on the prior allegations" in showing any evidence of an illicit agreement between the companies. *Id.*

Additionally, and for purposes of this suit and this motion on the pleadings, the Court may consider matters referenced in the complaint but not included therein in determining the motion to dismiss. *Washkoviak v. Student Loan Marketing Assoc.,* 900 A. 2d 168, 178 (D.C. 2006).In considering a motion to dismiss, the Court may take notice of laws, statutes, and other matters of public record. *Bostic v. District of Columbia,* 906 A.2d 327, 332 (D.C. 2006); In *Taylor v. Vermont. Department of Education.,* 313 F.3d 768, 776 (2d Cir. 2002), the 2nd Circuit held in a child custody case that courts may look at public records referenced in the complaint, such as a state court's divorce decree, in deciding a motion to dismiss. Plaintiff's testimony before D.C. Council, referenced in the complaint, is available to the public by request, and was even accessible by searching an internet search engine.[2]

In this case, and as set forth below, Plaintiff fails to plead sufficient facts beyond conclusory statements and allegations to demonstrate entitlement to relief and because under no circumstances can relief be granted, Defendants are entitled to judgment on the pleadings as a matter of law.

### B. Plaintiff's Speech was Pursuant to Official Duty as an MPD officer and Thus, As A Matter of Law, Un-Protected Speech under the First Amendment

In making a claim for constitutional protection, Plaintiff must satisfy the four prong prima facie test articulated most recently in *Garcetti v. Ceballos*, 547 U.S. 410 (2006).First, the

---

[2] Plaintiff's testimony from December 5, 1997 was the first result found by searching "Sanders testimony" at http://www.google.com.

6

plaintiff must demonstrate that s/he had spoken as a citizen on a matter of public concern. *Id.* Second, Plaintiff must overcome the government interest in "promoting the efficiency of the public services it performs through its employees" in showing a greater interest of a public employee speaking as a citizen on a matter of public concern. *Williams v. Johnson*, 537 F. Supp. 2d 141, 150 (D.D.C. 2008). Third, Plaintiff must show that the speech was a substantial motivating factor in the government action. *Pickering v. Bd. of Educ.*, 391 U.S. 563, (1968). Fourth, Plaintiff must refute any government assertion that the action would have been taken regardless of the protected speech. *Id. Garcetti* shifts the focus from upon the content of the speech and to upon the role of the speaker in the expression; if a plaintiff cannot show that the speech was made as a citizen, the analysis concludes and the claim fails as a matter of law. The court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S at 1960.

In *Wilburn v. Robinson*, 480 F.3d 1140, 1151 (D.C. Cir. 2007) the Court of Appeals for the Circuit of the District of Columbia found that statements by the former interim director of the District's Office of Human Rights to the District Office of Personnel ("DCOP") suggesting Constitutional and statutory violations were pursuant to her official duties. Wilburn claimed that her failure to secure the permanent position was retaliation stemming from her assertions of racial and gender discrimination by the DCOP pursuant to their policy of making higher salary offers to job applicants currently not employed by the District than those currently in District government. *Id.* at 1142. The court looked not at the validity of the plaintiff's claims, but namely the correspondence in which s/he made the accusations and her admitted responsibility of supervising all personnel matters for the agency. Id at 1150, 1151. The court held that "the First

Amendment does not 'shield from discipline the expressions' Wilburn made 'pursuant to her professional duties' and, because a public employee cannot claim 'a constitutional cause of action behind a statement made 'in the course of doing his or her job,' Wilburn cannot make out a claim of constitutional deprivation under 42 U.S.C. § 1983." *Id.* at 1151.[3]

In *Williams v. Johnson*, 537 F. Supp. 2d 141, 151 (D.D.C. 2008), Judge Kollar-Kotelly found that a plaintiff's statements to D.C. Council contradicting her supervisors statements regarding the progress of the implementation of a computer program were not protected under the First Amendment despite her harassment and eventual termination from her government position. The court found it inconsequential that the testimony was not part of Plaintiff's "regular, routine duties" or that it constituted "an unusual aspect of her employment," as it took a practical view examining Plaintiff's status as a government employee testifying regarding her knowledge of a government project; Plaintiff admitted knowing there was a chance she would have to testify before council when she accompanied her supervisor to the meeting. *Id.* at 145, 151, 152. *See Sigsworth v. City of Aurora*, 487 F.3d 506, 511 (7th Cir. 2007) (upholding the dismissal of a police officer's complaint finding that communication regarding misconduct by law enforcement task force members to his supervisors was not protected by the First Amendment, and that "in reporting his suspicions, he was merely doing what was expected of him as a member of the task force charged with organizing and overseeing the planning and execution of the arrest warrants").

