**IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CHRISTOPHER SANDERS** | ) | |
| | ) | CA No. 06-1411 (PLF) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **DISTRICT OF COLUMBIA, et al.** | ) | |
| | ) | |
| | ) | |
| Defendants | ) | |
| ———————————————————— | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT
ON THE PLEADINGS[1]**

Although styled as a Motion for Judgment on the Pleadings, Defendant is really doing nothing more than asking the Court to reconsider its earlier decision that denied the Defendants' Motion to Dismiss. Defendants cite to nothing new and, for that reason alone, the Court should deny the Motion.

The Motion fares no better on the merits. With respect to the free speech and petition to redress claims, Defendants have already conceded that Plaintiff's speech was not pursuant to his official duties. Regarding the due process claims Defendants do not even cite the statutory language that is relevant to the case. In addition, Defendants ignore the fact that they conducted stealth investigations of Mr. Sanders that Defendants used to deprive Mr. Sanders of government employment.

These points are discussed in detail below.

---

[1] Plaintiff and Plaintiff's counsel notes with regret the passing of Thomas Foltz, counsel for Defendants, who died after the filing of this motion. We express our condolences to Mr. Foltz' co-workers and family.

FACTUAL AND PROCEDURAL BACKGROUND:

The Court has previously summarized the relevant facts in its Memorandum Opinion on Defendants' Motion to Dismiss.  See Docket # 15.  Since that time, Mr. Sanders has filed a motion to amend the complaint along with the amended complaint. See Docket # 30.  In reviewing the pending Motion, Plaintiff requests that the Court consider the additional facts alleged in the pending Amended Complaint as those allegations are responsive to issues raised in the pending Motion.  Judicial economy would be served by considering the amended complaint given the liberal rules regarding amendment.  *See, e.g., Davis v. Liberty Mutual Insurance Co*., 276 U.S. App. D.C. 394, 871 F.2d 1134, 1136-37 (D.C. Cir. 1989) ("It is common ground that Rule 15 embodies a generally favorable policy toward amendments.")  The Court has previously taken this approach in a situation where the amended complaint was filed after the motion for judgment on the pleadings was filed.  *Kelly v. Barreto*, 2006 U.S. Dist. LEXIS 62626, 5-6 (D.D.C. 2006) ("The Court therefore has treated the motion for judgment on the pleadings as one addressed to the amended complaint.")  In the present case, consideration of the amended pleading would be even more appropriate as it was filed several months before the pending motion for judgment on the pleadings.

Reviewing both the original complaint and the amended complaint shows the following.  Mr. Sanders brought this suit pursuant to the First and Fifth Amendments to the US Constitution and 42 USC § 1983 against Defendant District of Columbia and certain individual defendants, then Chief of Police Ramsey and Jeffrey Herold, because the Defendants retaliated against him for his exercise of free speech and because he

petitioned the courts for redress of his grievances.  Mr. Sanders also brought suit because the Defendants deprived him of his government employment without due process of law.

The factual allegations were as follows (unless otherwise noted the citations are to the original complaint.  These allegations are also contained in the Amended Complaint):

Plaintiff Christopher Sanders became a police officer with the Metropolitan Police Department of Washington, D.C. in 1990.  Complaint at ¶ 8.  In November 1996, the MPD created a unit called the Special Emphasis Unit (SEU) under the direction of Lt. Lowell Duckett.  The SEU was a unit within the Narcotics and Special Investigations Division of the Support Services Bureau.  Its purpose and mission was to investigate and stop gang activity, especially trafficking in illegal narcotics.  *Id*. at 9.

Sgt. Sanders and Sgt. Harry T. Hill were selected to supervise the officers in SEU. Both Sgt. Hill and Sgt. Sanders had been recognized for their accomplishments in battling illegal narcotics in the District of Columbia and had previously been named to other special units.  *Id*. at 10.

During their time in SEU, Plaintiff Sanders and others noticed what appeared to be abuses of the time and attendance policies of the MPD that may have been criminal in nature.  The abuse resulted in the loss of taxpayer money.  Plaintiff Sanders reported his concerns and objections to various superiors in his chain of command.  He also testified before the District of Columbia City Council.  Plaintiff's objections were also covered in the local media.  Sanders did not make this speech pursuant to his official duties.  *Id*. at 11.

Following his objections, Plaintiff Sanders was treated adversely in that he was deprived overtime pay, physically threatened and reassigned to a less desirable position, among other things. *Id*. at 12.

