# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **CHRISTOPHER SANDERS** ) | |
| ) | CA No. 06-1411 (PLF) |
| Plaintiff, ) | |
| ) | Summary Judgment Motions |
| v. ) | Pending |
| ) | |
| **DISTRICT OF COLUMBIA, et al.** ) | |
| ) | |
| ) | |
| Defendants ) | |
| ) | |

## PLAINTIFF'S NOTICE OF SUPPLEMENTAL AUTHORITY

This past November 12, 2013, Plaintiff, Christopher Sanders filed a brief (docket No. 122) in response to the Court's Order dated October 1, 2013 (Docket No. 119) in which the Court ordered the parties to, among other things, provide the Court with

(1) Citations to any cases issued after August 1, 2010, which the party believes are relevant to the disputed issues in this case;

See Docket No. 119.

At the time of his filing, Plaintiff had not located any responsive authority. However, recent case law requires updating on the following issues discussed by the District in its Reply Brief (Docket No. 121). These include 1) the Garcetti issue of whether Plaintiff's speech was pursuant to his official duties; 2) the issue of whether Plaintiff need only show employer knowledge of the alleged protected activity and 3) the Pembauer issue of whether Chief Ramsey had to be a final policymaker with regard to District personnel policy as it pertained to the MPD alone or whether he also had to be a

final policymaker with regard to every other District agency. Plaintiff discusses the relevant cases below.

    **I.    IN LANE V. FRANKS, THE U.S. SUPREME COURT HELD THAT A GOVERNMENT EMPLOYEE TESTIFYING AT TRIAL IS PROVIDING PROTECTED SPEECH EVEN WHEN THE TESTIMONY RELATES TO HIS PUBLIC EMPLOYMENT OR CONCERNS INFORMATION LEARNED DURING THAT EMPLOYMENT.**

The Supreme Court decided Lane v. Franks, __ U.S. __, 134 S. Ct. 2369, 2375, 189 L. Ed. 2d 312 (2014) (Ex. 1) on June 19, 2014. In Lane, the Court was faced with the question of whether the First Amendment protects a public employee who provided truthful sworn testimony, compelled by subpoena, outside the course of his ordinary job responsibilities. 134 S. Ct. at 2375.

Lane was the Director of Community Intensive Training for Youth at Central Alabama Community College. Lane was responsible for overseeing the day-to-day operations, hiring and firing employees, and making decisions with respect to the program's finances. Id. In the course of his employment, Lane discovered that one of his employees was not reporting for work but was getting paid. Lane fired the employee despite warnings that doing so would have negative repercussions for him.

A Federal investigation was launched into the no-show job and Lane testified to the Grand Jury as to what he found concerning the no-show employee. The no-show employee was indicted for mail fraud and theft.

Lane subsequently testified at several other proceedings concerning the no-show employee, who was found guilty and imprisoned. 134 S. Ct. at 2375.

Subsequently, Lane was fired because of alleged budget shortfalls. Lane sued alleging that his employer had violated the First Amendment by firing him in retaliation for his testimony against the no-show employee.

Lane's case was dismissed at the trial court and the dismissal was affirmed by the 11th Circuit based on <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 126 S.Ct. 1951, 164 L. Ed. 2d 689 (2006), which the District heavily relies on in Court papers.

The Supreme Court granted certiorari to "resolve discord among the Courts of Appeals as to whether public employees may be fired—or suffer other adverse employment consequences—for providing truthful subpoenaed testimony outside the course of their ordinary job responsibilities." 134 S. Ct. at 2377.

With respect to the issue relevant to Mr. Sanders' case the Court held that

> Truthful testimony under oath by a public employee outside the scope of his ordinary job duties is speech as a citizen for First Amendment purposes. That is so even when the testimony relates to his public employment or concerns information learned during that employment.

134 S. Ct. at 2378.

The Supreme Court reasoned that,

> Sworn testimony in judicial proceedings is a quintessential example of speech as a citizen for a simple reason: Anyone who testifies in court bears an obligation, to the court and society at large, to tell the truth. See, e.g., 18 U.S.C. § 1623 (criminalizing false statements under oath in judicial proceedings); <u>United States v. Mandujano</u>, 425 U.S. 564, 576, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976) (plurality opinion) ("Perjured testimony is an obvious and flagrant affront to the basic concept of judicial proceedings"). When the person testifying is a public employee, he may bear separate obligations to his employer—for example, an obligation not to show up to court dressed in an unprofessional manner. <u>But any such obligations as an employee are distinct and independent from the obligation, as a citizen, to speak the truth. That independent obligation renders sworn testimony speech as a citizen and sets it apart from speech made purely in the capacity of an employee</u>.

134 S. Ct. at 2379 (emphasis added).

The Supreme Court expressly rejected the argument that the employee is not protected because he learned of the subject matter of his testimony in the course of his employment. Id. Indeed, the Court held that

> … <u>Garcetti</u> said nothing about speech that simply relates to public employment or concerns information learned in the course of public employment. The <u>Garcetti</u> Court made explicit that its holding did not turn on the fact that the memo at issue "concerned the subject matter of [the prosecutor's] employment," because "[t]he First Amendment protects some expressions related to the speaker's job." Id., at 421, 126 S.Ct. 1951. In other words, <u>the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech</u>. The critical question under <u>Garcetti</u> is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties.

