UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
                                                                    )
CHRISTOPHER SANDERS,                         )
                                                                    )
                   Plaintiff,                                  )
                                                                    )
             v.                                                  )           Civil Action No. 06-1411 (PLF)
                                                                    )
DISTRICT OF COLUMBIA, et al.,                )
                                                                    )
                   Defendants.                            )
———————————————————————— )


OPINION

            Plaintiff Christopher Sanders, a former Sergeant in the Metropolitan Police

Department, accuses the Department and various police officials of violating his First

Amendment and procedural due process rights.  Both Sanders and the defendants have now

moved for summary judgment.  On March 31, 2015, after careful consideration of the parties'

papers, attached exhibits, relevant legal authorities, and the entire record in this case, the Court

granted judgment to the defendants on one portion of Count I, dismissed Count II without

prejudice for failure to exhaust administrative remedies, and denied as moot plaintiff's motion

for summary judgment.  This Opinion explains the reasoning underlying that March 31, 2015

Order.[1]

———————————————

        [1]        The papers reviewed in connection with these motions include the following:
plaintiff's original complaint ("Compl.") [Dkt. No. 1]; plaintiff's second amended complaint
("Second Am. Compl.") [Dkt. No. 87]; defendants' answer to plaintiff's second amended
complaint ("Answer") [Dkt. No. 93]; defendants' motion for summary judgment on counts one
and two ("Def. Mot.") [Dkt. No. 95]; defendants' statement of material facts not in dispute in
support of their motion for summary judgment ("Def. Stmt. Mat. Facts") [Dkt. No. 95-1];
plaintiff's motion for summary judgment on count two ("Pl. Mot.") [Dkt. No. 96]; plaintiff's
statement of material facts not in dispute in support of his motion for summary judgment ("Pl.

## I.  BACKGROUND

The story of this case spans almost two decades.[2]  Plaintiff Christopher Sanders

joined the Metropolitan Police Department ("MPD") in 1990 and served until September or

October of 2002.  Def. Stmt. Mat. Facts ¶ 5; Second Am. Compl. ¶ 7.  In 1996, the MPD selected

him to serve as a supervisor in the Special Emphasis Unit, a unit within the Narcotics and Special

Investigations Division.  Pl. Mot. Ex. 1 ¶¶ 2-3.  There, plaintiff noticed a pattern of certain

employees abusing time and attendance policies.  Id. ¶ 4.  Plaintiff reported the abuses to his

superiors and testified before the District of Columbia Council; his testimony was covered in the

local media.  Id.; see also Def. Mot. Ex. 1 (transcript of plaintiff's testimony before the D.C.

Council).

Shortly after giving his testimony, plaintiff filed suit in this Court, alleging that

the MPD and various police officials retaliated against him in violation of his First Amendment

rights.  See Complaint, Sanders v. Dist. of Columbia, Civil Action No. 97-2938 (PLF)

---

Stmt. Mat. Facts") [Dkt. No. 96-2]; plaintiff's opposition to defendants' motion for summary
judgment ("Pl. Opp.") [Dkt. No. 102]; plaintiff's response to defendants' statement of material
facts not in dispute ("Pl. Resp. Mat. Facts") [Dkt. No. 102-1]; defendants' opposition to
plaintiff's motion for summary judgment ("Def. Opp.") [Dkt. No. 105]; defendants' response to
plaintiff's statement of material facts not in dispute ("Def. Resp. Mat. Facts") [Dkt. No. 105-1];
plaintiff's reply in support of his motion for summary judgment ("Pl. Reply") [Dkt. No. 113];
defendants' reply in support of their motion for summary judgment ("Def. Reply") [Dkt. No.
115]; defendants' supplemental memorandum ("Def. Supp.") [Dkt. No. 121]; plaintiff's
supplemental memorandum ("Pl. Supp.") [Dkt. No. 122]; plaintiff's notice of supplemental
authority ("Pl. Notice") [Dkt. No. 125]; and defendants' response to plaintiff's notice of
supplemental authority ("Def. Resp. Notice") [Dkt. No. 128].

[2]    The lengthy history of this case also has been set forth in several previous
opinions.  See Sanders v. Dist. of Columbia, 522 F. Supp. 2d 83 (D.D.C. 2007) ("Nov. 2007 Am.
Op.") [Dkt. No. 15]; Sanders v. Dist. of Columbia, 601 F. Supp. 2d 97 (D.D.C. 2009) ("Feb.
2009 Op.") [Dkt. No. 70]; Sanders v. Dist. of Columbia, Civil Action No. 06-1411,
Memorandum Opinion and Order (Mar. 19, 2009) ("Mar. 2009 Op.") [Dkt. No. 73]; Sanders v.
Dist. of Columbia, Civil Action No. 06-1411, Memorandum Opinion and Order (Dec. 15, 2009)
("Dec. 2009 Op.") [Dkt. No. 86].

[Dkt. No. 1].  The parties eventually reached an agreement settling all claims, which was signed by all the parties, including, on September 3, 2002, counsel for the District of Columbia.  Pl. Mot. Ex. 3 (settlement agreement); see also Def. Stmt. Mat. Facts ¶ 2.  Under the terms of that agreement, plaintiff received a lump sum payment and the MPD was required to promote him to Lieutenant.  Pl. Mot. Ex. 3; see also Second Am. Compl. ¶ 15.