---

[3] *Wilburn, supra,* has continuing vitality in this Circuit. *Thompson v. District of Columbia,* 2008 U.S. App. Lexis 13547 ( D.C. Circuit, June 27, 2008) dismissed an employee's First Amendment claim finding his speech unprotected where his initial investigation of Lottery Board activities was done pursuant to his official duties. Id. at 8. Thompson's well defined property interest in his job ( contrasted with the illusory quality of plaintiff's property interest here discussed, *infra*) allowed the Court of Appeals to find a plausible basis for a due process violation

In *Winder v. Erste*, 511 F. Supp. 2d 160, 168, 169, 173 (D.D.C. 2007), Judge Bates held that a school system employee's First Amendment retaliation claim failed when the plaintiff was terminated following testimony at a D.C. Council meeting that contradicted his supervisor's statements regarding the progress of a court order reforming the system's transportation department. In determining whether the speech was "pursuant to official duties," the court relied upon *Wilburn, supra,* in turn relying on *Battle v. Board of Regents*, 468 F.3d 755, 761 (11th Cir. 2006), an 11th Circuit case where a university official's statements regarding fraudulent accounting practices were found, although unusual in nature, to be within the scope of her employment after she admitted she had a clear duty to maintain the accuracy and completeness of student files. *Winder*, 511 F. Supp. 2d at 174.  Judge Bates found that in determining whether action was "pursuant to" official duties the court should examine whether the speech fell "within the scope of the employee's uncontested employment responsibilities." *Id.* at 172.

Like *Winder* and *Williams*, Plaintiff's statements to D.C. Council should not be evaluated based upon their content or validity, but in the context in which they were given. As a longtime officer with MPD who admitted in the complaint that part of his responsibilities included supervision of other officers, Plaintiff had a great responsibility to report wrongdoing and potentially illegal activity inside his own unit. As any other reasonable employee would do in their position, Plaintiff reported the matter to his superiors. His reporting to the City Council was simply an extension of his official duties.  Accordingly, in considering plaintiff's case under *Garcetti,* it would be expected that an experienced officer in supervision of the SEU would take steps to report the matter to whomever necessary, including persons outside of his day-to-day activity but within his official duties, such as the D.C. Council.

Plaintiff claims his statements were of public concern, which is inconsequential if he cannot show they were made outside the scope of his employment and satisfy the first prong of the *Garcetti* test. By his own admission, Plaintiff's statements concerned government officials in his employment as an MPD officer with a duty to uphold the law. Also, in his testimony before the D.C. City Council, Plaintiff stated that it was his responsibility to supervise the actions of the officers in his unit. Like *Winder*, Plaintiff's claim under the strict *Garcetti* rule fails to establish may be better a prima facie case under the First Amendment.

Plaintiff pleads no facts whatsoever that his statements to the D.C. City Council were outside his official duties. Accordingly, plaintiff fails to show a prima facie case for First Amendment violations and thus the motion to dismiss on the claim should be granted as a matter of law. Additionally, and as set forth immediately, below plaintiff's 1997 lawsuit did not change or transform his status; his lawsuit is therefore not protected activity.

## C. Plaintiff's Lawsuit is Not Protected Activity

In *Ruotolo v. City of New York,* 2006 U.S. Dist. Lexis 49903 (S.D. N.Y. 2006), *aff'd on other grounds,* 514 F.3d 184 (2d Cir. 2008) plaintiff police officer claimed that his report as the 50th Precinct safety officer in the Bronx identifying possible environmental hazards communicated through his commanding officer and requesting an investigation of the hazards resulted in retaliation. The retaliation ranged from denials of time off to transfer to less desirable duty to his first poor performance rating while on the job for more than twenty years. Id. at 4-6. Plaintiff then filed suit on July 8, 2003. Finding that his report was pursuant to his official duties, the Court then found that the subsequent lawsuit had no protection post *Garcetti* even though a Magistrate Judge had ruled pre-*Garcetti* that the lawsuit itself could be speech on a matter of public concern. Id. at 14-15.