Plaintiff Sanders and Sgt. Hill brought suit against the District of Columbia and others in U.S. District Court for the District of Columbia in Civil Action No. 97-02938 for violations of their right to free speech. *Id*. at 13.

Plaintiff Sanders testified on several occasions during that lawsuit in deposition and otherwise actively participated in the litigation of the case. *Id*. at 14.

The litigation raised matters of public concern in that it objected to alleged misconduct on the part of the Mayor, the Chief of Police and a MPD lieutenant. *Id*. at ¶ 15. *See also, Sanders v. District of Columbia*, 16 F. Supp. 2d 10 (D.D.C. 1998).

During the litigation Plaintiff Sanders engaged in settlement negotiations through his attorney. In or about August 2002, the parties reached a settlement of the claims. In part, the District was required to promote Plaintiff to Lieutenant and to assign him to the Major Crash Unit. *Id*. at ¶ 16.

In or about August 2002, Plaintiff Sanders was presented with the opportunity to complete a Master of Business Administration Program at no expense to the MPD at Marymount University in Arlington, Virginia. *Id*. at ¶ 17.

Plaintiff Sanders contemplated whether to resign from the MPD in order to pursue this educational opportunity or whether he should request an educational leave of absence. *Id*. at ¶ 18.

In early September 2002, Plaintiff was advised by MPD officials that even if he resigned from the MPD he was always free to come back within one year. *Id*. at ¶ 19.

This advice was consistent with §816.6 of the DC Personnel Manual which stated that a former member of the MPD shall have reinstatement eligibility.  Id. at ¶ 20.

Plaintiff Sanders on or about September 5, 2002 decided to resign from the MPD in order to pursue his educational opportunities.  Plaintiff Sanders submitted a document informing the MPD that he was resigning with 30 days notice.  *Id*. at ¶ 21.

Unbeknownst to Plaintiff Sanders, on or about September 5, 2002, the relevant MPD officials signed off on his request.  *Id*. at ¶ 22.

Within days of submitting his resignation and within the 30 day notice period, Plaintiff Sanders submitted a request to rescind his resignation.  *Id*. at ¶ 23.

Plaintiff Sanders also requested a leave of absence without pay to be granted so that he could attend school for his MBA.  Such a request was consistent with past practice at the MPD.  For example, on one occasion an officer had been given a year of leave with pay in order to attend studies.  *Id*. at ¶ 24.

Unbeknownst to Plaintiff Sanders, Defendant Herold denied his request to rescind his resignation.  Defendant Herold remarked on the memo that Plaintiff Sanders was "undependable."  Defendant Lanier also denied Plaintiff Sanders' request noting on the memo that Plaintiff Sanders was "not dependable."  Defendant Broadbent also disapproved Plaintiff Sanders' request to rescind his resignation.  ¶ 25 of the <u>Amended</u> complaint.

Plaintiff was unaware of the actions described in ¶ 25 until March 31, 2008.  ¶ 26 of the <u>Amended</u> complaint.

At the time the actions in ¶ 25 were taken Defendants Lanier, Herold and Broadbent did not have a good faith belief that Sanders was undependable.  Further, they

rejected Plaintiff Sanders' request to rescind his resignation in retaliation for his exercise of his free speech and because he petitioned the court for a redress of grievances.  ¶ 27 of the <u>Amended</u> complaint.

Defendants Lanier, Herold and Broadbent did not provide Plaintiff Sanders with an opportunity to be heard on their findings that he was "undependable" even though they were using that finding to deprive Mr. Sanders of his government employment.  They did not conduct an investigation.  ¶ 28 of the <u>Amended</u> complaint.

Having heard nothing back from his request, Plaintiff Sanders submitted another request that was received by Defendant Ramsey's office on November 15, 2002.  *Id*. at ¶ 25.

Thereafter, on several occasions, Plaintiff Sanders, through his attorney, requested a response from the District of his request to rescind his resignation letter and his request for an educational leave of absence.  *Id*. at ¶ 26.

Without Plaintiff Sanders' knowledge, the MPD, at the direction of Chief Ramsey, and/or Jeffrey Herold and/or John Doe commenced an investigation of Plaintiff Sanders, the primary purpose of which was to contrive a reason to deny Plaintiff Sanders his request to rescind his resignation.  The MPD falsely charged Plaintiff Sanders with willfully and knowingly making an untrue statement regarding the date he planned to return from leave and for being absent without leave for more than four consecutive hours.  The investigation was conducted by Plaintiff Sanders' former superior Lieutenant Jeffrey Herold.  *Id*. at ¶ 27.