134 S. Ct. at 2379 (emphasis added).

The Supreme Court recognized that speech by public employees that is related to their employment "holds special value precisely because those employees gain knowledge of matters of public concern through their employment." Id. at 2379.

Also important to the Court's decision was the fact that Lane's case involved public corruption. Relying on the United States Amicus Curiae brief, the Court observed that:

> It would be antithetical to our jurisprudence to conclude that the very kind of speech necessary to prosecute corruption by public officials—speech by public employees regarding information learned through their employment—may never form the basis for a First Amendment retaliation claim. Such a rule would place public employees who witness corruption in an impossible position, torn between the obligation to testify truthfully and the desire to avoid retaliation and keep their jobs.

Id. at 2380.

Lane is very relevant to Mr. Sanders' situation. Here, Mr. Sanders provided sworn testimony to the D.C. City Council for purposes of, among other things, sharing with the Council his observations of time and attendance fraud at the Special Emphasis Unit, the fact that he had suffered retaliation as a result of his objections to the fraud and, in addition, the importance of passing a D.C. Whistleblower Act to protect public employees like Mr. Sanders who speak out against such abuses. Following the testimony of Mr. Sanders and others, the District did pass a whistleblower law in 1998. See e.g., D.C. Code § 1-615.54. Mr. Sanders' testimony was not part of his job.

There is no meaningful difference between the grand jury or trial at issue in Lane and the City Council testimony that Mr. Sanders provided. In all of these circumstances the employee is obligated to provide truthful testimony to a public entity. Mr. Sanders' speech should be protected and he should not be placed in the "impossible position, torn between the obligation to testify truthfully and the desire to avoid retaliation and keep their jobs." 134 S. Ct. at 2380.

We also note, that, unlike Lane, Mr. Sanders also alleged retaliation for his petition to redress grievances, which the District has never addressed. Further, Mr. Sanders' speech was more than just to the City Council. He also brought his concerns to other entities like the F.B.I. These facts are all discussed in Plaintiff's earlier briefing.

In conclusion, Plaintiff requests that the Court consider the Lane case when ruling on the pending summary judgment motions.

5

## II. A RECENT D.C. COURT OF APPEALS CASE HELD THAT EMPLOYER KNOWLEDGE OF PROTECTED ACTIVITY CAN SATISFY THE KNOWLEDGE COMPONENT OF THE RETALIATION PRIMA FACIE CASE WHEN AN ADVERSE ACTION TAKES PLACE SOON THEREAFTER.

In his opposition to the District's Summary Judgment Motion, Mr. Sanders argued that he had raised a fact issue over the question of whether the defendants had knowledge of his protected activity by showing, among other things, that the employer had knowledge of his protected activity and that the adverse action took place soon thereafter.  Mr. Sanders' Opposition Brief at 18-19 (Docket No. 102) citing, Jones v. Bernanke, 557 F.3d 670, 679 (D.C. Cir. 2009).

In its reply, the District maintained that "plaintiff's argument that knowledge held *by the entire District of Columbia* can somehow be imputed to the individual defendants is both incredulous and not supported by Jones."  District's Reply at 9 (Docket No. 115).

However, a recent decision by the D.C. Court of Appeals cited Jones with approval. See, Bryant v. D.C., No. 13-CV-483, 2014 WL 5473052, at *3 (D.C. Oct. 30, 2014) (Ex. 2). In that case, plaintiff Bryant alleged that he was fired because he intended to testify against the District in a sexual harassment claim brought by another employee.  Bryant testified that the sexual harassment case was a topic of discussion among departmental personnel and that he escorted a legal team around the facility that was investigating the claim.  He testified that he told the District's lawyers and Mr. Thomas, who was his direct supervisor, in the presence of Superintendent Dunbar, who was Thomas' supervisor, about his intent to testify in that case.  Superintendent Dunbar made the recommendation to terminate Mr. Bryant to Chief of Services Muhammad, who then conveyed the recommendation to Director Schiraldi.  Director Schiraldi was the person who signed Bryant's termination letter.

6

The trial court dismissed the case concluding that Bryant had failed to provide sufficient evidence that a reasonable jury could infer that Director Schiraldi—the person who fired Mr. Bryant—knew that Mr. Bryant intended to testify against the District. The trial court emphasized that Bryant needed to demonstrate that the decisionmakers who chose to fire Mr. Bryant had "actual knowledge" of his intent to testify. The trial court reasoned that if the relevant decisionmaker did not have actual knowledge of such protected activity, Mr. Bryant could not establish that he was fired *because of* that protected activity.