       In January of 2002, before the suit was settled, plaintiff took extended leave, with the approval of his supervisor, defendant Jeffrey Herold, to care for his mother in Florida.  Pl. Mot. Ex. 1 ¶¶ 15-17 (Sanders' Declaration); Def. Stmt. Mat. Facts ¶ 38.  Plaintiff returned in August of 2002.  Pl. Mot. Ex. 1 ¶ 18.

       On September 5, 2002, defendant Herold reported to his supervisor, defendant Cathy Lanier, that plaintiff had been Absent Without Leave ("AWOL") because he had failed to report for duty the prior week despite allegedly stating that he would.  Def. Mot. Ex. 6 at 3 (Herold deposition transcript).  Later that same day, plaintiff met with defendants Herold and Lanier to discuss either taking a leave of absence or resigning in order to pursue a Masters of Business Administration degree at Marymount University.  Pl. Stmt. Mat. Facts ¶¶ 4-6. Defendants Lanier and Herold did not inform plaintiff that he had been reported AWOL.  Pl. Mot. Ex. 5 at 31-32 (Herold deposition transcript); Ex. 7 at 47-48 (Lanier deposition transcript); Ex. 1 ¶ 22 (Sanders' Declaration) ("At no time was I made aware that I was under investigation for misconduct.").[3]  At that meeting, plaintiff claims that defendant Lanier stated that "if

---

      [3]      At some point between September 5, 2002 and June 18, 2003, defendant Herold initiated a disciplinary investigation regarding plaintiff being reported as AWOL.  It is unclear, however, exactly when that occurred — defendant Lanier testified that the investigation was initiated on the same day the AWOL report was made, while defendant Herold testified that he did not open the investigation until months later.  See Pl. Mot. Ex. 7 at 28-29 (Lanier deposition transcript) ("There's an immediate investigation to locate that employee.  So the investigation is automatic . . . .  I became aware by him telling me he was doing an AWOL investigation to try and locate [plaintiff]."); Pl. Mot. Ex. 5 at 37 (Herold deposition trancript) ("Sometime after

[plaintiff] resigned, [he] was always free to come back to the MPD within one year."  Pl. Mot. Ex. 1 ¶ 21.

Later that day, plaintiff submitted a letter requesting permission to resign from the MPD.  Pl. Mot. Ex. 1 ¶¶ 23-25; Def. Stmt. Mat. Facts ¶ 9.  Although resignation requests generally require thirty days' notice, plaintiff requested that such period be waived.  Def. Stmt. Mat. Facts ¶ 9.  Plaintiff received no response to his resignation request.  Pl. Stmt. Mat. Facts ¶ 15.  Twenty-five days later, however, plaintiff submitted a second letter seeking to rescind his prior resignation request.  Def. Stmt Mat. Facts ¶ 12.  Plaintiff again received no response.  Pl. Stmt. Mat. Facts ¶ 21.  He also did not receive or complete any of the administrative forms normally required to separate from the MPD.  Id. ¶¶ 54-55.  Plaintiff continued on MPD's payroll, receiving sick leave pay, until October 19, 2002.  Id. ¶¶ 23-24.

Between November 2002 and June 2003, plaintiff and his attorney sent numerous communications to then Chief of Police, defendant Charles Ramsey, and to a D.C. Assistant Corporation Counsel, Thomas Foltz, requesting that plaintiff's separation be halted or, in the alternative, that plaintiff be reinstated.  Pl. Stmt. Mat. Facts ¶¶ 26-36.  At some point during this period, defendant Alfred Broadbent ordered defendant Herold to complete plaintiff's disciplinary investigation.  Def. Stmt. Mat. Facts ¶ 53; Def. Mot. at 12.  Defendant Herold completed the investigation and concluded that plaintiff had been AWOL and had made a false statement.  Def. Mot. Ex. 6 (disciplinary investigation report).  Defendant Herold's report was forwarded to

---

September, and I don't recall the date.  I was contacted and asked to conduct an investigation as to Sanders' whereabouts during . . . the time that he was utilizing the Family and Medical Leave."); id. at 40 ("Q: So, is it fair to say that you opened the investigation about a month or two before June 18th, '03?  A: That would be accurate — not remembering the date, it would have been prior to the signing of the [disciplinary report on June 18, 2003]."); see also Def. Mot. at 12 ("At some point after September 5, 2002, but before June 18, 2003, Defendant Chief Broadbent ordered that Capt. Herold complete the investigation into whether plaintiff was AWOL.").

defendant Ramsey who then sent a letter to plaintiff on August 15, 2003, denying plaintiff's request for reinstatement.  Pl. Stmt. Mat. Facts ¶¶ 38, 48; Pl. Mot. Ex. 24 at 107-08 (Ramsey deposition transcript).

In late 2005 or early 2006, plaintiff received a package from an anonymous source containing (1) documents pertaining to the 2003 disciplinary investigation and (2) a copy of plaintiff's initial resignation letter bearing the initials of various MPD officials and appearing to show that plaintiff's request to resign had been approved on September 6, 2002.  Pl. Mot. Ex. 1 ¶ 27; Def. Mot. Ex. 7.  Plaintiff then filed this suit under 42 U.S.C. § 1983 against the MPD, former Chief of Police Ramsey, Captain Herold, and John Doe, alleging violations of his First Amendment and due process rights.  Compl. ¶¶ 1-7.  The Court later granted plaintiff leave to amend the complaint and replace defendant John Doe with now Chief of Police Cathy Lanier and former Assistant Chief Alfred Broadbent.  Feb. 2009 Op. at 2-4.