The Court then found that "…After *Garcetti*, the analysis is different." Id. at 15, noting particularly that there could be no transformation of unprotected into protected speech.

> After Garcetti, for a lawsuit adequately to charge a First Amendment retaliation claim, the lawsuit must be predicated on speech made by a public employee as a citizen, and not pursuant to his or her official duties. To hold otherwise--that filing a lawsuit alleging retaliation for non-protected speech would give rise to a First Amendment complaint--would defy logic, allowing a plaintiff to bootstrap a non-actionable objection to legitimate employer discipline into a valid First Amendment claim. In sum, because Ruotolo has no First Amendment claim for retaliation based on his preparation of the Report or his discussions with PBA lawyers, no First Amendment claim arose when he filed this action seeking redress for retaliation on the basis of that unprotected speech.

Id. at 15-16. Most important is the holding that a plaintiff cannot boot strap himself into a protected status by simply filing a lawsuit over statements made as a public employee. Plaintiff Sanders, however, tries exactly this when he alleges in his complaint that the retaliation he experienced was due to his lawsuit. He cannot simply, after *Garcetti*, transmute unprotected into protected speech. [4]

### D. There Is No Property Interest in a Resignation or Reinstatement As A Matter of Law Under the D.C. Code.

At the outset, plaintiff's claim that he has suffered a property based due process violation is fundamentally flawed in that it assumes that D.C. Code guarantees the right to employment after resignation or retirement. The relevant provision of the D.C. Code reads, "The Chief of Police *may* (italics added) consider a uniformed member for reinstatement to the MPD to a rank no higher than the rank last held." D.C. Code §§6-807(e).MPD was under no legal obligation to

---

[4] Different facts can produce a different result. Thus, where the underlying speech is protected the follow on lawsuit may also be protected. *Fritz v. Brown,* 2007 U.S. Dist. Lexis 63914 ( D.N.H. 2007).

11

reinstate Plaintiff if it determined that reinstatement was not in its best interests. Although Plaintiff held no property interest after voluntary resignation, the District voluntarily acknowledged that former officers deserved wholly discretionary consideration for reinstatement, and as such codified for them the opportunity, but not necessarily the right, to return to the MPD. Thus, *Parks v. Watson,* 716 D. 2d 646, 657 (9th Cir.1983) holds that where a statute gives complete authority and discretion to an agency to withhold or grant a benefit, there can be no Constitutionally protected property interest. Here, in plaintiff's case, there is no statutory scheme for procedural due process designed to guarantee re-instatement; the property interest emerging therefrom is non-existent. More than a "unilateral expectation" must exist. *Bd. of Regents v. Roth,* 408 U.S/ 564, 577-578 (1972); *accord* Menkes *v. Dept. of Homeland Security,* 486 F. 3d 1307, 1312 (D.C. Cir. 2007) (relevant statute provided no basis for assertion of property interest in employment in being an independent pilot); *Lopez v. FAA,* 318 F. 3d 242. 249-250 (D.C. Cir. 2003) (no property or liberty interest in discontinuing appointment of aircraft examiners; denial of re-appointment carried no stigma).

Assuming, however, *arguendo*, that a property interest existed in reinstatement, the argument that follows immediately below demonstrates there was no cognizable deprivation.

### E. Plaintiff Resigned Voluntarily and Forfeited Property Rights To Employment, Thus there is No Deprivation Under the Fifth Amendment.

In light of *Stone v. University of Maryland Medical System Corp*, 855 F.2d 167, 169 (4th Cir. 1988), several courts have held that employees who voluntarily resign, without evidence of coercion or intimidation, relinquish their property interest in employment by choice and thus

12

cannot claim deprivation of property rights under the Fifth Amendment.[5] In *Stone*, a university board initiated an investigation of a medical school professor and surgeon after numerous allegations of malpractice, ultimately concluding in a recommendation he resign without prejudice, to which he agreed. *Id.* at 170, 171. The court held that even a state action that may have initiated the events leading to an employee's departure in itself does not establish "deprivation by state action." *Id.* at 173. Instead, it looked at the voluntary nature of the resignation, concluding that it must be "so involuntary that it amounted to a constructive discharge." *Id*. The plaintiff's clean record, along with continued salary and status of being a faculty member for another year, led the court to determine that his resignation was of his own choosing, and in doing so, he forfeited his claim of property protection under the due process clause. *Id.*