Chief Ramsey knew that these allegations were false and were not supported by the evidence relied upon in the investigation.  *Id*. at ¶  28.

Plaintiff Sanders did not learn of this investigation until late 2005 from an anonymous source. *Id*. at ¶ 29.

As a result of this bad faith investigation, the MPD concluded that Plaintiff Sanders had knowingly made false statements about when he would return from leave, and that he should not be reinstated. However, the MPD did not interview Plaintiff Sanders during the investigation, did not disclose its results to Plaintiff Sanders and did not give Plaintiff Sanders an opportunity to respond to the charges. *Id*. at ¶ 30.

Lt. Herold and/or John Doe conducted the investigation and made unsubstantiated conclusions in retaliation for Plaintiff Sanders' free speech activities and because of his participation in the federal lawsuit. *Id*. at ¶ 31.

The MPD's charges were untrue. Moreover, the investigation was conducted in violation of MPD procedures. For example, the MPD did not even commence the investigation until approximately 9 months after the events in question. District law, at that time, required corrective or adverse action to be taken within 45 days.[2] The MPD did not afford Plaintiff Sanders the opportunity to respond to the charges lodged against him and the facts did not support a finding that Plaintiff Sanders had done anything wrong. *Id*. at ¶ 32.

On August 15, 2003, Defendant Ramsey declined to reinstate Plaintiff Sanders without explanation and without providing Sanders any due process. In fact, Defendant Ramsey made his decision in retaliation for Plaintiff's exercise of his free speech and because of Sanders' participation in the lawsuit concerning the retaliation he suffered

---

[2] This time limit should have been noted as 25 days. See D.C. Municipal Regulations, Title 6, Ch. 8, 877.11.

and/or because he was induced to do so at the urging of Lt. Herold and/or John Doe. *Id.* at ¶ 33.

Plaintiff Sanders objected to this decision by written letter. The MPD treated Plaintiff Sanders objection as a grievance. However, to date, it has not responded to the grievance. *Id.* at ¶ 34.

Mr. Sanders brought suit in Count I for retaliation due to 1) his exercise of free speech and 2) his petitioning the court for a redress of his grievances, *i.e.* retaliation for pursuing his first case and for defamation committed by MPD personnel. Mr. Sanders expressly alleged that his speech was <u>not</u> pursuant to his official duties. Complaint at ¶ 11.

With regard to Count II, Mr. Sanders alleged that the government had deprived him of his property interest, employment, when it conducted a bad faith investigation of him, without making him aware of the charges or affording him an opportunity to respond to the charges, in violation of the Fifth Amendment to the constitution. In the Amended complaint, Mr. Sanders expanded on this Count to include a charge that he was denied due process when he was not afforded the opportunity to respond to the charge that he was undependable, which was used, without his knowledge, as the reason to deny his request to rescind his resignation.

### THE COURT SHOULD CONSIDER ITS PRIOR RULINGS THE "LAW OF THE CASE" AND DENY THE MOTION FOR JUDGMENT ON THE PLEADINGS.

A review of the Defendants' motion shows that it is doing nothing more than rearguing its original motion to dismiss, *i.e. taking another bite at the apple.* In that sense, the motion is really a motion for reconsideration and the Court should treat it as

such. *Powell v. Castaneda*, 247 F.R.D. 179, 183 (D.D.C. 2007). In *Castaneda*, the Court noted that in reconsidering an earlier decision there must be concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." *Castaneda*, 247 F.R.D. at 181.

In its decision, the Court considered *Garcetti,* rejected its application and expressly observed that the District was not arguing that Mr. Sanders acted within his official duties:

> In *Garcetti*, the Supreme Court distinguished expressions made at work pursuant to official duties from those that are not, and held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 126 S. Ct. at 1960. The Court notes that it does not appear that Sanders made these statements at issue in this case "pursuant to his official duties," nor have defendants argued that he did.

*Sanders v. District of Columbia*, 522 F. Supp. 2d 83, 89 (D.D.C. 2007) (emphasis added).

The Court issued its decision in November 2007 and the District did nothing to correct the Court's impression. Defendants fail to articulate why they could not have made their *Garcetti* argument in their original motion. Furthermore, discovery has been ongoing for several months. Defendants' failure to raise *Garcetti* previously should be viewed as a conscious litigation strategy and the Court should consider the argument

waived.  *Cf. Jones v. Mukasey*, 2008 U.S. Dist. LEXIS 52621 (D.D.C. 2008) (finding defenses not raised in the answer are waived).