The D.C. Court of Appeals found that the trial court's rationale was wrong because it ignored the importance of circumstantial evidence of knowledge. Bryant v. D.C., No. 13-CV-483, 2014 WL 5473052, at *3 (D.C. Oct. 30, 2014). Citing the D.C. Circuit's opinion in Jones for the proposition that "the employer had knowledge of the employee's protected activity, and the adverse personnel action took place shortly after that activity" was sufficient to establish a prima facie case that his supervisors knew of the protected activity. The Court of Appeals concluded that a reasonable jury could infer that Director Schiraldi had actual knowledge that Bryant intended to testify in the sexual harassment litigation because his subordinate had that knowledge. Although Bryant had not produced a smoking gun showing exactly what Mr. Dunbar, Mr. Muhammad, and Mr. Schiraldi discussed, the Court of Appeals found that he need not do so for a jury to reasonably infer that Director Schiraldi knew of Bryant's intent to testify. Id. at *3.

Plaintiff requests that the Court consider this case in ruling on the summary judgment motions.

7

### III.     THE AGENCY HEAD IS USUALLY THE FINAL POLICYMAKER.

In its Reply Brief, the District conceded that the Chief of Police had, pursuant to Mayor's Order 2000-83, personnel authority for the MPD.  See, Reply Brief at 27-28 (Docket 115).  In other words, the Chief was final policymaker for personnel actions at the MPD.  However, incongruously, the District argued that this was not enough to establish municipal liability under 42 USC § 1983 despite the fact that the District acknowledged Supreme Court precedent to the effect that the authority held by the final policymaker be "respecting such activity" and "in a particular area, or on a particular issue."  Reply Brief at 23 citing Pembaur, 475 U.S. at 481-82 and Reply Brief at 22 citing, McMillian v. Monroe County, 520 U.S. 781, 785.

Ignoring the precedent it cited, the District drew the spurious conclusion that Mr. Sanders had to show that the Chief was the final policymaker for personnel policy for the entire District of Columbia government rather than just the MPD, even though the MPD was the relevant "particular area or issue."  See Reply Brief at 28.

However, it is clear that the Chief had final policymaking authority to set personnel policy for the District of Columbia as it pertained to the MPD pursuant to the Mayor's Order cited in the District's Reply brief.  That should be more than enough to establish municipal liability under Pembaur.  Indeed, this is the hypothetical referenced in footnote 12 of the Pembaur decision.  See, Pembaur v. City of Cincinnati, 475 U.S. 469, 484, N. 12, 106 S. Ct. 1292, 1300, 89 L. Ed. 2d 452 (1986).

The final policy maker issue was recently examined by this Court in <u>Allen-Brown v. D.C.</u>, No. CV 13-1341 (ABJ), ____ F. Supp. 2d ____, 2014 WL 3051021, at *1 (D.D.C. July 7, 2014) (Ex. 3).  This case concerned a MPD officer who alleged, among other things, that MPD personnel retaliated against her by placing her on unpaid leave in response to her complaints that the MPD was not accommodating her need to breast feed her baby.  One of Officer Allen-Brown's claims was brought under 42 USC 1983.  In that regard, the Court considered whether the Medical Services Branch Director William Sarvis, Jr. of the MPD's Professional Development Bureau could be a final policymaker.

The District moved to dismiss arguing that municipal liability could not attach.  The Court addressed the policymaker argument and noted that courts in the District of Columbia have held that a final policy maker "typically must be at least an agency head or the governing body of an agency." <u>Id.</u>, <u>citing</u>, <u>Coleman v. District of Columbia</u>, 828 F.Supp.2d 87, 91 (D.D.C.2011) and <u>Byrd v. District of Columbia</u>, 807 F.Supp.2d 37, 75 (D.D.C.2011).

The Court found that Sarvis was not a policy maker because, among other reasons, Sarvis "is not the head of an agency, and he must report through layers of management to reach the chief of police—the agency head for the police department." 2014 WL 3051021, at *5.

9

The implication of the Court's decision is that if the Chief had been the person who had made the decision regarding Allen-Brown then there could be municipal liability because the Chief is the Agency Head and has final policymaking authority for personnel matters for the District of Columbia as those matters pertain to the MPD.  The Court did not imply that the Agency Head's policy making authority would also have to apply to agencies for which he had no responsibility, but that is the illogical position that the District takes in its reply brief.

In the present matter, the police chief <u>did</u> make the relevant decisions at issue pursuant to his personnel authority over the MPD.  It should come as no surprise to the District that it might be held liable for the Chief's unconstitutional actions because the Chief was "responsible for establishing final government policy respecting such activity" or with respect to "the subject matter in question."  <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 482-83, 106 S. Ct. 1292, 1299-300, 89 L. Ed. 2d 452 (1986).  In other words, "particular officers may have authority to establish binding county policy respecting particular matters." 475 U.S. at 483.

In sum, Plaintiff requests that the Court consider the <u>Allen-Brown</u> case with regard to the final policymaker issue.

Respectfully submitted this the 3rd day of November, 2014.

_____/S/_____
Michael G. Kane, Bar No. 435288
CASHDAN & KANE, PLLC
1150 Connecticut Avenue, N.W.
Suite 900
Washington, D.C. 20036-4129
Tel. (202) 862-4330
Fax. (202) 862-4331

10

*Counsel for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that the attached notice of supplemental authority was served on counsel of record for the defendants via ECF.  /s/ Michael Kane