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see FED. R. CIV. P. 56(a), (c). In making that determination, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.  Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014) (per curiam); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255; Talavera v. Shah, 638 F.3d 303, 308 (D.C. Cir. 2011).

A disputed fact is "material" if it "might affect the outcome of the suit under the governing law."  Talavera v. Shah, 638 F.3d at 308 (quoting Anderson v. Liberty Lobby, Inc.,

477 U.S. at 248).  A dispute over a material fact is "genuine" if it could lead a reasonable jury to

return a verdict in favor of the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007);

Paige v. DEA, 665 F.3d 1355, 1358 (D.C. Cir. 2012).  "[T]he moving party is entitled to

judgment as a matter of law if the nonmoving party 'fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial.'"  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  "Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge at summary judgment.  Thus, [the court] do[es] not determine the

truth of the matter, but instead decide[s] only whether there is a genuine issue for trial."  Barnett

v. PA Consulting Group, Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (quoting Pardo-Kronemann v.

Donovan, 601 F.3d 599, 604 (D.C. Cir. 2010)); see also Tolan v. Cotton, 134 S. Ct. at 1866;

Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

### III.  PRELIMINARY ISSUES

Plaintiff brings two claims.  He alleges that defendants violated (1) his First

Amendment rights by retaliating against him and (2) his procedural due process rights by

terminating and refusing to reinstate him without providing notice or the opportunity to be heard.

Before proceeding to the merits of plaintiff's claims, however, the Court must address two

threshold issues raised by defendants.  First, defendants argue that plaintiff has failed to establish

the municipal liability of the District of Columbia, necessitating its dismissal as a defendant.

Second, defendants argue that plaintiff's claims against two of the individual defendants are barred by the statute of limitations.[4]

### A. Municipal Liability

Plaintiff asserts municipal liability under the theory enunciated in Pembaur v. City of Cincinnati, that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." 475 U.S. 469, 480 (1986) (plurality opinion); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988) ("[A]n unconstitutional governmental policy [can] be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business.").[5] Plaintiff contends that Chief Ramsey was the "municipal policymaker" as to the Metropolitan Police Department. The Court agrees. D.C. municipal regulations clearly establish that the Mayor has delegated policymaking authority regarding employment matters for the police department to the Chief of Police. 6-A D.C.M.R. § 800.7 ("Subject to applicable laws, rules, regulations, and orders of the Mayor or directives pursuant to orders of the Mayor, the Chief of Police shall have full power and authority over the department and all functions, resources, officials, and personnel assigned

---

[4]    Defendants also argue that defendants Ramsey, Herold, Lanier, and Broadbent are entitled to qualified immunity, an argument that this Court rejected at the motion to dismiss stage. See Nov. 2007 Am. Op. at 6-12. Defendants claim that "the circumstances of th[e] case have changed" because discovery has closed but fail to identify issues or facts that the Court did not consider in its prior ruling. Def. Reply at 31. The Court therefore declines to revisit the issue.

[5]    Plaintiff also asserts liability on the theory that the Metropolitan Police Department had an unconstitutional policy or custom of denying due process to resigning employees. See Pl. Mot. at 45. But this Court previously dismissed plaintiff's claim under this theory of liability, Nov. 2007 Am. Op. at 6, and plaintiff abandoned it in his motion for reconsideration. See Mar. 2009 Op. at 5. Plaintiff may not resurrect this theory of liability years after abandoning it.

thereto."); <u>see also</u> 6-A D.C.M.R. § 800.1 (describing the Chief of Police as "the chief executive officer of the Metropolitan Police Department"); 6-A D.C.M.R. § 800.16 ("The Chief of Police shall have the authority to plan and prescribe departmental policy within the limits of overall policy enunciated by the Mayor and the Council . . . ."). The District has conceded as much in prior litigation. <u>See</u> Def. Mot. to Dismiss at 9, <u>Hoey v. Dist. of Columbia</u>, Civil Action No. 07-0919 (JDB) (D.D.C. Oct. 11, 2007) ("The Mayor delegated personnel and decisionmaking authority to the Chief of Police.").

　　　　Notwithstanding this concession, the District has taken the untenable position that plaintiff cannot establish municipal liability because Chief Ramsey was not the final policymaker on employment matters "*for the entire District of Columbia government*." Def. Mot. at 46; Def. Opp. at 14 (emphasis in original). Under the District's reasoning, a municipality may defeat liability in every instance simply by dividing up policymaking authority among various entities. Def. Mot. at 45-46.[6] Case law uniformly indicates the opposite — an official need only be the final policymaker as to a subject matter for a particular department or agency. <u>See</u>, <u>e.g.</u>, <u>Dave v. Dist. of Columbia Metro. Police Dep't</u>, 905 F. Supp. 2d 1, 12 (D.D.C. 2012) (Chief of Police was final policymaker sufficient for liability regarding employment matters); <u>Barnes v. Dist. of Columbia</u>, 793 F. Supp. 2d 260, 290-91 (D.D.C. 2011) (Department of Corrections Director was final policymaker sufficient for liability regarding strip search policy); <u>Banks v. Dist. of Columbia</u>, 377 F. Supp. 2d 85, 91 (D.D.C. 2005) (Department of Health Director was final policymaker sufficient for liability regarding employment matters).