In *Rosen v. City of Virginia Beach*, 68 Fed. Appx. 384, 386, 2003 U.S. App. Lexis 10771, (4th Cir. 2003) the Fourth Circuit found that a police officer's claim of property interest in employment was defeated by the undisputed fact that he resigned his position in the aftermath of a particular arrest, and that his evidence asserting it to be involuntary was unpersuasive and conclusory. Plaintiff was subsequently indicted by a grand jury on assault charges stemming from the arrest. *Id*. at 386. The court adopted the *Stone* holding, finding "one cannot maintain a claim of the deprivation of a legitimate property interest in a position of employment where he has voluntarily resigned the position. *Id*. at 385, 386.

---

[5] *Dodd v. Sheppard,* 436 F. Supp. 2d 326, 338 (D.R.I. 2006) (police officer offered choice to be fired or resign; resignation occurred but attempt to rescind ineffective and not involuntary); *Cullen v. City of W. Allis*, 2007 U.S. Dist. Lexis 75593 (E.D. Wis. 2007) (City attorney chooses to resign; had access to counsel; deemed not involuntary) *but cf. Angarita v. St. Louis Cty.,* 981 F.2d 1537, 1545 (8th Cir. 1992) (police officer's will overborne by coercive interrogation tactics in investigation of sex and drug scandal; resignation found involuntary).

13

In *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227-228 (3d Cir. 1998), the Third Circuit adopted the *Stone* analysis in finding that former city police officers had not been coerced to retire by a letter regarding dispensation of their benefits, but instead had decided to retire before the letter was received. The court found that letter had no effect on the plaintiffs' decision to retire, as they had voluntarily decided to retire four months before receiving the letter. *Id.* at 228. The court held, "Employee resignations and retirements are presumed to be voluntary… this presumption remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured." *Id.* at 227.

      Plaintiff's claim is analogous to *Stone*, in that he resigned his position from MPD of his own free will. Plaintiff pleads no facts to show coercion or intimidation in making the decision to resign, but instead admits that the decision was made in order to spend time pursuing educational opportunities. In addition, Plaintiff fails to allege that any action by the District or government officials was decisive in his decision to resign other than a vague conversation by a fellow employee explaining likewise decisions by former and current MPD employees.

      Like *Leheny* and *Rosen*, Plaintiff made his decision to resign as a police officer on his own for personal reasons, and admits so in the complaint. Plaintiff claims that MPD officials told him that others had resigned to take a year to pursue opportunities before being rehired by MPD. However, Plaintiff makes it clear that he was excited about the possibility of earning his MBA, and his decision to resign was made solely for the purposes of pursuing his education fulltime. Like *Leheny*, communication with government officials may have referenced Plaintiff's decision but Plaintiff's complaint shows no coercive or intimidating effect upon Plaintiff; he freely and voluntarily made the decision to take time to pursue his education. There is simply no deprivation.

Plaintiff's complaint shows no facts amounting to evidence of intimidation and coercion and he admits that the decision to resign was motivated by educational opportunities. His complaint accordingly demonstrates his voluntary decision to resign and forfeit due process protection to employment. Thus, the claim should be dismissed as a matter of law.

### III. Conclusion

For the foregoing reasons, the Defendants respectfully request that the complaint be dismissed with prejudice in accord with the proposed order.

DATED: July 17, 2008  	Respectfully submitted,

PETER J. NICKLES
Acting Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division


          */s/ Kimberly M. Johnson*
KIMBERLY M. JOHNSON   D.C. Bar No. 435163
Chief, General Litigation Section 1


          */s/ Thomas J. Foltz*
THOMAS J. FOLTZ
Assistant Attorney General
D.C. Bar No. 462858
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 724-6652
(202) 727-0431 (fax)
E mail: Thomas.foltz@dc.gov


### CERTIFICATE OF SERVICE

This case has been designated as part of the U.S. District Court for the District of Columbia's electronic ECF file and serve system. This filing has been filed with such Court and

served on all parties herein electronically through such ECF electronic file and serve system on July 17, 2008.

_____/s/ Thomas J. Foltz_____
Thomas J. Foltz, Esq.

.

Sanders 06 1411 DC MTN Judgmnt on Pleadings MEMO E sign 071708