The arguments in favor of reversing the Court's previous ruling on the due process claim are similarly invalid.  Defendants do not cite new cases.  Instead they rely on cases that are as much as two decades old.  *See, e.g. Parks v. Watson*, 716 F.2d 646 (9th Cir 1983) and *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 167 (4th Cir. 1988).

In short, Defendants have failed to show why the Court should reconsider its November 2007 decision.  The Court should deny the Motion.

### ON ITS MERITS, DEFENDANTS MOTION MUST ALSO FAIL

The merits of Defendants' Motion fare no better particularly under the favorable standards that must be applied to this motion, which are the same as a motion to dismiss, as discussed in detail below.[3]

### WITH RESPECT TO COUNT I, MR. SANDERS HAS PLED THAT HE WAS NOT ACTING PURSUANT TO HIS OFFICIAL DUTIES AND DEFENDANTS HAVE CONCEDED THAT MR. SANDERS WAS NOT ACTING PURSUANT TO HIS OFFICIAL DUTIES.

Looking at the merits of Defendants' arguments, Defendants argue that "based on [ ] matters of public record, that plaintiff Christopher Sanders made his statements

---

[3] *See Jung v. Ass'n of Am. Med. Colleges*, 339 F. Supp. 2d 26, 36 (D.D.C. 2004) ("[T]he standard of review for motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially the same as that for motions to dismiss under Rule 12(b)(6)."). Because a Rule 12(c) motion "would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation," the Court must treat Defendants' motion "with the greatest of care" and deny it "if there are allegations in the complaint which, if proved, would provide a basis for recovery." *Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 58 (D.D.C. 2007) (internal citation omitted).

pursuant to his official duties, thus defeating his claim under the recently decided *Garcetti v. Ceballos*, 547 U.S. 410 (2006)." Defendants' Memorandum in Support of its Motion for Judgment on the Pleadings at 4 (Defendants' Memo").

The Court should reject this argument for the simple reason that Mr. Sanders pleads just the opposite in his Complaint. Specifically, Mr. Sanders pled in his amended complaint:

> 11.    During their time in SEU, Plaintiff Sanders and others noticed what appeared to be abuses of the time and attendance policies of the MPD that may be criminal in nature. The abuse resulted in the loss of taxpayer money. Plaintiff Sanders reported his concerns and objections to various superiors in his chain of command. He also testified before the District of Columbia City Council regarding this issue. Plaintiff's objections were also covered in the local media. <u>Plaintiff Sanders did not make this speech pursuant to his official duties.</u>

¶ 11 of the First Amended Complaint (emphasis added). This allegation also appeared in the original complaint at ¶ 11.

Mr. Sanders' factual allegation that his speech was not made pursuant to his official duties must be taken as true at this stage of the litigation.[4] If this factual allegation is true then Mr. Sanders satisfies *Garcetti*.

Apparently, realizing that the allegation destroys their argument, Defendants ignore it. Instead, Defendants point to the results of a Google search on the internet.

---

[4] In evaluating either a Rule 12(c) motion for judgment on the pleadings or a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must not rely on facts outside of the pleadings, must construe the complaint in a light most favorable to the plaintiff, and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *See Jung*, 339 F. Supp. 2d at 36. *See also In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *Schuler v. United States*, 199 U.S. App. D.C. 23, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."); *Maniaci*, 510 F. Supp. 2d 50, 59 (D.D.C. 2007).

According to Defendants this search revealed the following statement from Mr. Sanders during City Council testimony:

> It was part of our responsibility to ensure that accurate time records of our subordinates were maintained according to Departmental Regulations.

Defendants' Memorandum at 3.

Assuming, *arguendo*, that this testimony is admissible, the quoted testimony is not contrary to the allegations of the Complaint, as Defendants maintain. Defendants' Memorandum at 2. In the alleged City Council testimony, Mr. Sanders was speaking to his duty to keep accurate time records. He never said that he had the duty or obligation to perform the duties alleged in the Complaint. For example, the rest of the testimony Defendants rely on show that Mr. Sanders brought the issue of Detective Walltower not showing up for work to his immediate supervisor then Lt. Lowell Duckett. Lt. Duckett, at that time, told then Sgt. Sanders to not worry about Detective Walltower and that Detective Walltower was his (Duckett's) responsibility. Lieutenant Duckett further gave Sgt. Sanders a direct order to put Detective Walltower on the books. In other words, Lt. Duckett was telling Sgt. Sanders that it was his duty to put Detective Walltower on the books. When he did not do that, on several occasions, Sgt. Sanders was disobeying a direct order and, arguably, being insubordinate.