---

[6]　　　　The Supreme Court has cautioned against this result, stating that "[i]f . . . a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose." <u>City of St. Louis v. Praprotnik</u>, 485 U.S. at 126-27.

*B.  Statute of Limitations*

Section 1983 claims, such as plaintiff's First Amendment and procedural due process claims, are subject to the District of Columbia's residual statute of limitations period of three years.  D.C. CODE § 12-301(8); see Carney v. American Univ., 151 F.3d 1090, 1096 (D.C. Cir. 1998).  Defendants argue that plaintiff "clearly had sufficient notice of the alleged misconduct" by Chief Lanier and former Assistant Chief Broadbent "[o]n or before August 15, 2003, the date that Chief Ramsey denied his request for reinstatement."  Def. Mot. at 57-58.  Therefore, according to defendants, plaintiff's claims against Lanier and Broadbent are barred under the statute of limitations because plaintiff did not amend his complaint to add them as defendants until 2008.

The statute of limitations, however, only "starts ticking when the plaintiff has sufficient 'notice of the conduct . . . which is now asserted as the basis for [his] lawsuit.'"  Curtis v. Lanier, 535 F. Supp. 2d 89, 95 (D.D.C. 2008) (quoting Hall v. Clinton, 285 F.3d 74, 82 (D.C. Cir. 2002)).  Plaintiff asserts that he did not discover the basis for his suit against Chief Lanier and Assistant Chief Broadbent until an anonymous package containing relevant documents arrived in late 2005 or early 2006.  Pl. Opp. Ex. 1 ¶ 27 (Sanders Declaration); see also Feb. 2009 Op. at 3 ("Defendants' statute of limitations argument depends on disputed factual questions of when plaintiff knew, or should have known, of the alleged unconstitutional acts by Chief Lanier and Assistant Chief Broadbent.").  Because a jury could find that plaintiff did not have sufficient notice of the basis for his claims against Chief Lanier and former Assistant Chief Broadbent until late 2005 or early 2006, the statute of limitations does not entitle defendants to judgment as a matter of law.

## IV.  FIRST AMENDMENT CLAIM

Public employees do not "relinquish the First Amendment rights they would otherwise enjoy as citizens."  Navab-Safavi v. Glassman, 637 F.3d 311, 315 (D.C. Cir. 2011). Courts, however, must "balance[] the interest of the [public employee], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  Lane v. Franks, 134 S. Ct. 2369, 2377 (2014) (citing Pickering v. Bd. of Ed. of Township High School Dist. 205, 391 U.S. 563, 568 (1968)).  In light of that balance, public employees must satisfy a four factor test to establish a First Amendment retaliation claim:

> First, the public employee must have spoken as a citizen on a matter of public concern.  Second, the court must consider whether the governmental interest in promoting the efficiency of the public services it performs through its employees outweighs the employee's interest, as a citizen, in commenting upon matters of public concern.  Third, the employee must show that [his] speech was a substantial or motivating factor in prompting the retaliatory or punitive act.  Finally, the employee must refute the government employer's showing, if made, that it would have reached the same decision in the absence of the protected speech.

Bowie v. Maddox, 642 F.3d 1122, 1133 (D.C. Cir. 2011).  "The first two factors . . . are questions of law for the court to resolve, while the latter are questions of fact ordinarily for the jury."  Tao v. Freeh, 27 F.3d 635, 639 (D.C. Cir. 1994).  Defendants argue that plaintiff cannot meet the first factor as a matter of law and has failed to present evidence establishing the third and fourth factors.  Each argument is addressed in turn.[7]

---

[7]     Defendants do not argue that the District's interests outweighed plaintiff's interests in commenting upon matters of public concern.  The Court therefore does not address the second factor.

### A. Did Plaintiff Speak as a Citizen on a Matter of Public Concern?

Plaintiff alleges two distinct instances of protected speech: (1) his 1997 testimony before the D.C. Council regarding the alleged time and attendance abuses; and (2) his 1997 lawsuit alleging that the MPD and various police officials retaliated against him. See Second Am. Compl. ¶¶ 47-59.   The latter survives summary judgment; the former does not.

### 1.  Testimony Before the D.C. Council

Defendants acknowledge that plaintiff's testimony before the D.C. Council related to a matter of public concern.  But they argue that the statements he gave before the Council were made "pursuant to his official duties" — not as a citizen — and thus are not protected by the First Amendment.  Def. Mot. at 23-26.  The Court concludes that defendants are correct, but for the wrong reason.