In fact, this is exactly what the District argued in Mr. Sanders' first case, *i.e.* he was being insubordinate by not following Lt. Duckett's orders. *See, Hill and Sanders v. District of Columbia*, et al. 97-2938, District Motion to Dismiss filed on January 30, 1998 at Docket entry 10. *See, e.g.,* District's Brief at 22 (plaintiffs' speaking out about "defendants' gross mismanagement of the Detective Walltower assignment . . .

constitute[s] public criticism of the Chief's [sic] and the integrity and credibility of the Department." Such speech is "outweighed by the duty of loyalty they owe to a superior officer not to mention the Chief's need to maintain departmental discipline and to preserve public confidence in the police force.")

The Defendants echoed this argument in the first Motion to Dismiss in this lawsuit:

> The same is true with Sanders' original lawsuit (no. 97-2938). The specific allegations were simply an open attempt to justify his course of insubordination with respect to Lieutenant Duckett and to avoid the consequences of that insubordination.

Defendant's First Motion to Dismiss at 9 (Docket # 6) filed on September 28, 2006.

It is patently inconsistent to argue that an employee is being insubordinate by performing his official duties but that is exactly what the District is doing. Defendants cannot have it both ways. They cannot argue in the first litigation and the first Motion to Dismiss in this litigation that Mr. Sanders' speech violated his duty of loyalty and that he was being insubordinate and then do an about face and argue, in this motion, that Mr. Sanders' speech was just part of his job.

The rest of Mr. Sanders' City Council testimony, which Defendants ignore, is actually very helpful in showing that Mr. Sanders was going far beyond his job duties. According to the testimony Defendants cite, Mr. Sanders took his concerns above the head of his Lieutenant, he objected to the Inspector, the Deputy Chief, the Chief of Police and Internal Affairs. Mr. Sanders actually went <u>outside</u> of the MPD and reported his

concerns to the US Attorney's office.  Mr. Sanders even went to the FBI, in addition, to

the City Council.  See City Council testimony relied upon by Defendants.[5]

Leaving aside the question of whether Mr. Sanders had a duty to complain to his

superiors about time and attendance fraud, courts routinely find *Garcetti* not applicable

when the employee goes outside the employment relationship to lodge objections.  For

example, a corrections officer who complained to her Senator and the Inspector General

about sexual harassment at work was speaking as a citizen because

> her right to complain both to an elected public official and to an
> independent state agency is guaranteed to any citizen in a democratic
> society regardless of his status as a public employee.  [] []   Under
> *Ceballos*, Freitag does not lose her right to speak as a citizen simply
> because she initiated the communications while at work or because they
> concerned the subject matter of her employment. Id. at 1959.  The critical
> inquiry is instead whether Freitag engaged in the relevant speech
> "pursuant to [her] official duties." 126 S. Ct. at 1960. With respect to her
> contact with Senator Polanco and the IG, the answer is "No."  It was
> certainly not part of her official tasks to complain to the Senator or the IG
> about the state's failure to perform its duties properly, and specifically its
> failure to take corrective action to eliminate sexual harassment in its
> workplace. Rather, it was Freitag's responsibility as a citizen to expose
> such official malfeasance to broader scrutiny. Accordingly, in these
> instances, for purposes of the First Amendment she spoke as a citizen.

*Freitag v. Ayers*, 468 F.3d 528, 545 (9th Cir. Cal. 2006).

Trial courts in this District have reached a similar result:

> In contrast, Plaintiff's First Amended Complaint sufficiently alleges facts
> and raises inferences that might establish that she spoke as a citizen on a
> matter of public concern when she met privately with Councilman
> Catania. Plaintiff does not specifically allege whether the meeting
> occurred during business hours or who requested the meeting, but does
> allege that she "and her husband met privately for an hour with Mr.
> Catania and two of his aides." Am. Compl. P 54. Furthermore, Plaintiff's
> allegation that "[o]n information and belief, [Mr.] Johnson became aware

---

[5] Plaintiff's counsel found the relevant testimony by going to DC Watch's website and
then searching for "Sanders" using DC Watch's search engine limited to the DC Watch
database.  The hyperlink Defendants provided did not work for plaintiff's counsel.

that [Plaintiff] met with Councilman Catania," at some point after the meeting occurred, id. P 57, raises a reasonable inference that Plaintiff's supervisors were not aware of, and therefore did not authorize, the meeting.

***

…    For the time being, however, it is sufficient that Plaintiff's First Amended Complaint contains factual allegations and raises reasonable inferences that might demonstrate that in meeting with Councilman Catania she acted as a citizen, rather than pursuant to her official duties as a public employee.