The Supreme Court held in Garcetti v. Ceballos, 547 U.S. 410, 421 (2006), that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes."  Defendants interpret that holding to mean that all speech "that owes its existence to a public employee's professional responsibility" is unprotected.  Def. Reply at 4; see also Def. Supp. at 10-12.  That interpretation is clearly wrong — a public employee's speech does not lose First Amendment protection simply because its content relates to official duties.  See Winder v. Erste, 566 F.3d 209, 213 (D.C. Cir. 2009) ("Speech can be covered by the First Amendment even if it is related to one's job function."); see also Freitag v. Ayers, 468 F.3d 528, 545 (9th Cir. 2006) (a public employee does not "lose her right to speak as a citizen simply because she initiated the communications while at work or

because they concerned the subject matter of her employment").[8]  Instead, as the Supreme Court recently clarified in Lane v. Franks, the critical question is not whether the speech "simply relates to public employment or concerns information learned in the course of public employment," but rather "whether the speech at issue is itself ordinarily within the scope of an employee's duties." Lane v. Franks, 134 S. Ct. at 2379.  If it is, then it is not protected speech.

Testifying before the D.C. Council about the abuse of time and attendance policies by certain MPD officers and the resulting loss of taxpayer money was not "ordinarily within the scope of [Sanders'] duties" as a police officer.  While it "relate[d] to his public employment [and] concern[ed] information learned during that employment," Lane v. Franks, 134 S. Ct. at 2378, it would seem to be "speech as a citizen for First Amendment purposes." Id. But there are two D.C. Circuit precedents that seem to draw that otherwise apparent conclusion into question — one pre-Lane and the other post-Lane:  Winder v. Erste, 566 F.3d 209 (D.C. Cir. 2009), which applied Garcetti, and Mpoy v. Rhee, 758 F.3d 285 (D.C. Cir. 2014).  While one is tempted to say that Winder is no longer good law, that is not so easy in view of the following dicta in Mpoy:

> [I]t is possible that Winder's broad language, interpreting Garcetti as leaving an employee unprotected when he reports conduct that "interferes with his job responsibilities," could be in tension with Lane's holding that an employee's speech is unprotected only when it is within the scope of the employee's "ordinary job responsibilities" or "ordinary job duties."  In particular, the use of the adjective "ordinary" — which the court [in Lane] repeated nine times — could signal a narrowing of the realm of employee speech left unprotected by Garcetti.  Neither Garcetti nor any other previous Supreme Court case had added "ordinary" as a qualifier.  But we need not address that question today.

---

[8]      The Court notes that defendants' proposed interpretation also would eviscerate the role of the First Amendment in protecting public employees who act as whistleblowers.

Mpoy v. Rhee, 758 F.3d at 294-95 (citations omitted).  The Circuit left the question unresolved,

noting that "Lane does not directly or necessarily contradict Winder's application of Garcetti."

Id. at 294.  Winder thus apparently remains binding, albeit tenuous, precedent.  See also Martin

v. Dist. of Columbia, Civil Action No. 11-1069 (RC), 2015 WL 294723, at *32-34 (D.D.C. Jan.

23, 2015).

   Plaintiff testified before the D.C. Council that his duties included ensuring that his

subordinates accurately reported their time.  Def. Mot. Ex. 1 at 13-14 ("It was part of our

responsibility to ensure that accurate time records of our subordinates were maintained according

to Departmental Regulations.").  By blowing the whistle about his subordinates' time and

attendance abuses, plaintiff was "fulfilling his undisputed duty" to ensure accurate time records

and "report[ing] conduct that interfere[d] with his job responsibilities."  Winder v. Erste, 566

F.3d at 215.  Under Winder and Mpoy, plaintiff's testimony therefore was unprotected by the

First Amendment.  See Martin v. Dist. of Columbia, 2015 WL 294723, at *34 ("[A]ny speech

that furthers [a public employee's] 'ordinary' duties by attempting to eliminate interference [with

those duties] would fall within the scope of those duties and thus also be unprotected.") (citing

Winder v. Erste, 566 F.3d at 214-15).  The Court will grant defendants' motion for summary

judgment as to plaintiff's First Amendment retaliation claim regarding his testimony before the

D.C. Council.

### 2.  Prior Lawsuit

   Plaintiff alternatively maintains that he engaged in protected speech by filing and

participating in his 1997 lawsuit.  Second Am. Compl. ¶¶ 1, 48, 51, 53, 55.  A lawsuit filed by a

public employee constitutes speech protected under the First Amendment if it "address[es] a

matter of public concern."  Pearson v. Dist. of Columbia, 644 F. Supp. 2d 23, 44 (D.D.C. 2009);

see also Bridges v. Kelly, 977 F. Supp. 503, 507-08 (D.D.C. 1997) ("While this circuit has not yet addressed the nature and contours of this protected interest, other circuits have, for the most part, come to the conclusion that the government may not dismiss an employee for filing a lawsuit so long as that lawsuit implicates a matter of public concern.").  Speech is a matter of public concern when it "concerns issues about which information is needed or appropriate to enable members of society to make informed decisions about the operation of their government." LeFande v. Dist. of Columbia, 613 F.3d 1155, 1159 (D.C. Cir. 2010) (quoting Hall v. Ford, 856 F.2d 255, 259 (D.C. Cir. 1988)).

        Although plaintiff's prior lawsuit involved personnel disputes, which are not ordinarily considered a matter of public concern, see, e.g., Connick v. Myers, 461 U.S. 138, 147-48 (1983), the suit's subject matter was the District's alleged mistreatment of whistleblowers, as well as fraud and corruption within the MPD.  Such matters clearly are those "in which the public might be interested" and that relate to "the public's evaluation of the performance of governmental agencies."  LeFande v. Dist. of Columbia, 613 F.3d at 1159, 1162. For that reason, Judge Harris held that plaintiff's speech at issue in the 1997 lawsuit related to a matter of public concern.  Sanders v. Dist. of Columbia, 16 F. Supp. 2d 10, 13 (D.D.C. 1998). The same reasoning applies here, and the filing by plaintiff of his prior lawsuit thus constituted protected speech.