*Williams v. Johnson*, 537 F. Supp. 2d 141, 152 (D.D.C. 2008).[6]

Defendants do not make any effort to show that all of these activities were part of Plaintiff's official job duties.  At most Defendants state, without support to any authority, that "As an MPD officer, Plaintiff had a responsibility to his employer to not only report and enforce criminal violations within the community, but also within the MPD infrastructure itself."  Defendants' Memorandum at 2.  Elsewhere, Defendants argue that "Plaintiff had a great responsibility to report wrongdoing and potentially illegal activity within his own unit."  Id. at 9.  This is nothing more than unsupported legal argument.[7]  But even on its own terms, the argument fails to show that the District is entitled to relief

---

[6] The court did dismiss part of plaintiff's first amendment claim but this was because plaintiff, in effect, pled that part of her claim out of court.  537 F. Supp. 2d at 151.  The court in *Williams* noted that "Plaintiff explicitly alleges that as "chief" of CREG, she provided written answers to the D.C. Council about ACIS. [].  Moreover, Plaintiff alleges that she was "expected to attend the oversight hearing so if Mr. Johnson was not sure how to a respond to a question put to him, the manager directly responsible would be available to assist" and admits that she "was told there was a small chance that [she] could be called to testify at the oversight hearing."  Id. at 151.  Again, in the instant matter, Mr. Sanders pled that his speech was not part of his job duties.

[7] Defendants' cases are inapposite.  For example, in *Wilburn v. Robinson*, 480 F.3d 1140 (D.C. Cir. 2007) the plaintiff actually pled that the speech at issue was part of her official duties.  480 F.3d at 1151 (D.C. Cir. 2007).  Mr. Sanders pleads just the opposite as discussed in the text.  In *Winder v. Erste*, 511 F. Supp. 2d 160, 173 (D.D.C. 2007), a case decided on summary judgment, all of the plaintiff's speech concerned matters listed in his job description.

as its unsupported claim is that Mr. Sanders' duty is limited to the so-called "MPD infrastructure" and does not speak to objections and whistle-blowing activities lodged with the U.S. Attorney's Office and the FBI or the City Council, as Mr. Sanders testified to in his City Council testimony. [8]

In sum, Mr. Sanders has adequately pled that his speech was not pursuant to his official duties.  In addition, Defendants have previously taken the position that Mr. Sanders' speech was not pursuant to his official duties.  Therefore, *Garcetti* does not apply and the Court should deny the Defendants' motion.

### DEFENDANTS' ARGUMENTS REGARDING PETITIONING THE COURT FOR A REDRESS OF GRIEVANCES ARE SIMILARLY MISGUIDED.

Mr. Sanders alleges that he was retaliated against because he petitioned the Court for a redress of grievances when he filed his 1997 lawsuit raising free speech retaliation and defamation claims.  Defendants argue that the petition claim must fail because of *Garcetti*.

The Court should reject this argument because *Garcetti* does not apply to petition claims.  Indeed, it would be incongruous to argue that Mr. Sanders filed a lawsuit and actively participated in that lawsuit pursuant to his official duties.[9]  Even if it did apply,

---

[8]Mr. Sanders' position that he was not acting pursuant to his official duties is supported by recent case law.  *See e.g.  Taylor v. Town of Freetown*, 479 F. Supp. 2d 227, 237 (D. Mass. 2007) ("Garcetti is not meant to strip an employee of First Amendment protection when speaking out regarding issues of serious and widespread public concern, like corruption, just because a garden-variety rule requires him to tell a supervisor."); *Brescia v. Ceil Sia*, 2006 U.S. Dist. LEXIS 68470 (S.D.N.Y. 2006);  *Wright v. FBI*, 2006 U.S. Dist. LEXIS 52389 (D.D.C. 2006).

[9] Defendants rely on *Ruotolo v. City of New York*, 2006 U.S. Dist. Lexis 49903 (S.D. N.Y. 2006) for the proposition that *Garcetti* applies to retaliation claims based on lawsuits.  *See* Defendants' Memorandum at 10.  Importantly, the court never discussed the particulars of petition for redress of grievance claims and never mentioned the term.

Mr. Sanders has sufficiently alleged that his speech was not pursuant to his official duties. See Complaint at ¶ 11. Moreover, as noted above, Defendants have previously taken the position that Mr. Sanders was not acting pursuant to his official duties and that he was being insubordinate. Defendants' argument collapses under the weight of its own inconsistencies.

The Court should deny the Motion for Judgment on the Pleadings.