        *B.  Was Plaintiff's Lawsuit a Motivating Factor in Prompting Retaliatory Actions?*

        Plaintiff must next show that the filing of his lawsuit in 1997 was a substantial or motivating factor in prompting defendants' retaliatory action.  This is normally a question of fact for the jury, but in this case defendants seek summary judgment.  To defeat a motion for summary judgment on a First Amendment retaliation claim, a plaintiff must present evidence

showing a causal link between the employee's protected speech and the retaliatory acts taken by the employer.  See Alexis v. Dist. of Columbia, 44 F. Supp. 2d 331, 347 (D.D.C. 1999).  A plaintiff, however, "need not present direct evidence . . . to meet his burden."  Clark v. Library of Congress, 750 F.2d 89, 101 (D.C. Cir. 1984); see also Alexis v. Dist. of Columbia, 44 F. Supp. 2d at 347 ("To establish a causal link, the plaintiff is free to rely on circumstantial evidence of retaliation.").

Plaintiff identifies three different acts allegedly taken by defendants in retaliation for his protected speech: (1) the denial of Sanders' requests to rescind his resignation and be reinstated; (2) the initiation and completion of defendants' disciplinary investigation; and (3) defendants' allegedly false and defamatory statements about plaintiff during that investigation.  Second Am. Compl. ¶¶ 49, 51, 53, 55, 57.  All three clearly may constitute retaliatory acts in violation of the First Amendment.  See, e.g., Rutan v. Repub. Party of Ill., 497 U.S. 62, 76 n.8 (1990) (holding that the First Amendment protects public employees from "even an act of retaliation as trivial as failing to hold a birthday party for [the] employee . . . when intended to punish her for exercising her free speech rights"); Smith v. Fruin, 28 F.3d 646, 649 n.3 (7th Cir. 1994) ("[E]ven minor forms of retaliation can support a First Amendment claim, for they may have just as much of a chilling effect on speech as more drastic measures.").

Defendants argue that there is no evidence in the record that establishes the requisite causal connection between plaintiff's 1997 lawsuit and any of these allegedly retaliatory acts.  Def. Mot. at 27.[9]  The Court disagrees — there is ample evidence in the record from which a jury could conclude that plaintiff's protected speech was a substantial or

---

[9]     Defendants also argue that because plaintiff voluntarily resigned, he cannot make out a claim of retaliation.  Def. Mot. at 16.  But plaintiff has never argued that his resignation constituted an act of retaliation or forms the basis for his claim.

motivating factor in prompting one or more of these retaliatory acts.  Specifically, there is direct

and circumstantial evidence that: (1) defendants had knowledge of plaintiff's prior lawsuit;

(2) the retaliatory acts occurred shortly after the parties' settlement of the suit; and

(3) defendants' conduct regarding plaintiff's separation and disciplinary investigation was

unusual.  While none of these alone might be sufficient to satisfy plaintiff's burden, the Court

concludes that, taken together, a jury reasonably could find that plaintiff's protected speech was

a substantial or motivating factor in causing the allegedly retaliatory acts.

First, plaintiff has presented direct evidence that defendants knew of plaintiff's

prior lawsuit — defendants Ramsey and Broadbent testified that they were aware of the suit, and

defendant Herold stated that he knew of "a whistle blower thing."  Pl. Opp. Ex. 26 at 18; Ex. 28

at 26; Ex. 6 at 61.  Defendant Lanier likewise could be found to have had knowledge because she

allegedly referred plaintiff to counsel for assistance with the lawsuit.  Pl. Opp. Ex. 1 at 8.

Defendants' assertion that "there is no evidence that the individuals engaged in the allegedly

retaliatory acts had any knowledge of plaintiff's prior speech," Def. Mot. at 27, therefore is

plainly wrong.

Second, the close temporal proximity between the protected speech and

defendants' allegedly retaliatory acts provides additional circumstantial support to defeat

summary judgment.  See Jones v. Bernanke, 557 F.3d 670, 679 (D.C. Cir. 2009) (in Title VII

retaliation context, summary judgment was defeated by pointing to agency's knowledge and a

one month lapse between the protected activity and the adverse action; temporal proximity

supports inference of retaliatory motive); Cones v. Shalala, 199 F.3d 512, 521 (D.C. Cir. 2000)