### AS THE COURT HAS PREVIOUSLY HELD, MR. SANDERS SUFFICIENTLY ALLEGED DEPRIVATION OF A PROPERTY INTEREST.

The Court has previously rejected Defendants' argument regarding Mr. Sanders' procedural due process claim. The Court held that Mr. Sanders stated a claim for a violation of his procedural due process rights under the Comprehensive Merit Protection Act ("CMPA"). 522 F. Supp.2d at 91.

Defendants now cite DC Municipal Regulation 6-807(e), which has to do with age requirements, and argue that "MPD was under no legal obligation to reinstate Plaintiff if it determined that reinstatement was not in its best interests." Defendants' Memorandum at 11-12 (emphasis added).

Defendants discuss the wrong section of the law. The correct section, and the section Plaintiff relies on, is DC Municipal Regulations Title 6, Ch. 8, 6-816.6, which specifically concerns "Career Service Employment by Reinstatement." This latter section is mandatory:

---

On appeal, the Second Circuit did not endorse the district court's expansion of *Garcetti* to free speech claims based on lawsuits. *See, Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008). Other courts to have considered the issue have held that Garcetti does not apply to petition claims; *See also, Foraker v. Chaffinch*, 501 F.3d 231, 237 (3d Cir. 2007) (rejecting the application of *Garcetti* to petition claims: "petitions are not synonymous with speech for purposes of constitutional analysis.").

… a former uniformed member of the … Metropolitan Police Department <u>shall</u> have reinstatement eligibility provided he or she meets all of the following requirements:

(a) the former member previously held a Career Appointment (Permanent);

(b) The former member was not terminated for cause under Chapter 16 of these regulations; and

(c) The former member meets the requirements of … § 807.1(e), as appropriate.

D.C. Municipal Regulations § 6-816.6 (emphasis added).

The cross reference to § 6-807.1(e), which is the section on age requirements, has to do with the three things that must occur before the Chief of Police can consider the reinstatement request. These three things are:

1)    the applicant must submit his request for reinstatement in writing to the Chief;

2)    the applicant must successfully pass a background investigation; and

3)    The applicant must be found to be physically qualified through a medical exam.

D.C. Municipal Regulations § 6-807.1(e).[10]

By misciting and misquoting the relevant sections, Defendants are trying to impose the permissive "may" in 6-807.1(e) onto the mandatory "shall" of 6-816.6 but this reading flies in the face of statutory construction, which requires that specific provisions control over general ones.[11]   In the present case, the mandatory language appears in the

---

[10] Defendants also misquote § 6-807.1(e) as they put a period after the word "held."  See Defendants' Memo at 11.  In fact, there is no period in the original and the sentence goes on for several more lines after the point where Defendants claim it ends.

[11] *Colorado Nurses Asso. v. Federal Labor Relations Authority*, 271 U.S. App. D.C. 259 (D.C. Cir. 1988) ( noting the "…basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum."); *see also, Radzanower v. Touche Ross & Co*., 426 U.S. 148, 153, 48 L. Ed. 2d 540, 96 S. Ct. 1989 (1976); *Simpson v. United States*, 435 U.S. 6, 15, 55 L. Ed. 2d 70, 98 S. Ct. 909 (1978) ("Precedence [is given] to the terms of the more specific statute where a general statute and a specific statute speak to the same concern, even if the general provision was enacted later.") (emphasis added);

section specifically dealing with reinstatement to the career position. The permissive language, however, is relegated to a section on age requirements that details steps that must be taken before the reinstatement application may be considered. The "may" is not intended to describe the Chief's power but, rather, the timing of when he may consider the application, *i.e.* after certain steps have been taken.

Leaving aside Defendants' reliance on the wrong law, Defendants also argue that Mr. Sanders "voluntarily resigned" and they cite a litany of cases where public employees resigned when faced with disciplinary charges. However, using the MPD definition of resignation, which is a "voluntary separation of a member from MPD … " and applying it to the allegations as pled shows that there was no resignation in the present case. D.C. Municipal Regulations § 6-877.13.

As an initial matter, the Complaint alleges that Mr. Sanders' resignation was prompted by a misrepresentation. Specifically, Mr. Sanders was advised by his superiors that if he resigned he could always come back within one year. Complaint at ¶ 19. This prompted Mr. Sanders to submit his resignation on 30 days notice. But within days, Mr. Sanders learned that the information he had been given was incorrect. In fact, another officer had been given educational leaves of absence. Id. at ¶ 24. Mr. Sanders promptly tried to rescind his resignation <u>before</u> it became effective. Id. [12]

---

*Morton v. Mancari*, 417 U.S. 535, 550-51, 41 L. Ed. 2d 290, 94 S. Ct. 2474 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of a priority of enactment.") (cited cases omitted) (emphasis added).