("the close temporal proximity" of discrimination complaint to adverse action may be sufficient

to establish "causal connection" required for retaliation claim).  Plaintiff submitted his request to

resign two days after the agreement settling the prior lawsuit was signed by the District.  Pl. Mot. Ex. 3; Ex. 1 ¶¶ 23-25.  And his request to rescind that resignation was submitted less than four weeks later.  Def. Stmt. Mat. Facts ¶ 12.  Defendants allegedly circulated that request internally and recommended denying it within two weeks, allowing the separation process to push forward towards plaintiff's removal from the payroll in October of 2002.  Pl. Mot. Ex. 13 (initialed version of plaintiff's request to rescind); see supra at 4.  Thus, although defendants did not formally communicate their denial of plaintiff's request for reinstatement until eleven months later, a reasonable jury could find that defendants' act of denying plaintiff's requests began within six weeks of the protected activity — when defendants effectively denied plaintiff's requests by internally recommending denial, failing to respond to plaintiff's repeated communications, and continuing the separation process.  See Moses v. Howard Univ. Hosp., 474 F. Supp. 2d 117, 125 (D.D.C. 2007) ("Courts generally have accepted time periods of between a few days and a few months between the protected activity and the adverse action, but have seldom allowed periods of more than a year to create the inference of a causal connection."); McIntyre v. Peters, 460 F. Supp. 2d 125, 133 (D.D.C. 2006) ("This Court has often followed a three-month rule to establish causation on the basis of temporal proximity alone.").

As to the disciplinary investigation and allegedly defamatory statements made in connection with that investigation, defendant Herold reported plaintiff as AWOL two days after the agreement settling the 1997 lawsuit was signed by the District.  See supra at 3.  Although it is unclear whether defendant Herold immediately opened the disciplinary investigation or did so months later, see supra at 3 n.3, that is a question of fact for the jury.  A reasonable jury could conclude that Herold's investigation was sufficiently close in time to the settlement of the lawsuit to support an inference that there was a causal connection.  See Singletary v. Dist. of

17

Columbia, 351 F.3d 519, 525 (D.C. Cir. 2003) ("Whether such proximity was enough in this case is . . . a question for the finder of fact . . . .").

Finally, there is evidence that indicates that defendants' conduct regarding plaintiff's separation and disciplinary investigation was abnormal.  For example, defendants' Rule 30(b)(6) deponent testified that, absent a pending adverse action, an officer who had resigned was always allowed to rescind his or her resignation.  Pl. Opp. Ex. 11 at 54.  Despite defendants' insistence that plaintiff's resignation was effective immediately, defendants' own records indicate that plaintiff remained on the payroll until October 19, 2002.  Pl. Opp. Ex. 14. And defendants' Rule 30(b)(6) deponent also testified that plaintiff's separation process was "unusual" and "outside the procedures."  Pl. Mot. Ex. 11 at 22-23.

The circumstances surrounding the disciplinary investigation also set off warning bells.  The investigation ostensibly focused on plaintiff's absence on August 28, 29, 30, and 31, 2002.  See Def. Mot. Ex. 6 (investigation report).  But the relevant time sheets indicate that plaintiff was placed on approved sick leave on those dates.  Id.  Moreover, defendants did not actively pursue that investigation until months later, after repeated communications from plaintiff requesting reinstatement, and they failed to inform plaintiff that he was reported as AWOL despite meeting with him on the same day.  See supra at 3.  These circumstances, in combination with defendants' knowledge and the temporal proximity of the protected speech to the retaliatory acts, satisfy plaintiff's burden to demonstrate a genuine issue of material fact with respect to causation.

### C.  Have Defendants Shown that They Would Have Reached the Same Decision?

Once a plaintiff has met his initial burden of showing that he engaged in constitutionally protected speech, and that this speech was a "substantial" or "motivating" factor,

the burden shifts to the defendants to show, by a preponderance of the evidence, that they would

have taken the same actions "even in the absence of the protected conduct."  O'Donnell v. Barry,

148 F.3d 1126, 1133 (D.C. Cir. 1998) (quoting Mt. Healthy City Sch. Dist. Bd. Of Educ. v.

Doyle, 429 U.S. 274, 287 (1977)); see also Williams v. Johnson, 701 F. Supp. 2d 1, 18 (D.D.C.

2010).  This factor is a "question of fact ordinarily for the jury," Tao v. Freeh, 27 F.3d at 639,

because "[w]ithout a searching inquiry into [defendants'] motives, those intent on punishing the

exercise of constitutional rights could easily mask their behavior behind a complex web of *post*

*hoc* rationalizations."  Peacock v. Duval, 694 F.2d 644, 646 (9th Cir. 1982).

Defendants claim that they would have reached the same decisions due to

plaintiff's (1) disciplinary investigation; (2) allegedly unauthorized work in Florida while caring

for his mother; and (3) his failure to return police equipment.  Defendants' *post hoc* rationales,

however, are undermined by the record evidence.  For example, defendant Herold attempted to

talk plaintiff out of resigning and testified that plaintiff's typical punishment for being AWOL

would have been a "five to ten" day suspension, not termination.  Pl. Opp. Ex. 6 at 73-74.

Defendants also have failed to offer any evidence that plaintiff's unauthorized work or his failure

to return equipment was or would have been considered at the time of the retaliatory acts.

Defendants therefore have failed to carry their burden.

## V.  PROCEDURAL DUE PROCESS CLAIM

Despite failing to raise the argument at the motion to dismiss stage, defendants

now argue that plaintiff's procedural due process claim must be dismissed because he has failed

to exhaust his administrative remedies through the Comprehensive Merit Personnel Act

("CMPA"), D.C. CODE § 1-601, et seq.  Def. Mot. at 39-43.  It is undisputed that plaintiff did not

pursue his administrative remedies.  Pl. Opp. at 44-45.  Plaintiff argues, however, that pursuit of

such remedies would have been futile, and he therefore should be excused from the exhaustion requirement. Id. Because plaintiff has failed to make a showing of futility, however, the failure to exhaust his administrative remedies under the CMPA deprives the Court of subject matter jurisdiction. It therefore reluctantly must dismiss plaintiff's procedural due process claim without prejudice. Plaintiff's cross motion for summary judgment is denied as moot.