[12] Thus, the instant matter is totally different from the case Defendants primarily rely on, which is *Stone v. University of Maryland Medical System Corp.*, 855 F.2d 167, 171 (4th Cir. Md. 1988). In *Stone*, the employee knew that he was being charged with wrongdoing and resigned rather than fight the charges. The employee did not resign because of any misrepresentations. Important to the court was the fact that 1) the

Mr. Sanders further alleges that Defendants thereupon began a game of "hide the ball." For example, unbeknownst to Mr. Sanders, while he was still on the District's payroll, his superiors denied his request to rescind having found him undependable.[13] This was the first denial of due process because, as a District of Columbia career employee, Mr. Sanders should have been given notice of the charges being made against him particularly where those allegations were being used to deny him government employment. See Chapter 8 of the District Personnel Manual Section 877, et seq. formerly, 874 (Retirement/Resignation of Members While Under Disciplinary Investigation) at 877.5. Mr. Sanders was entitled to all the rights of any other MPD officer. Id. at 877.10.

Defendants' silence did not mean that Mr. Sanders' resignation notice became effective. In other words, it was not self-effectuating. To the contrary, certain procedural steps had to be taken pursuant to District law before a resignation could become effective. Having not heard back on his request to rescind, Mr. Sanders was placed in

---

employee's resignation had become effective and 2) the employee had made no attempts to withdraw his resignation. 855 F.2d at 178 ("…he did not make any effort to rescind his resignations …" and "Perhaps most critically, … he specifically confirmed his resignation" by sending the Dean a letter stating he had obtained employment elsewhere.) In stark contrast, and as noted in the text, Mr. Sanders was <u>unaware</u> that Defendants were investigating him and that they were using the results of those investigations to deprive him of employment and he aggressively and consistently attempted to rescind his resignation on several occasions and, as discussed in the text, he was never formally separated because the District did not complete the mandatory paperwork, i.e. his resignation never became effective and he was misled about his leave rights.

The differences with the other case Defendants rely on, *Dodd v. Sheppard*, 436 F. Supp. 2d 326, 340 (D.R.I. 2006), are even more glaring as that case, which was decided after a bench trial, concerned a probationary employee, not a career employee like Mr. Sanders, who conceded that his resignation became immediately effective.

[13] Defendant is misrepresenting the allegations when it argues that "Plaintiff states he resigned on or about September 5, 2002 … ." Defendants' Memorandum at 3. In fact, the allegation states that Mr. Sanders submitted a document noting his intent to resign on <u>30 days notice</u>.

limbo as the District never formally separated Mr. Sanders from its employ.   For example, the District was required to provide Mr. Sanders with a PD 295 (Clearance Record), which is an essential step before resignation can take place, that Mr. Sanders was required to fill out and turn back in to his commanding officer.  General Order 207.1. The commanding officer was then obligated to complete its portion of the PD 295 form. An exit interview was also required but never took place.  Id. at page 11 ¶ 7.

Mr. Sanders continued to press for rescission of his resignation notice.  Complaint at ¶ 25-26.  Eventually, MPD began the stealth investigation that has been previously discussed in the briefing on the original motion to dismiss.  This investigation should never have taken place given that more than 25 days had passed since MPD became aware of the allegations.  D.C. Municipal Regulations 6-877.6 and 877.11.

After the stealth investigation was complete, Defendants then underlinlaterally transformed Mr. Sanders' request to rescind his resignation into a request for reinstatement.  Defendants then used these illegal investigations as a reason to deny his request to rescind his resignation and in order to prevent Mr. Sanders from continuing as a career employee of the Metropolitan Police Department.  Complaint at ¶ 27.

In sum, Defendants have cited no reason why the Court should change its holding:

> Taking the facts in the light most favorable to plaintiff, as it must, the Court finds that Sanders has stated a claim for a violation of his procedural due process rights under the CMPA.

Sanders v. District of Columbia, 522 F. Supp. 2d 83, 91 (D.D.C. 2007)

A Proposed Order is attached.

Respectfully submitted this the 4th day of August, 2008


_____/S/_____
Michael G. Kane, Bar No. 435288


_____/S/_____
David R. Cashdan, Bar No. 051342
CASHDAN & KANE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036-4129
Tel. (202) 862-4330
Fax. (202) 862-4331

*Counsel for Plaintiff*