Under the CMPA, employees must exhaust their available administrative remedies before filing suit in the District of Columbia Superior Court, and failure to exhaust such remedies deprives the court of subject matter jurisdiction. See Robinson v. Dist. of Columbia, 748 A.2d 409, 411 n.4 (D.C. 2000) ("The [CMPA] is jurisdictional and provides the exclusive remedy for almost all [work-related] claims against public employers, with an opportunity to appeal to the Superior Court."); see also Johnson v. Dist. of Columbia, 552 F.3d 806, 810 n.2 (D.C. Cir. 2008) ("The [CMPA] exhaustion doctrine is jurisdictional as applied by the D.C. Court of Appeals."). Although the D.C. Circuit has yet to resolve the question whether the exhaustion requirement of the CMPA is jurisdictional or prudential, see Johnson v. Dist. of Columbia, 552 F.3d at 810 n.2, it nearly uniformly has been considered jurisdictional by judges of this Court. See, e.g., Owens v. Dist. of Columbia, 923 F. Supp. 2d 241, 254 (D.D.C. 2013); Saint-Jean v. Dist. of Columbia, 846 F. Supp. 2d 247, 264-65 (D.D.C. 2012); but see Mpoy v. Fenty, 870 F. Supp. 2d 173, 178-79 (D.D.C. 2012). This Court therefore concludes that the CMPA's exhaustion requirement implicates subject matter jurisdiction.[10]

---

[10]     Because the exhaustion requirement is jurisdictional, defendants did not waive the defense by failing to raise it earlier in the litigation. NetworkIP, LLC v. FCC, 548 F.3d 116, 120 (D.C. Cir. 2008) ("It is axiomatic that subject matter jurisdiction may not be waived, and that courts may raise the issue *sua sponte*.").

Plaintiff does not dispute the fact that he failed to file an appeal with either the

Office of Employee Appeals or the Public Employee Relations Board.  Pl. Opp. at 44-45.  He

argues, however, that any appeal would have been futile because neither has jurisdiction to hear

his claims.  Id.  But plaintiff "is still required to first invoke the CMPA's procedure 'because the

determination whether the OEA has jurisdiction is quintessentially a decision for the OEA to

make in the first instance.'"  Owens v. Dist. of Columbia, 923 F. Supp. 2d at 249 (quoting

McManus v. Dist. of Columbia, 530 F. Supp. 2d 46, 78 (D.D.C. 2007)); see also Hill v. Gray, 28

F. Supp. 3d 47, 55-56 (D.D.C. 2014).

To the extent that plaintiff raises a different futility argument — that any appeal

now would be futile because it is untimely — the Court suggests that, despite the significant

delay, "it is plausible that the discovery tolling rule could apply to the plaintiff['s] [] claims,

which [c]ould permit the OEA's jurisdiction."  Hill v. Gray, 28 F. Supp. 3d at 56 (citing Caudle

v. Thomason, 942 F. Supp. 635, 641 (D.D.C. 1996)).  Plaintiff therefore has failed to

"demonstrate a 'clear and positive showing of futility' [that] the prescribed remedy would not

provide adequate relief or [that] the prescribed remedy would certainly result in an adverse

decision."  Id. at 55 (quoting Winter v. Local Union No. 639, Affiliation with Int'l Bhd. of

Teamsters, 569 F.2d 146, 149 (D.C. Cir. 1977)).[11]  The Court must grant defendants' motion for

summary judgment as to the procedural due process claim.[12]

---

[11]    The D.C. Circuit has noted that the CMPA's "exclusivity and exhaustion
requirements do not, however, necessarily foreclose a subsequent suit in local or federal court
challenging the adequacy of the process itself."  Johnson v. Dist. of Columbia, 552 F.3d at
810 n.2.

[12]    The fact that plaintiff's claim is constitutional does not exempt it from the
exhaustion requirement because it is intertwined with questions regarding the application of
various statutes and regulations.  Nat'l Treasury Employees Union v. King, 961 F.2d 240, 243
(D.C. Cir. 1992) ("[W]hen an alleged constitutional violation 'is intertwined with a statutory one,
and [the legislature] has provided the machinery for the resolution of the latter,' the plaintiff

## VI.  CONCLUSION

For the foregoing reasons, the Court granted in part and denied in part defendants'
motion for summary judgment as reflected in its Order of March 31, 2015.  Judgment was
granted to defendants on the portion of Count I relating to plaintiff's D.C. Council testimony,
and Count II was dismissed for failure to exhaust administrative remedies.  The Court therefore
also denied plaintiff's motion for summary judgment as moot.


                                        /s/_____
                                        PAUL L. FRIEDMAN
                                        United States District Judge

DATE:  April 7, 2015

---

must exhaust [her] administrative remedies before a district court may hear [her] case.") (quoting
Steadman v. Governor, U.S. Soldiers' and Airmen's Home, 918 F.2d 963, 963 (D.C. Cir. 1990));
see Pl. Mot. at 19-23.